# EXHIBIT K

Experian

PO Box 4500

Allen TX 75013


Dear Sir or Madam,


I am writing to dispute the following information in my file:


Account Name:  Specialized Loan Servicing LLC

Account #  ████2479

The information that is being reported on my credit report is inaccurate.  Please review the following information that is enclosed.

Matrimonial Settlement Agreement between Catherine M. Macris and Mark K Macris

Original and Amended Bank Note

Deed

Summons of Foreclosure

Order of Reference


After the Attorney reviewed my Divorce Degree, counsel agreed that I should be removed from the Mortgage.

Please review the enclosed Order of Reference, the order of reference has named Mark K Macris as not a necessary defendant and removed from the obligation from US Bank National Association, as Trustee for the SROF-2013-S3 Remic Trust. This order was approved by James H Dillion, State of New York Supreme Court Judge.


Please remove this account from my credit report.

Sincerely,

Mark K Macris

SSN # ████ 3390

DOB ████ 1967

270 Miller Road

Amherst NY 14068



CERTIFIED

# MATRIMONIAL SETTLEMENT AGREEMENT

Between

**CATHERINE M. MACRIS**

and

**MARK K. MACRIS**

F I L E D
ACTIONS & PROCEEDINGS

JUN 0 9 2010

ERIE COUNTY
CLERK'S OFFICE

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

## MATRIMONIAL SETTLEMENT AGREEMENT

THIS AGREEMENT, made _Nov 4_, 2009, between **Catherine M. Macris**, referred to in this Agreement as the "Wife", and **Mark K. Macris**, referred to in this agreement as the "Husband".   In some parts of this agreement, the wife and husband may also be referred to as the "Mother" and "Father", respectively.

PREMISES:

WHEREAS, the parties were married on August 20, 2005 in Cheektowaga, New York; and

WHEREAS, there is one minor child of the marriage, to wit:

**Sarah Macris**                                        DOB: ███ 07; and

WHEREAS, the parties desire to live separate and apart from one another; and

WHEREAS, the parties wish to enter into a comprehensive settlement agreement which will equitably settle their marital and financial rights and obligations in all respects; and

WHEREAS, each party has been fully advised with respect to the legal, financial, and practical effect of this agreement by their respective counsel; and

WHEREAS, both parties acknowledge that they have been legally advised or have had the opportunity to be legally advised of the terms and provisions of Section 5-

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

311 of the General Obligations Law and Section 236-B(3) of the Domestic Relations Law; and

WHEREAS, in resolving equitable distribution of marital property, the parties considered the following statutory factors, pursuant to Domestic Relations Law Section 236(B)(5):

(1) the income and property of each party at the time of marriage, and at the time of the commencement of the action;

(2) the duration of the marriage and the age and health of both parties;

(3) the need of a custodial parent to occupy or own the marital residence and to use or own its household effects;

(4) the loss of inheritance and pension rights upon dissolution of the marriage as of the date of dissolution;

(5) any award of maintenance under subdivision six of this part;

(6) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party;

(7) the liquid or nonliquid character of all marital property;

(8) the probable future financial circumstances of each party;

3

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

(9) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party;

(10) the tax consequences to each party;

(11) the wasteful dissipation of assets by either spouse;

(12) any transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;

(13) any other factor which the parties find to be just and proper

WHEREAS, in resolving the issue of spousal maintenance, the parties considered the following statutory factors, pursuant to Domestic Relations Law Section 236(B)(6):

(1) the income and property of the respective parties including marital property distributed pursuant to Domestic Relations Law Section 236(B);

(2) the duration of the marriage and the age and health of both parties;

(3) the present and future earning capacity of both parties;

(4) the ability of the party seeking maintenance to become self-supporting and, if applicable, the period of time and training necessary therefor;

(5) reduced or lost lifetime earning capacity of the party seeking maintenance as a result of having foregone or delayed education, training, employment, or career opportunities during the marriage;

4

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

(6) the presence of children of the marriage in the respective homes of the parties;

(7) the tax consequences to each party;

(8) contributions and services of the party seeking maintenance as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party;

(9) the wasteful dissipation of marital property by either spouse;

(10) any transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;

(11) any other factor which the parties expressly find just and proper

WHEREAS, in resolving child support, the parties have considered the provisions of Domestic Relations Law Section 236(B)(7) and have been advised of the provisions of Domestic Relations Law Section 240(1-b), commonly known as the Child Support Standards Act, and having been further advised that the basic child support obligation as determined by the formula contained in Domestic Relations Law Section 240(1-b)(c) would presumptively result in the correct amount of child support to be awarded, the parties have considered such provisions, including the respective pro rata shares of the basic child support obligation of the custodial parent and the noncustodial parent as determined pursuant to Domestic Relations Law Section 240(1-b)(c), as well as the variance factors enumerated in Domestic Relations Law Section 240(1-b)(f), to wit:

(1) the financial resources of the custodial and noncustodial parent, and those of the child;

5

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

(2) the physical and emotional health of the child and his/her special needs and aptitudes;

(3) the standard of living the child would have enjoyed had the marriage or household not been dissolved;

(4) the tax consequences to the parties;

(5) the nonmonetary contributions that the parents will make toward the care and well-being of the child;

(6) the educational needs of either parent;

(7) a determination that the gross income of one parent is substantially less than the other parent's gross income;

(8) the needs of the children of the noncustodial parent for whom the noncustodial parent is providing support who are not subject to the instant action and whose support has not been deducted from income pursuant to Domestic Relations Law Section 240(1-b)(b)(5)(vii)(d), and the financial resources of any person obligated to support such children, provided, however, that the factor may apply only if the resources available to support such children are less than the resources available to support the children who are subject to the instant action;

(9) provided that the child is not on public assistance (i) extraordinary expenses incurred by the noncustodial parent in exercising visitation, or (ii) expenses incurred by

6

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

the noncustodial parent in extending visitation provided that the custodial parent's expenses are substantially reduced as a result thereof.

WHEREAS, the parties understand that instead of entering into this agreement they have a right to proceed with litigation and to seek a judicial determination of the issues covered by this agreement but, notwithstanding such right, the parties desire to avoid the delay, expense, and risk of litigation and they believe that their interests and the interests of their child will be better served by the terms and provisions of this agreement;

WHEREAS, in entering this agreement, the Husband acknowledges that he has in no way relied upon any attorney certification of any factual submission or submissions, financial or otherwise, made by the Wife's attorney. The Husband acknowledges his understanding that any such attorney certification was made by the Wife's attorney solely and exclusively to the court and may not and should not be relied upon by the Husband in assessing the credibility of the submission or in deciding whether or on what terms to settle this matter. The Husband further acknowledges that he would have entered into this settlement on precisely the same terms even in the absence of any attorney certification by the Wife's attorney.

WHEREAS, in entering this agreement, the Wife acknowledges that she has in no way relied upon any attorney certification of any factual submission or submissions, financial or otherwise, made by the Husband's attorney. The Wife acknowledges her

7

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

understanding that any such attorney certification was made by the Husband's attorney solely and exclusively to the court and may not and should not be relied upon by the Wife in assessing the credibility of the submission or in deciding whether or on what terms to settle this matter. The Wife further acknowledges that she would have entered into this settlement on precisely the same terms even in the absence of any attorney certification by the Husband's attorney.

NOW, THEREFORE, based upon the above-stated premises, and the terms and provisions specified below, the parties agree as follows:

## ARTICLE ONE: LIVING SEPARATE AND APART

It shall be in all respects lawful for the parties to live separate and apart and, except as expressly otherwise provided in this agreement, they may and shall do so at all times hereafter. Each party shall be free from interference, authority or control, direct or indirect, by the other party as fully as if each party were single and unmarried.

Each party may reside at such place or places as he or she may select.

Neither party shall molest, disturb, or harass the other, in any manner, nor shall either party publish, speak or disseminate slanderous comments or materials, whether oral or written, concerning the other party, to each other, or to any third persons , including any child of the marriage.

Each party shall be free to and may conduct, engage in or carry on any business, profession or employment which to him or her may seem advisable.

8

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

Neither party shall endeavor, by legal proceedings or otherwise, to compel the other party to cohabit, dwell or resume marital relations.

## ARTICLE TWO:  SITUS OF AGREEMENT

This agreement shall be governed and construed in all respects and exclusively in accordance with the laws of the State of New York.

## ARTICLE THREE:  BINDING EFFECT

Except as otherwise expressly stated in this agreement, the terms and provisions of this agreement shall be forever binding and conclusive upon the parties, their respective heirs, next of kin, successors, executors, administrators, assigns or other representatives.

## ARTICLE FOUR:  MUTUAL RELEASE

Except to the extent of the rights and obligations provided in this agreement, each party hereby releases and discharges the other from any and all claims, causes of action, liabilities, rights, interests, demands or other obligations of any kind, whether arising in law or equity, with the sole and singular exception of any and all cause or causes of action for divorce.

## ARTICLE FIVE:  MODIFICATION AND WAIVER

No modification or waiver of any provision of this agreement shall be binding unless made in writing and executed and acknowledged with the same degree of

9

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

formality as this agreement or unless stipulated to by the parties upon the record of a court of competent jurisdiction.

## ARTICLE SIX:  FAILURE TO INSIST UPON STRICT PERFORMANCE

The failure of either party on any given occasion or from time to time to insist upon the strict performance of any term or provision of this agreement by the other party shall not be deemed a waiver or relinquishment of the right to insist upon strict performance of such term in the future nor shall it be deemed a waiver or relinquishment of the obligations established by any other term or provision of this agreement.

## ARTICLE SEVEN:  BREACH

If either party breaches any provision of this agreement, the other party shall have the right to recover money damages, obtain specific performance, or seek any other remedy for such breach which may be available in law or equity.

## ARTICLE EIGHT:  PARTIAL INVALIDITY

If any provision of this agreement is held to be invalid or unenforceable, all other provisions hereof shall nonetheless continue in full force and effect.

## ARTICLE NINE:  INCORPORATION INTO SUBSEQUENT DIVORCE JUDGMENT

The terms and provisions of this agreement shall not be deemed to in any way prevent either party from maintaining an action for divorce at any time and on any

10

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

ground, based either on past or future conduct, in any court of competent jurisdiction. Nor shall such terms and provisions in any way prevent the other party from defending such action.

The parties shall be in all respects hereafter bound by the terms and provisions of this agreement and such terms and provisions shall not be invalidated, diminished, impaired, expanded, or otherwise altered or affected by any judgment or decree of divorce granted by any court and neither party shall request any relief which is inconsistent with the terms and provisions of this agreement.

In the event that either party may institute or maintain an action for divorce, the parties shall be fully bound by the terms and provisions of this agreement. The party obtaining any judgment of divorce shall present a true copy or duplicate original of this agreement to the court entertaining jurisdiction of such action and request that its terms and provisions be incorporated by reference in the judgment or decree of divorce so that each term and provision of this agreement shall be fully enforceable to the same extent as if each such term or provision were set forth in its entirety in such judgment or decree. If consistent with the rules or practice of such court, the terms and provisions of this agreement shall be incorporated into the judgment of divorce by reference.

Notwithstanding the incorporation of the terms and provisions of this agreement into any judgment of divorce obtained by either party, however, the terms and provisions of this agreement shall not merge in such judgment. Rather, such terms and

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

11

provisions shall in all respects survive such judgment and be forever binding, conclusive and controlling upon the rights and obligations of the parties.

## ARTICLE TEN:  RECONCILIATION

This agreement shall not be invalidated, terminated, canceled, or otherwise affected by a reconciliation between the parties or by resumption of cohabitation or marital relations between them, unless such reconciliation or such resumption is confirmed by a written document which expressly invalidates, terminates, cancels, or otherwise alters this agreement and which is executed and acknowledged with the same degree of formality as this agreement or unless stipulated to by the parties upon the record of a court of competent jurisdiction.

## ARTICLE ELEVEN:  FULL DISCLOSURE

Each party is entering into this agreement with a full understanding of its provisions and with full financial disclosure by the other party.  Neither party requires any further information from the other in order to knowingly and intelligently execute this agreement.  Each party acknowledges that this agreement has been achieved after full financial disclosure and good-faith negotiations and each party is entering into this agreement because he or she fully believes that the terms and provisions of this agreement are in his or her best interest.

Each party has made independent inquiry into the financial circumstances of the other and is fully informed of the income, assets, and financial condition of the other.

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

12

Each party acknowledges that this agreement has not been the result of any fraud, duress, coercion, undue influence, or overreaching by or on behalf of the party.  Each party acknowledges that this agreement has been achieved after full disclosure and good-faith negotiations.  Neither party requires any further information from the other in order to knowingly and intelligently execute this agreement.

## ARTICLE TWELVE:  LEGAL REPRESENTATION

Each party has been fully advised of the legal and practical effect of this agreement by his or her respective legal counsel.

The Husband has been represented by:

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, NY 14202

and the Wife has been represented by:

Kyle W. Calabrese, Esq.
265 Union Street, Union Square, Suite 203
Hamburg, NY  14075.

The interests of the minor child have been represented by her court appointed attorney and law guardian:

Katherine J. Bestine, Esq.
343 Elmwood Avenue, PO Box 5204
Buffalo, New York 14213-5204

13

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

## ARTICLE THIRTEEN:  UNDERSTANDING OF AGREEMENT

Each party hereby represents and acknowledges that, prior to executing this agreement, he or she has carefully read each and every word contained in this agreement and fully understands all of its terms and provisions and their legal, financial and practical effect.  Based upon such understanding, each party believes that this agreement is fair and reasonable in all respects and each party executes this agreement freely and voluntarily.

## ARTICLE FOURTEEN:  ENTIRE AGREEMENT

This agreement contains the entire understanding of the parties and there are no promises, terms, conditions, representations, warranties, undertakings, covenants or understandings by either party to the other, except as expressly set forth in this agreement.

## ARTICLE FIFTEEN:  WAIVERS OF ESTATE RIGHTS

Except as otherwise provided in this agreement, each party may dispose of his or her property in any manner that he or she may deem appropriate.  Each party hereby waives, relinquishes, and releases forever any and all rights which he or she may now have or may hereafter acquire under the present or future laws of any jurisdiction to share in the property or estate of the other as a result of the marital relationship of the parties.  This waiver includes, but is not limited to, dower, curtesy, statutory allowance, homestead rights, right to take under the rules of intestate succession, right to elect

Emilio Colaiacovo, Esq.                    14
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

against the will of the other, right to act as administrator or executor of the estate of the other, or in any manner participate in the estate of the other.

The right of either party to take under any testamentary disposition, including any testamentary substitute, which is presently in effect is likewise waived in all respects and any such pre-existing testamentary disposition is hereby revoked by the testator of such will and renounced by the party in whose favor such testamentary devise or bequest has been made.

However, if either party executes a will on or after the date of execution of this agreement and provides in such will a testamentary disposition for the benefit of the other party, the provisions of this agreement shall not constitute a waiver of or bar to the receipt and enjoyment of such devise or bequest.

Except as otherwise expressly provided in this agreement, any prior designation by one party of the other party as a beneficiary, whether primary or alternative, under any policy of life insurance is hereby revoked by the party who made such designation and is hereby renounced by the party so designated as such beneficiary.

None of the foregoing waivers, releases or relinquishments shall bar either party or his or her estate from making claim against the person or estate of the other party if, and to the extent that, such a claim arises out of any obligation established by this agreement or a breach of this agreement.

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

15

## ARTICLE SIXTEEN:  PENALTIES ON DEFAULT

In the event that either party defaults with respect to any obligation set forth in this agreement, the injured party shall send written notice, by certified mail, return receipt requested, to the defaulting party, which notice shall specify the nature of the default and, if relevant, any amount due which remains unpaid.  If the payment is not made, or the default otherwise cured, within 20 days of receipt of said notice, and the injured party incurs attorney's fees and related expenses or costs in commencing and maintaining an action or proceeding to enforce this agreement, the defaulting party shall pay all such fees and costs.

In the event that either party defaults with respect to any obligation set forth in this agreement, the defaulting party shall pay the attorney's fees and related expenses and costs incurred by the injured party in the enforcement of this agreement, irrespective of whether such enforcement is ultimately attained by judgment or by settlement.

## ARTICLE SEVENTEEN:  BANKRUPTCY

The parties have consented to the terms of this Agreement upon their reliance on the express representations made to each other that all of its terms, particularly those with respect to the maintenance, child support, payments of debts, property division, and distributive award, or any other transfers or payments to implement equitable

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

16

distribution, shall be fully paid and completed in accordance with such terms and provisions.

It is the intention of the parties that the obligations for maintenance, child support, payment of debts, property division, and distributive award, or any other transfers or payments to implement equitable distribution, which are to be made pursuant to the terms and provisions of this agreement, shall not be discharged, canceled, terminated, diminished or in any way affected by the filing of a petition in bankruptcy, or by the making of an assignment for the benefit of creditors.

Accordingly, in the event that the either party files a petition in bankruptcy or makes an assignment for the benefit of creditors, all transfers or payments provided for in this agreement are intended to be maintenance or child support.  The party who files such petition in bankruptcy or makes such assignment for the benefit of creditors shall be liable for any resulting tax consequences.

To the extent that any obligation arising under this agreement may be discharged, canceled, terminated, diminished or in any way affected by the filing of a petition in bankruptcy, or by the making of an assignment for the benefit of creditors, the party adversely affected by such action shall be entitled to apply to any court of competent and appropriate jurisdiction for modification of this agreement and any order or decree into which it may hereafter be incorporated.  The party who files such petition in bankruptcy or who makes an assignment for the benefit of creditors hereby consents

17

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

that in any proceeding brought by the other party pursuant to this provision, the court hearing the same may grant economic relief of any kind or nature to relieve the other party of the adverse impact of the bankruptcy or assignment, irrespective of the otherwise applicable standards for such relief, including, but not limited to, the granting of maintenance to a party who would otherwise not qualify for such relief under the criteria of the particular jurisdiction.

### ARTICLE EIGHTEEN:  PAYMENTS MADE UPON DEFAULT OF OTHER PARTY

If either party makes a payment or payments with respect to any debt or obligation of the other party due to the default of such other party, the party who makes such payment shall have, in addition to any other rights or remedies which he or she may have at law or equity or pursuant to the terms of this agreement, the right to either deduct the amount of such payment or payments from any other payment or payments which are to be made to the defaulting party under the other terms and provisions of this agreement, or to have immediate reimbursement for same.

### ARTICLE NINETEEN:  SUBSEQUENT ATTACK ON AGREEMENT

All of the transfers, conveyances, distributions, assignments, and payments made pursuant to this agreement are made in consideration of all of the other transfers, conveyances, distributions, assignments, and payments, waivers, and obligations established by the terms and provisions of this agreement.

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

18

In the event that either party at any future time institutes an action or proceeding to terminate, cancel, avoid, set aside, diminish, impair, extend, expand, alter, or modify, this agreement, or any of its terms or provisions, whether such proceeding is successful or not, such party shall, in advance of and as a condition precedent to the commencement of such action or proceeding, retransfer, reconvey, return, reassign, and repay to the other party all assets, income, payments, or other transfers or consideration which such party had received pursuant to this agreement.  In the event that the party who institutes an action or proceeding has already sold, transferred or otherwise disposed of any asset received pursuant to this agreement, such party shall, in advance of and as a condition precedent to the commencement of such action or proceeding pay to the other party all proceeds received upon the sale, transfer or disposition of such asset.

In the event that either party at any future time institutes an action or proceeding, or endeavors by way of interposition of a counterclaim or defense, to set aside this agreement or any of its terms or provisions on the ground or for any reason, including but not limited to, incapacity, fraud, duress, overreaching, undue influence, unfairness, unreasonableness, unconscionability, such party shall fully reimburse the other party for any and all attorneys fees and related legal expenses and costs incurred in connection with the defense of such action or proceeding in the event that the claims or defenses of invalidity are dismissed, rejected, or otherwise unsuccessful.

19

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

## ARTICLE TWENTY:  ADDITIONAL INSTRUMENTS AND FUTURE COOPERATION

Each party shall immediately, upon request, execute, acknowledge and deliver, in proper form, either to the other party or to any other persons, firms or entities as the other party may direct, any and all further instruments, documents, forms or information which may be reasonably required, from time to time, and shall otherwise reasonably cooperate with the other party to give full force and effect to the provisions of this agreement.

## ARTICLE TWENTY-ONE: ADDRESSES

So long as either party shall have any continuing obligation arising under this agreement, either to the other party, to a child of the marriage, or to any other persons, firms or entities, each party shall at all times keep the other informed of his or her current mailing address and actual place of residence and place of employment.  Each party shall, upon any change of mailing address, actual place of residence, or place of employment, promptly and immediately upon learning of same, notify the other party of the new mailing address, actual place of residence, or place of employment.  In the event that any minor child shall reside at any place other than the residence of a party to this agreement, the party having knowledge or information concerning such child's address or location shall promptly and immediately learning of same, notify and convey such knowledge or information to the other party.

## ARTICLE TWENTY-TWO:  FUTURE DIVORCE BASED ON AGREEMENT

20

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

In addition to any other ground for divorce which either party may presently have or may hereafter acquire, the parties have been advised that the execution of this agreement and the filing of it, or a memorandum of it, in the Office of the County Clerk, in the county where either party resides, may give rise to a ground for divorce which may be asserted by either party if they live separate and apart for a period of one or more years and if the party who seeks such divorce has substantially performed his or her obligations under this agreement.

## ARTICLE TWENTY-THREE:  CUSTODY

The parties shall share joint custody of the minor child of the marriage, with neither party designated as the primary residential parent.  The Wife shall be designated as primary residential parent ONLY for educational purposes.  However, this designation shall continue so long as the Wife resides in Williamsville.  Should both parties reside in the Williamsville School District, either parent may be designated as primary residential parent for educational purposes only.

Each party shall have such right of access as is specifically delineated in the ensuing Article.

## ARTICLE TWENTY-FOUR:  PARENTING TIME

Neither party shall have any access schedule, but shall equally share parenting time with their daughter.

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

For the purposes of identifying parenting time, the child shall be with the Father

each and every day that the Mother works, which, depending on her work schedule,

shall be three (3) to four (4) days per week. Further, each parent shall cooperate with

one another to establish times and exchange details. Should they be unable to agree to

said times and details, the pick up shall occur ~~at the Tim Horton's on~~ *at the corner of Maple and*

*North Forest* and the pick up time shall be ~~5:00~~ *5:20* p.m.  Further, each party shall

have access with the child every other weekend from Friday at 5:00 p.m. until Sunday at

5:00 p.m., with the Mother's weekend not to be scheduled during weekends that she

works. *During weekends the Mother works, the father shall pick up the child at 12PM on Saturday until the day her shift ends at 3pm.*

**Holiday access shall be defined below:**

| HOLIDAY | EVEN | ODD | PARENTING TIME From:        To: |
|---|---|---|---|
| New Year | Mother | Father | 9:00 a.m. to 9:00 p.m. |
| Easter morning | Mother | Mother | 8:00 a.m. to 3:00 p.m. |
| Easter afternoon | Father | Father | 3:00 p.m. to 8:00 p.m. |
| Mother's Day | Mother | Mother | 8:00 a.m. to 8:00 p.m. |
| Memorial Day | Father | Mother | 9:00 a.m. to 8:00 p.m. |
| Father's Day | Father | Father | 8:00 a.m. to 8:00 p.m. |
| July 4th | Mother | Father | 9:00 a.m. to 8:00 p.m. |
| Labor Day | Mother | Father | 8:00 a.m. to 8:00 p.m. |
| Halloween | Father | Mother | 4:00 p.m. to 8:00 p.m. |
| Thanksgiving (afternoon) | Father | Mother | 8:00 a.m. to 3:00 p.m. |

22

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

| Thanksgiving (evening) | Mother | Father | 3:00 p.m. to 8:00 p.m. |
| Christmas Eve | ~~Father~~ Mother | ~~Mother~~ Mother | Christmas Eve to ~~11 a.m.~~ 1 pm on 12/25 |
| Christmas Day | ~~Mother~~ Father | ~~Mother~~ Father | 1 pm ~~12:00~~ p.m. to 8:00 p.m. on 12/26 |
| Mother's Birthday | Mother | Mother | 8:00 a.m. to 8:00 p.m. |
| Father's Birthday | Father | Father | 8:00 a.m. to 8:00 p.m. |

The aforementioned holiday access supercedes the regular periods of access as provided for in this agreement. Father shall pick up the children at the Mother's residence and the Mother shall pick up the children at the termination of access.

**Christmas Recess:** In all years the Mother and Father shall evenly divide the remainder of the Christmas recess beginning December 27th and ending the day before school resumes.  The parties shall exchange the child at 5:00 p.m. on the Monday between December 27th and the day before school resuming.

During **even** years, the Father shall have the first portion of the recess.  During **odd** years, the Mother shall have the first portion of the recess.

**February/Winter Recess**:  In all years ending with an **even** number, the Mother shall have the child from the last day of school at 5:00 p.m. until day before school is to resume at 5:00 p.m. In all years ending with an **odd** number, the Father shall have the child from the last day of school at 5:00 p.m. until day before school is to resume at 5:00 p.m.

23

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

*our* KIDS PROGRAM   EACh parent shall enroll And participate in the Catholic Charities "Our Kids" awareness program

**Easter/Spring Recess**:  In all years ending with an **odd** number, the Mother shall have the child from the last day of school at 5:00 p.m. until day before school is to resume at 5:00 p.m. In all years ending with an **even** number, the Father shall have the child from the last day of school at 5:00 p.m. until day before school is to resume at 5:00 p.m.

**Mother's Day/Father's Day**:  Irrespective of any other provisions of this article, the child shall be with the Mother on Mother's Day and with the Father on Father's Day.

**Summer Recess**:   Between the last day of classes and prior to the recommencement of classes in the Fall of each year, each parent shall have the child for a period of four (4) weeks, either consecutively or nonconsecutively, upon reasonable notice in accordance with the notice provisions which follow.

**Notice Provisions**:  With respect to the summer recess period of access, the Father shall give notice of which weeks are selected for access on or before May 1st in **even** years. The Mother shall give the Father notice of her weeks by May 1st on **odd** years.

**Additional Time by Agreement**:  Nothing in this agreement shall be deemed to limit the parties in subsequently agreeing to greater access with the child.

**Notice of Cancellation**:  To avoid disappointment to the child and to permit the other party to effectively plan the child's schedule, each party shall give advance notice to the other party at least 24 hours if it is their intention not to exercise any access

Emilio Colaiacovo, Esq.                                   24
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202



period specifically prescribed in this article or upon which the parties may subsequently agree.

## ARTICLE TWENTY-FIVE:  RESIDENTIAL LOCATION

In no event shall the Wife relocate the child outside the boundaries of the Williamsville School District without the prior written consent of the other Husband or an order from a court of competent jurisdiction.

## ARTICLE TWENTY-SIX:  OTHER PROVISIONS CONCERNING CHILDREN

The parties shall mutually cooperate with one another to consult and arrive at decisions which are in the best interest of the child with respect to health, education and general well-being.  Neither party shall have a superior right to make such decisions and, in the event that the parties are unable to agree upon any matter of importance to the rearing of the child, either party may apply to a court of appropriate jurisdiction and seek a judicial resolution of the issue in dispute.

Neither party shall do anything nor permit anything to be done which will estrange the child from the other party or otherwise hamper the natural development of love and affection between the other parent and the child and the development of a positive parent/child relationship between them.  Indeed, each party shall take all reasonable affirmative steps to foster such a relationship of love, affection and respect between the child and the other party.

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

Each party shall have the right to communicate with the child by telephone at all reasonable times and for reasonable periods of time when the child is with the other party and neither party shall interfere with or restrict or impair such right of communication.  Each party shall accordingly keep the other informed of his or her residential telephone number and of any other number where such child may temporarily reside or sojourn.

Each party shall promptly notify the other regarding any sickness, disability, injury or accident involving the child. In the event that a child is confined to bed or home as a result of such sickness, disability, injury, or accident for more than 48 hours, the other party shall have the right to visit such child at reasonable times and for reasonable periods of time.

Each party shall encourage the child to use the terms "Father" and "Mother" or their equivalents when referring to the other party hereto and shall discourage the use of such terms in reference to any other person.

The each party shall be fully entitled to access to all information, records, reports, correspondence, memoranda, or other documentation which in any way relates to the health, education or well-being of the child, including, but not limited to, medical records of any hospital, physician, therapist mental health professional, or other health care provider, and school records.

26

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

## ARTICLE TWENTY-SEVEN: CHILD SUPPORT

The Husband agrees to pay the sum of fifty dollars ($50.00) per week as and for child support to the Wife for the aforementioned child.

The above-stated child support amount represents a deviation from the basic child support obligation, which, if determined in accordance with Domestic Relations Law Section 240(1-b)(c), would be in the amount of $810.00 per month for the Father and $589.00 per month for the Mother.  In addition, as an additional element of child support, the parties would be obligated to pay the following pro rata shares of unreimbursed medical expenses and child care costs :

Husband's obligation is 58%;

Wife's obligation is 42%.

This agreement does not provide for payment of the basic child support obligation amount, or the pro rata share thereof, for the following reason or reasons:

The financial resources of the custodial and non-custodial parent, and those of the child; (Domestic Relations Law Section 240(1-b)(f)(1))

The physical and emotional health of the child and his/her special needs and aptitudes; (Domestic Relations Law Section 240(1-b)(f)(3))

The standard of living the child would have enjoyed had the marriage or household not been dissolved; (Domestic Relations Law Section 240(1-b)(f)(3))

27

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

The tax consequences to the parties; (Domestic Relations Law Section 240(1-b)(f)(4))

The nonmonetary contributions that the parents will make toward the care and well-being of the child; (Domestic Relations Law Section 240(1-b)(f)(5)

The educational needs of either parent; (Domestic Relations Law Section 240(1-b)(f)(6))

A determination that the gross income of one parent is substantially less than the other parent's gross income; (Domestic Relations Law Section 240(1-b)(f)(7))

The needs of the children of the noncustodial parent for whom the noncustodial parent is providing support who are not subject to the instant action and whose support has not been deducted from income pursuant to Domestic Relations Law Section 240(1-b)(b)(5)(vii)(d), and the financial resources of any person obligated to support such children, provided, however, that this factor may apply only if the resources available to support such children are less than the resources available to support the children who are subject to the instant action; (Domestic Relations Law Section 240(1-b)(f)(8))

Provided that the child is not on public assistance (i) extraordinary expenses incurred by the noncustodial parent in exercising visitation, or (ii) expenses incurred by the noncustodial parent in extended visitation provided that the custodial parent's

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

28

expenses are substantially reduced as a result thereof; (Domestic Relations Law Section 240(1-b)(f)(9))

Other factors which the court determines relevant; (Domestic Relations Law Section 240(1-b)(f)(10))  The equally shared parenting access time with the child as outlined in this agreement.

The parties are aware that DRL Section 240(1-b)(2) requires that the court issue an income deduction order pursuant to CPLR 5241(c) at the time it issues an order of support and have reached agreement on an alternative arrangement, as follows:

The child support amount shall remain unless modified by an order of a court of competent jurisdiction.  Should either party seek to modify the current child support order, the moving party must show a substantial change of circumstances.  However, changes in the party's income shall not constitute a change of circumstances to increase either party's child support obligation.

The parties understand that the court retains discretion with respect to child support and that any court order or judgment incorporating this agreement must set forth the court's reasons for the deviation from the pro rata share of the basic child support obligation.

## ARTICLE TWENTY-EIGHT:  TERMINATION EVENTS

29

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

Any and all child support obligations established by this agreement shall continue with respect to each child until the happening of any one of the following events, whichever shall first occur:

A child attains age twenty-one (21) years.

A child marries, whether or not such marriage may be void, voidable or may subsequently terminate by death, divorce, annulment, or dissolution, or in any other manner.

A child cohabits with an unrelated person of the opposite sex.

A child enters the armed forces of the United States or any other country or political entity.

A child dies.

Either parent dies.

There is a change in custody pursuant to an order of a court of competent jurisdiction.

A child ceases to permanently reside with the parent who is herein designated as the "custodial parent" or "residential custodian".

Residence away from the other party's home, which a child maintains in conjunction with his or her college studies, or residence at boarding school or camp, or in conjunction with summer employment undertaken between college semesters while

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

the child remains a full-time student, shall not terminate the child support obligations established in this agreement.

A child attains the age of eighteen (18) years and becomes full-time employed; except that full-time summer employment undertaken by a child while such child is still engaged as a full-time college student shall not terminate the child support obligations established in this agreement.

A child attains the age of eighteen (18) years and does not continue to pursue a formal education at an accredited secondary school, college or university on full-time basis.

## ARTICLE TWENTY-NINE:  HEALTH INSURANCE

In addition to the foregoing child support, the Wife shall maintain in effect and pay for comprehensive health care insurance, including extended dental, orthodontia, psychiatric, psychological, and mental health coverage to the extent the same is available through the Wife's employment . The Wife shall execute and deliver any and all necessary notices, forms, or other documents to ensure prompt payment of any and all health insurance claims for such child.

The Husband shall agree to pay half (½) of the difference between family coverage and single coverage, with the Wife proving the Husband, on an annual basis, the appropriate documentation from her employer of the costs associated with family

31

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

versus single coverage in order to determine the Husband's correct amount of contribution.

## ARTICLE THIRTY:  HEALTH EXPENSES NOT COVERED BY INSURANCE

Each party shall promptly pay fifty percent (50%) of any and all reasonable health care expenses not covered by insurance, including dental, orthodontia, psychiatric, psychological, and mental health care relative to the child until age 21 or earlier emancipation.  Such payments shall be made to the party incurring said expense.  There shall be ~~a cap of $100.00 per expense~~ *an approval of any expenditure that exceeds $100.*  The party incurring the expense shall provide notice to the other parent within seven (7) days of incurring same.  Upon proper receipt of notice of uninsured expenses, the receiving parent must reimburse their one-half share within seven (7) days.

~~The parties acknowledge that there is currently outstanding a dental bill in the amount for $197.  The Husband agrees to pay this amount to the Wife, provided she hold him harmless for this obligation.~~

## ARTICLE THIRTY-ONE:  EDUCATIONAL EXPENSES

In the event that the child, upon graduating from high school, attends a fully accredited college or university on a full-time basis and matriculates in a course of study leading to an undergraduate degree, the parties shall contribute toward payment of the reasonable educational expenses of such child in an amount to be agreed upon them at the time it is determined that a child will be attending college.

*The parents shall equally share any expenses incurred for school supplies.*

32

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

In the event that the parties are unable to agree upon their respective shares, either party may apply to a court of appropriate jurisdiction for a determination of a fair and reasonable apportionment of such expenses based upon the respective financial positions of the parties.

For purposes of this agreement, "reasonable educational expenses" is hereby defined to mean and shall include tuition, academic fees, books, and transportation with the costs capped by the State University of New York System (SUNY) rate.

## ARTICLE THIRTY-TWO:  LIFE INSURANCE

Each party shall maintain and pay for a policy or policies of life insurance in the amount of $250,000.00 and shall designate the aforementioned child as the irrevocable beneficiary until such time as the child attain age 21 or earlier emancipation.  Each party shall provide proof to the other party that such insurance is in full force and effect, with all premiums paid up to date and no liens thereon, at least annually, and neither party shall borrow against or in any way hypothecate said policy or policies.

## ARTICLE THIRTY-THREE: DAY CARE AND RIGHT OF FIRST REFUSAL

The parties agree that day care service for the minor child affected by this proceeding may used only if both parties are working.  Both parties agree that paternal grandmother shall be the preferred day care provider if both Father and Mother are working.  Should paternal grandmother be unavailable, than the party having access with the child on said date shall use day care services, upon providing notice to the

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

other parent.  Each party shall be responsible for 50% of these day care costs.  The parties are to agree on any future day care provider.  Should the child be enrolled in day care without first contacting paternal grandmother, notifying the other parent, or an agreement on the particular day care provider, there shall exist no responsibility to contribute towards day care costs.

~~For past day care costs, the Father agrees to reimburse the Mother $424.00 within seven (7) days from the date of the execution of this agreement.~~

## ARTICLE THIRTY-FOUR:  DEPENDENCY EXEMPTION

In **even** years, the Wife shall be entitled to claim the child as a dependency exemption for State and Federal Income Tax purposes and the Husband shall execute any instrument, document, or form which is necessary to effectuate same.

In **odd** years, the Husband shall be entitled to claim the child as a dependency exemption for State and Federal Income Tax purposes and the Wife shall execute any instrument, document, or form which is necessary to effectuate same.

## ARTICLE THIRTY-FIVE:  SPOUSAL MAINTENANCE

Each of the parties to this agreement is gainfully employed and fully capable of self-support and providing for his or her own reasonable needs.  Accordingly, each party forever waives any claim for maintenance from the other.  Each party has been specifically advised of the provisions of Domestic Relations Law Section 236(B)(6)

34

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

relative to maintenance and makes this waiver with full knowledge of such rights as are set forth in that statute.

### ARTICLE THIRTY-SIX:  HEALTH INSURANCE

The Husband shall be responsible to maintain insurance coverage for his own benefit.

Pursuant to Domestic Relations Law § 177, the following notice is attached: Each party fully understand that upon the entrance of this divorce agreement, he or she may no longer be allowed to receive health coverage under their former spouse's health insurance plan.  He or she may be entitled to purchase health insurance on his or her own through a COBRA option, if available, otherwise he or she may be required to secure their own health insurance.

### ARTICLE THIRTY-SEVEN:  COUNSEL FEES

Each party shall pay for his or her own attorney's fees and other legal expenses incurred in connection with the negotiation, preparation, and execution of this agreement.

### ARTICLE THIRTY-EIGHT:  PERSONAL PROPERTY

Except as otherwise specifically provided in this agreement, all personal property, whether tangible or intangible, and including, but not limited to, cash, credit union and bank accounts or similar savings or investment vehicles, including checking and savings accounts of any kind or nature, automobiles or other motor vehicles,

35

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

recreational vehicles, tools, household items, furniture and furnishings, has been fairly and reasonably divided between the parties, and any such property presently in the actual or constructive possession of either party shall henceforth be the sole, separate, and exclusive property of the party in actual or constructive possession thereof, free and clear of the nonpossessory party and the nonpossessory party hereby waives any present or future interest in such property.  In the instance of intangible items of property, such as accounts or investment devices, if there is a conflict between possession and title, the concept of title shall control.  In the event that any such account or investment device be titled jointly to the parties, the party not in present possession shall execute whatever documents, forms, or papers may be required to permit the possessory party to enjoy the sole and exclusive ownership, dominion and control contemplated by this article.  In particular, the Husband shall take possession of the following items as listed on Exhibit B.

Except as otherwise specifically provided by this agreement, any stocks, bonds, mutual funds, securities, cash accounts, bank accounts, or any other assets in the name of the Husband or Wife solely, shall be deemed the sole and separate property of the person in whose name such property is owned and each party hereby waives and relinquishes any and all right, claim or interest which they may otherwise have with respect to such assets.  Any such assets which are titled jointly, such as stocks, bonds

36

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

or bank accounts, and which are not specifically divided under the terms of this agreement shall be equally divided by and between the parties.

With respect to the specific division of personal property, whether tangible or intangible, those assets identified and described on the Schedule of Wife's Personal Property shall henceforth be the sole, separate, and exclusive property of the Wife, and the Husband hereby waives any present or future interest in such property.  In the event that it be required with respect to any asset enumerated in said Schedule, the Husband shall execute whatever documents, forms, or papers may be required to permit the Wife to enjoy the sole and exclusive ownership, dominion and control contemplated by this article.

With respect to the specific division of personal property, whether tangible or intangible, those assets identified and described on the Schedule of Husband's Personal Property shall henceforth be the sole, separate, and exclusive property of the Husband, and the Wife hereby waives any present or future interest in such property.  In the event that it be required with respect to any asset enumerated in said Schedule, the Wife shall execute whatever documents, forms, or papers may be required to permit the Husband to enjoy the sole and exclusive ownership, dominion and control contemplated by this article.

Within 30 days from the execution of this agreement each party shall deliver any new registration, certificate of title or other ownership papers or title documentation, as

37

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

may be necessary to effect the terms and provisions of this agreement. The Wife shall retain the 2007 Toyota and the Husband shall retain the 2009 Toyota.

Unless otherwise expressly provided in this agreement, the party who is receiving any particular personal asset, whether tangible or intangible, shall assume any and all liabilities associated with the ownership of such asset, and shall indemnify and hold the other party harmless from any and all such liabilities.

## ARTICLE THIRTY-NINE:  PENSION, RETIREMENT, AND DEFERRED COMPENSATION

Husband and Wife acknowledge and agree that neither party is presently participating in a pension, retirement plan, 401(k) plan or other tax sheltered plan.  Each party waives any claim of interest in a pension, retirement plan, 401(k) plan or other tax sheltered plan in which either party may acquire an interest in the future.

## ARTICLE FOURTY:  REAL PROPERTY

The parties are the owners as tenants by the entirety of an improved parcel of real property which previously served as the marital residence, situated at 403 Teakwood Drive, Williamsville, NY 14221.

The Wife shall have exclusive use and possession of the marital residence until twelve (12) months from the date of the full execution of this agreement. In the event that the Wife shall remarry or cohabit with another unrelated person, the exclusive use and occupancy of the marital residence shall immediately terminate.

38

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

Prior to the execution of this agreement, the Wife shall bring all outstanding mortgage charges current and provide notice to the Husband.

For so long as the Wife's exclusive use and possession of the marital residence shall continue hereunder, the Wife shall not bring nor permit to be brought on the Wife's behalf any action or proceeding for partition or otherwise seeking to compel a sale of said residence.

Should the Wife be tardy with any mortgage or tax payment, the exclusive use and occupancy arrangement shall terminate and the house shall be immediately listed for sale in accordance with the terms and provisions of this agreement.

During the period of the Wife's exclusive use and possession of the marital residence, it shall be the sole obligation of the Wife to pay all sums required with respect to and under the terms of the mortgage pertaining to such residence.  The Wife shall pay all real estate taxes and insurance premiums on homeowners or other casualty and/or liability insurance with respect to said residence.  The Wife shall pay all other carrying charges, and maintenance and repair expenses incurred in connection with said residence.

During the period of the Wife's exclusive use and possession of the marital residence, neither party shall cause or permit, either by affirmative act or by omission, the accrual of any new or additional liens or encumbrances against such property.  In the event that either party should incur or permit the accrual of any such lien or

39

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

encumbrance, then, in addition to any other remedy available to the other party at law or equity, the amount required to satisfy and discharge such lien or encumbrance shall be fully paid exclusively from the share of the proceeds of sale of the party who incurred or permitted the accrual of such lien or encumbrance.

The Wife agrees that within six (6) from the full execution of this agreement, she shall secure the Husband's release and/or discharge from the mortgage obligation presently encumbering the former marital premises. Upon said refinance, the Husband shall immediately convey his interest in the former marital premises to the Wife and he shall execute a Quit Claim Deed and other required transfer documents. If the Wife fails to secure the Husband's release or discharge from said mortgage obligation within this time period, she will cooperate in the sale of said property at the best available price and upon the best available terms.  In the event the parties cannot agree upon an acceptable gross sale price, each party shall select a reputable real estate appraiser of his or her own choosing. Each party shall be bound to accept a gross sale price equal to said appraisal value.

Both parties agree to waive the requirements of Section 3-309 of the General Obligations Law. If either party dies before the transfer of the premises has been completed, the respective estates of the parties shall be obligated to promptly comply with the terms of this provision.

### ARTICLE FORTY-ONE:  DEBTS AND OBLIGATIONS

40

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

The parties have allocated and apportioned responsibility for repayment of existing debts and obligations as set forth in the "Schedule of Debts", which is annexed to and made part of this agreement as Exhibit A.

The party who is designated as the "Responsible Party" with respect to any given debt or obligation in said Schedule of Debts shall be solely responsible for repayment in full of such debt or obligation and shall indemnify and hold the other party harmless from payment of such debt or obligation and from any other liability of any kind associated with such debt or obligation, including but not limited to costs or fees.

Each party represents and warrants to the other that there are no debts or obligations that either has incurred which are not identified on the Schedule of Debts.  In the event that a party has incurred a debt or obligation not so identified shall be solely responsible for repayment of such unidentified loans or obligation.

Neither party will at any time in the future, incur any debt or obligation whatsoever for which the other party, his or her heirs, representatives, and successors or assigns, may be or become liable, and shall hold the other party, his or her heirs, representatives, and successors or assigns harmless and indemnified from any and all debts or obligations.

Each party understands that, notwithstanding the allocation of debts and obligations set forth in this agreement, he or she continues to bear ultimate liability with respect to any third party creditor to whom a debt or obligation was previously incurred

41

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

by a party, absent a direct release of liability from the third party creditor. In other words, this agreement between husband and wife can affect such debts and obligations only between husband and wife and rights can in no way adversely effect or alter the rights of third party creditors in the absence of independent action by such creditors.

## ARTICLE FORTY-TWO: INCOME TAX RETURNS & TAX EXEMPTIONS

The Husband and Wife have previously filed joint Federal and State income tax returns.

The parties shall be responsible for and pay for any income taxes which are due as a result of the filing of such income tax returns in equal portions. Any and all income taxes due shall be defined as the total tax obligation of the parties for that tax year, as well as, any unpaid balance of taxes due as reflected on said return.

The parties shall divide any such income tax refunds equally.

**IN WITNESS WHEREOF**, the parties hereto, having read each and every word of this agreement, together with any and all attachments, and believing this agreement to be fair and reasonable in all respects, have duly signed, executed and acknowledged this agreement in four counterparts, each of which shall constitute a duplicate original, on the date reflected by the respective acknowledgments of the parties.

_____
**Catherine M. Macris**

_____
**Mark K. Macris**

42

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

_Katherine J. Besting, Law Guardian_
I find that this agreement is in the
best interests of the minor child

**STATE OF NEW YORK** )

                                       ss.:

**COUNTY OF ERIE** )

On this 1st day of ~~April~~ September, 2009, before me, the undersigned, personally appeared Catherine ~~Mark H.~~ Macris, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC – STATE OF NEW YORK
Commission expires: 07-31-11.

**STATE OF NEW YORK** )

                                         ss.:

**COUNTY OF ERIE** )

On this 4 day of April, 2009, before me, the undersigned, personally appeared Mark ~~Catherine M.~~ Macris, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC – STATE OF NEW YORK
Commission expires: 4-12-11.

43

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

<u>EXHIBIT A</u>
**Schedule of Debts**

The following Marital Debts shall be distributed to the **Husband:**

*American Express (Husband agrees to remove this from Western Division within 15 days from the date of execution of this agreement)*

*Toyota Financing – 2009 Toyota*

*Dental Bill (approximately $197)*

The following Marital Debts shall be distributed to the **Wife:**

*Toyota Financing – 2007 Toyota (Wife agrees to remove this from Western Division with 15 days from the date of execution of this agreement)*

*Student Loan*

*Sprint Bill (approximately $200)*

*National Grid Bill (approximately $500)*

*Amernational Loan (Wife agrees to remove this from Western Division within 15 days from the date of execution of this agreement)*

Both parties agree to close the Western Division account with 15 days of the execution of this agreement, with both parties to cooperate in said closing, which shall include, but not be limited to, executing any necessary instruments to effectuate the closing of this account.

44

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

**Exhibit B**

**Personal Property**

*Husband:*

~~Family Room Set, loveseat, couch~~  ( 2nd Set of Couches OLIVE + BROWN)

2 End table *&* *Coffee table*

Office furniture and file cabinet

Entertainment center in family room

Misc. Dishware

Misc. yard tools

~~Generator~~

~~Patio Set and chairs~~

Exercise bike

Gladiator Garage cabinets

Craftsman tool bench

Stihl Weed Whacker

Craftsman Shop Vac

Step Ladder

Craftsman Leaf Blower

45

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

Prepared by: MANUEL LAFONT

**Multistate**

# NOTE

LOAN #: ▮▮▮▮▮▮                                    FHA Case No.

FEBRUARY 01, 2008
[Date]

403 TEAKWOOD TERRACE, AMHERST, NY 14221
(Property Address)

**1.   PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
COUNTRYWIDE BANK, FSB
and its successors and assigns.

**2.   BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED NINETY THREE THOUSAND FOUR HUNDRED SEVENTY TWO and 00/100

Dollars (U.S. $193,472.00         ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date
of disbursement of the loan proceeds by Lender, at the rate of SIX                               percent (   6.000 %) per
year until the full amount of principal has been paid.

**3.   PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a Mortgage, Deed of Trust or similar security instrument that is dated the same date as
this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

**4.   MANNER OF PAYMENT**

(A)   Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
APRIL 01, 2008         . Any principal and interest remaining on the first day of MARCH, 2038     , will be due on that
date, which is called the "Maturity Date."

(B)   Place

Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.

(C)   Amount

Each monthly payment of principal and interest will be in the amount of U.S. $1,159.96         . This amount will be
part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the
order described in the Security Instrument.

(D)   Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this
Note. [Check applicable box]

☐ Graduated Payment Allonge      ☐ Growing Equity Allonge      ☐ Other [specify]

**5.   BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of
any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the
remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial
prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those
changes.

**6.   BORROWER'S FAILURE TO PAY**

(A)   Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C)
of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the
amount of FOUR                                   percent (   4.000 %) of the overdue amount of each payment .

(B)   Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of
the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all
accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In
many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case

F Fixed Rate Note
2001FR-XX (04/07)(d/l)                                   Page 1 of 2                          FHA Multistate Fixed Rate Note - 10/95





CRPRDNRB546b          12/12/2011 12:55:45 PM   PAGE   43/108     888-294-5656

CASE #: ████████          LOAN #: ████████

payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    (C)  Payment of Costs and Expenses

    If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.  WAIVERS**

    Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.  GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

    Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.


PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY *Michele Sjolander*

MICHELE SJOLANDER
SENIOR VICE PRESIDENT


BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
MARK K. MACRIS                -Borrower

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
WITHOUT RECOURSE
COUNTRYWIDE BANK, NB

_____ (Seal)
CATHERINE M. MACRIS          -Borrower

BY _____
LAURIE MEDER
SENIOR VICE PRESIDENT

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

F Fixed Rate Note
2001R-XX (04/07)                    Page 2 of 2                    FHA Multistate Fixed Rate Note - 10/95

CRPRDNRBS48b          12/12/2011 12:55:45 PM  PAGE  45/108    888-294-5658

█████ 4848   MACRIS   MK

610 ███        N   001  002

**Bank of America** 🇺🇸

**Home Loans**
BAC Home Loans Servicing, LP
100 Beacham Drive Suite 104
Pittsburgh, PA 15205

MARK K MACRIS
CATHERINE M MACRIS
403 TEAKWOOD TERRACE
AMHERST, NY 14221

Notice Date: April 18, 2010

Account No: █████

FHA Case No: ████████

Property Address:
403 TEAKWOOD TERRACE
AMHERST, NY 14221

## AMENDED AND RESTATED NOTE
### State of New York

Origination Date: February 1, 2006

**1. PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means BAC Home Loans Servicing, LP and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of two hundred seven thousand six hundred ninety five and 77/100 (Dollars U.S.) $207,695.77 plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of five and 50/100, (5.500%) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on June 1, 2010. Any principal and interest remaining on the May 1, 2040 will be due on that date, which is called the "Maturity Date."

**(B) Place**
Payment shall be made to Payment Processing  PO Box 660070  Dallas, TX 75266, or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. 1,179.27. This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge     ☐ Growing Equity Allonge     ☐ Other [specify]

5143 04.14.1D_17.pdf 321 Fri 04/16/10 16:36:36 CD6_Press 7

CRPRDNRBS46b          12/12/2011 12:55:45 PM   PAGE   47/108     888-294-5658

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of 4.00% of the overdue amount of each payment. of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.

This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the Principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Note will be given by first-class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

**10. GROUNDS FOR ACCELERATION OF DEBT**

**(A) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under this Note if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security

Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

**(B) Sale Without Credit.** Lender shall, if permitted by applicable law (including section 341 (d) of the Garn- St Germain Depository Institutions Act of 1982, 12 U.S.C. 1702j-3(d) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:

  (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been in accordance with the requirements of the Secretary.

**(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its right with respect to subsequent events.

**(D) Regulations of HUD.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclosure if not paid. This Note and the Security Instrument do not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

**(E) Mortgage Not Insured.** Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by the Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date thereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by lender when the unavailability of insurance is solely due to Lender's failure to remit mortgage insurance premium to the Secretary.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

MARK K MACRIS                          Dated _____

_CATHERINE M MACRIS_   Dated   4/20/2010
CATHERINE M MACRIS

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.

WITHOUT RECOURSE
BAC HOME LOANS SERVICING, LP

BY _Michele Sjolander_
MICHELE SJOLANDER
SVP, OPERATIONS AND LOAN DELIVERY

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _Michele Sjolander_
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

8142 04.16.10_17.pdf 322 PH 04/16/10 16:35:39 CDS_Press 7

ERIE COUNTY CLERK'S OFFICE 

County Clerk's Recording Page

Return to:
    BOX 359

| | |
|---|---|
| Book Type: **D**  Book: **11227**  Page: **9904** | |
| Page Count: | 3 |
| Doc Type: | DEED |
| Rec Date: | 08/14/2012 |
| Rec Time: | 10:38:38 AM |
| Control #: | 2012183014 |
| UserID: | Nancy |
| Trans #: | 12126124 |

Party 1:
MACRIS MARK K

Party 2:
SCHAEFER CATHERINE M

Document Sequence Number
    TT2012000793

**Recording Fees:**

**Consideration Amount:  1.00**

| | |
|---|---|
| Fee 1 | $35.00 |
| Fee 2 | $1.00 |
| COE STATE $14.25 GEN | $14.25 |
| COE STATE $4.75 RM | $4.75 |
| RP5217 CNTY $9 | $9.00 |
| RP5217 ST-RES $116 | $116.00 |
| TP584 | $10.00 |

| | |
|---|---|
| BASIC MT | $0.00 |
| SONYMA MT | $0.00 |
| ADDL MT/NFTA | $0.00 |
| SP MT/M-RAIL | $0.00 |
| NY STATE TT | $0.00 |
| ROAD FUND TT | $0.00 |

**Total: $190.00**

STATE OF NEW YORK
ERIE COUNTY CLERK'S OFFICE

*WARNING – THIS SHEET CONSTITUTES THE CLERK'S ENDORSEMENT REQUIRED
BY SECTION 319&316-a (5) OF THE REAL PROPERTY LAW OF THE STATE OF NEW
YORK. DO NOT DETACH. THIS IS NOT A BILL.*

Christopher L. Jacobs
County Clerk

**WARRANTY DEED WITH LIEN COVENANT**                    **BOX 359**

**THIS INDENTURE, made** *February 03*                    **, 2017**

MARK K. MACRIS and CATHERINE M. SCHAEFER (f/k/a CATHERINE M. MACRIS), formerly husband and wife, residing at
403 Teakwood Terrace, Williamsville, New York 14221

                                                        Grantors, and

CATHERINE M. SCHAEFER, (f/k/a CATHERINE M. MACRIS), residing at
403 Teakwood Terrace, Williamsville, New York 14221

                                                        Grantee.

**WITNESSETH,** that the said Grantors, in consideration of One and No More Dollars ($1.00 and no more), lawful money of the United States, paid by the Grantee, does hereby grant and release unto the Grantee, her heirs and assigns forever the following:

**ALL THAT TRACT OR PARCEL OF LAND,** situate in the Town of Amherst, County of Erie and State of New York, being part of Lot Number ninety-seven (97), Township twelve (12), Range seven (7) of the Holland Land Company's Survey and further distinguished as Subdivision Lot Number six hundred twenty-two (622) filed in the Office of the Erie County Clerk under Cover No. 2278.

**TOGETHER** with the appurtenances and all the estate and rights of the Grantor(s) in and to the said premises.

**TO HAVE AND TO HOLD,** the above granted premises unto the said Grantee(s).

**AND** the said Grantor(s) do(es) covenant with said Grantee(s) as follows:

**FIRST:** That the Grantee(s) shall quietly enjoy the said premises.

**SECOND:** That the Grantor(s) will forever WARRANT the title to said premises.

**THIRD:** Subject to the trust fund provisions of section thirteen of the lien law.

**THIS CONVEYANCE** is made pursuant to terms of a Matrimonial Agreement and subsequent Divorce Decree between the parties and is not made with the intent to defraud creditors, nor does the conveyance render the Grantors insolvent or bankrupt.

*Amh*
*DEED - 2*
*1 ½ 2014*

**IN WITNESS WHEREOF**, the Grantors have hereunto set their hands and seals the day and year first above written.

_____
MARK K. MACRIS

_____
CATHERINE M. SCHAEFER
(f/k/a CATHERINE M. MACRIS)

STATE OF NEW YORK )
COUNTY OF ERIE )ss.

On the 27th day of May 2011, before me, the undersigned, a notary public in and for said state, personally appeared, MARK K. MACRIS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

REBECCA J. EVERLETH
Notary Public, State of New York
Qualified in Niagara County
Reg #01EV6023622
My Commission Expires Oct-31e-15

_____
NOTARY PUBLIC

STATE OF NEW YORK )
COUNTY OF ERIE )ss.

On the 6 day of Aug 2011, before me, the undersigned, a notary public in and for said state, personally appeared, CATHERINE M. SCHAEFER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

JOHN P. ROBSHAW, JR.
Notary Public, State of New York
Commission No. 02RO3313698
Qualified in Erie County
Commission Expires Sept. 30, 2013

STATE OF NEW YORK
SUPREME COURT        COUNTY OF ERIE

---

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
FOR THE SROF-2013-S3 REMIC TRUST I,**

Index No.: 803473/2015

Plaintiff,

Mortgaged Premises:
403 Teakwood Ter
Amherst, (Town of Amherst) NY
14221

vs.

**MARK K. MACRIS;
CATHERINE M. MACRIS;**
and **"JOHN DOE"** and **"MARY DOE,"**
(Said names being fictitious, it being the intention of
plaintiff to designate any and all occupants, tenants, persons
or corporations, if any, having or claiming an interest in
or lien upon the premises being foreclosed herein.)

Defendants.

---

## NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC FILING

PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.

The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646386-3033 or efile@courts.state.ny.us.

DATED:  March __19__, 2015                    BY: _____

Erinn K. Prestidge, Esq.
DAVIDSON FINK LLP
Attorneys for Plaintiff
Foreclosure Department
28 East Main Street, Suite 1700
Rochester, New York 14614
Tel:  (585) 760-8218

FILED: ERIE COUNTY CLERK 03/16/2015 04:55 PM

INDEX NO. 803473/2015
NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 03/16/2015

STATE OF NEW YORK
SUPREME COURT      COUNTY OF ERIE

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
FOR THE SROF-2013-S3 REMIC TRUST I,

Plaintiff,

vs.

MARK K. MACRIS;
CATHERINE M. MACRIS;
and "JOHN DOE" and "MARY DOE,"
(Said names being fictitious, it being the intention of
plaintiff to designate any and all occupants, tenants, persons
or corporations, if any, having or claiming an interest in
or lien upon the premises being foreclosed herein.)

Defendants.

Filed: 3/16/2015

Index No.: I2015-803473

**SUMMONS AND NOTICE**

Mortgaged Premises:
403 Teakwood Ter
Amherst, (Town of Amherst) NY
14221

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the Complaint in the above entitled

action and to serve a copy of your Answer on Plaintiff's attorney within twenty (20) days after

the service of this Summons, exclusive of the day of service, or within thirty (30) days after

completion of service where service is made in any other manner than by personal delivery

within the State. The United States of America, if designated as a Defendant in this action, may

answer or appear within sixty (60) days of service hereof. In case of your failure to appear or

answer, judgment will be taken against you by default for the relief demanded in the Complaint.

**NOTICE OF NATURE OF ACTION AND RELIEF SOUGHT**

THE OBJECT of the above captioned action is for the foreclosure of:

Mortgage bearing the date of February 1, 2008, executed by MARK K. MACRIS AND
CATHERINE M. MACRIS to MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR COUNTRYWIDE BANK,
FSB to secure the sum of $193,472.00, and interest, and recorded in the Office of the
Clerk of Erie County on February 19, 2008 in Book 13392 Page 1246.

That MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE
FOR COUNTRYWIDE BANK, FSB duly assigned said Note and Mortgage to BANK
OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS

SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP by Assignment dated November 8, 2011 and recorded on February 2, 2012 in the Office of the Clerk of Erie County in Book 13566 Page 1043.

That BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP duly assigned said Note and Mortgage to SECRETARY OF HOUSING AND URBAN DEVELOPMENT by Assignment dated April 3, 2014 and recorded on June 2, 2014 in the Office of the Clerk of Erie County in Book 13682 Page 7635.

That SECRETARY OF HOUSING AND URBAN DEVELOPMENT duly assigned said Note and Mortgage to U.S. BANK NATIONAL ASSOCIATION, as trustee for the SROF-2013-S3 REMIC Trust I by Assignment dated July 21, 2014 and recorded on July 31, 2014 in the Office of the Clerk of Erie County in Book 13689 Page 8020.

The relief sought in the within action is a final judgment directing the sale of the Mortgaged Premises described above to satisfy the debt secured by the Mortgage described above.

Plaintiff designates Erie County as the place of trial. The basis of venue is the County in which the Mortgaged Premises is situated.

Section: 69.08
Block: 6
Lot: 32

THIS SPACE WAS LEFT BLANK INTENTIONALLY

DATED: *December 8, 2014*
Rochester, New York

### NOTICE
### YOU ARE IN DANGER OF LOSING YOUR HOME

If you do not respond to this summons and complaint by serving a copy of the answer on the attorney for the Mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home.

Speak to an attorney or go to the court where your case is pending for further information on how to answer the summons and protect your property.

Sending a payment to your Mortgage company will not stop this foreclosure action.

YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE COURT.

BY: _____

Erinn K. Prestidge, Esq.
DAVIDSON FINK LLP
Attorneys for Plaintiff
28 East Main Street, Suite 1700
Rochester, New York 14614
Tel: (585) 760-8218

### WE ARE ATTEMPTING TO COLLECT A DEBT.
### ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

STATE OF NEW YORK
SUPREME COURT        COUNTY OF ERIE

---

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
FOR THE SROF-2013-S3 REMIC TRUST I**

                                    Plaintiff,

                        vs.

**MARK K. MACRIS;
CATHERINE M. MACRIS;
and "JOHN DOE" and "MARY DOE,"**
(Said names being fictitious, it being the intention of
plaintiff to designate any and all occupants, tenants, persons
or corporations, if any, having or claiming an interest in
or lien upon the premises being foreclosed herein.)

                                    Defendants.

Filed: 3/16/2015

Index No.: I2015-803473

**VERIFIED COMPLAINT**

---

The plaintiff herein, by **Davidson Fink LLP**, its attorneys, complains of the defendants above named, and for its cause of action, alleges:

**FIRST:**   Plaintiff, with an office at c/o Specialized Loan Servicing LLC, 7842 Lucent Boulevard, Highlands Ranch, CO 80129, is authorized to do business in this State or qualifies as a "foreign bank" pursuant to the relevant statutes and, as such, has standing and capacity to bring this action in the courts of the State of New York.

**SECOND:**   Upon information and belief, that at all times hereinafter mentioned, the defendant(s) set forth in **Schedule A** reside or have a place of business at the address set forth therein and are made defendants in this action in the capacities therein alleged and for the purpose of foreclosing and extinguishing any other right, title or interest said defendants may have in the subject premises.

**THIRD:**   That the United States of America, The People of the State of New York, The State Tax Commission of the State of New York, the Industrial Commissioner of the State of New York, and all other agencies or instrumentalities of the Federal, State or local government (however designated), if made parties to this action and if appearing in **Schedule B**, are made parties solely by reason of the facts set forth in said schedule, and for no other reason.

**FOURTH**:   That heretofore, the defendant(s), MARK K. MACRIS AND CATHERINE M. MACRIS, for the purpose of securing to plaintiff or its assignor, its successors and assigns, the sum of $193,472.00, duly made a certain bond, note, loan agreement, extension agreement, consolidation agreement, or recasting agreement, as the case may be, wherein and whereby they bound themselves, their heirs, executors, administrators and assigns, and each and every one of them, jointly and severally, in the amount of said sum of money, all as more fully appears together with the terms of repayment of said sum or rights of the plaintiff in said bond, note or other instrument. A copy of said instrument, or an affidavit regarding same, is attached hereto and made a part hereof.

**FIFTH**:   That as security for the payment of said indebtedness, a mortgage was executed, acknowledged and delivered to the plaintiff or its assignor, whereby the mortgagor or mortgagors therein named, bargained, granted and sold to the mortgagee named therein, its successors and assigns, the premises more particularly described therein (hereinafter called "mortgaged premises"), under certain conditions with rights, duties and privileges between or among them as more fully appears in said mortgage, a copy of which is attached hereto and made a part hereof.

**SIXTH**:   That the said mortgage was duly recorded (and the mortgage tax due thereon was duly paid) in the proper County Clerk's Office at the place and time which appears thereon.

**SEVENTH**:   That the defendant(s), so named, have failed and neglected to comply with the terms and provisions of said mortgage, bond/note/loan agreement, and said instrument(s) secured by said mortgage by omitting and failing to pay items of principal and interest or taxes, assessments, water rates, insurance premiums, escrow and/or other charges, all as more fully appears in **Schedule C** and accordingly the plaintiff hereby elects to call due the entire amount secured by the mortgage described in paragraph FIFTH hereof.  The default has continued beyond the applicable grace period set forth in the mortgage, and by reason thereof, plaintiff has elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal.

**EIGHTH**:   That **Schedule C** sets forth the principal balance due and the date (and rate) from which interest accrued and all other items and charges arising from said default which are now due.

**NINTH**:   That in order to protect its security, the Plaintiff has paid, if set forth in **Schedule C**, or may be compelled to pay during the pendency of this action local, taxes, assessments, water rates, insurance premiums, inspections and other charges affecting the mortgaged premises, and the plaintiff requests that any sums thus paid by it for said purposes (together with interest thereon), should be added to the sum otherwise due and be deemed secured by the said mortgage and be adjudged a valid lien on the mortgaged premises.

**TENTH**:   That each of the above-named defendants has, or claims to have, some interest in, or lien upon said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to the lien of plaintiff's mortgage.

**ELEVENTH**:   That the plaintiff is now the sole, true and lawful holder of the said bond/note/loan agreement and mortgage securing the same and there are no pending proceedings at law or otherwise to collect or enforce said bond/note and mortgage.  Copies of Assignment(s) of Mortgage, if any, are attached hereto and made a part hereof.

**TWELFTH**:   That Schedules, Exhibits and other items attached to this Complaint are expressly incorporated and made a part of the Complaint for all purposes with the same force and effect as if they were completely and fully set forth herein wherever reference has been made to each or any of them.

**THIRTEENTH**:   That by reason of the foregoing, there is now due and owing to the plaintiff upon said bond, note, loan agreement, assumption agreement, extension agreement or consolidation agreement the amount set forth in **Schedule C**.

**FOURTEENTH**:   That if the security for the indebtedness consists of more than one parcel, plaintiff respectfully requests that the judgment of foreclosure provide for the sale of the parcels in a particular order to the extent necessary to satisfy the indebtedness or that if the mortgage so states, the mortgaged premises may be sold in one parcel.

**FIFTEENTH**:   The plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of the payment or performance, after the date of the commencement of this action, of any or all of the defaults mentioned herein; and such election shall continue and remain effective until the costs and disbursements of this action, and all present and future defaults under the note and mortgage and occurring prior to the discontinuance of this action are fully paid and cured.

**SIXTEENTH**:   Pursuant to the Fair Debt Collection Practices Act, this action may be deemed to be an attempt to collect a debt on behalf of the plaintiff.  Any information obtained as a result of this action will be used for that purpose.

**SEVENTEENTH:**  At the time this proceeding is commenced, the plaintiff is the owner and holder of the subject mortgage and note, or has been delegated the authority to institute a mortgage foreclosure action by the owner and holder of the subject mortgage and note.

**EIGHTEENTH:**  If applicable, Plaintiff has complied with all of the provisions of section five hundred ninety-five-a of the banking law and any rules and regulations promulgated thereunder, section six-l or six-m of the banking law, section thirteen hundred four of the real property actions and proceedings law, and HAMP Supplemental Directive 10-02.

**NINETEENTH**:  Plaintiff has complied with all of the provisions pursuant to RPAPL §§ 1304 and 1306.

**WHEREFORE**, plaintiff demands judgment:

1.    Adjudging and decreeing the amounts due the plaintiff for principal, interest, costs and reasonable attorney's fees, if provided for in the said bond/note/loan agreement or mortgage; and

2.    That the defendant(s) and all persons claiming by, through or under them, or either or any of them, subsequent to the commencement of this action and every other person or corporation whose right, title, conveyance or encumbrance is subsequent to or subsequently recorded, may be barred and forever foreclosed of all right, claim, lien, interest or equity of redemption in and to said mortgaged premises;

3.    That the said mortgaged premises, or such part thereof as may be necessary to raise the amounts due for principal, interest, costs, reasonable attorney's fees, allowances and disbursements, together with any monies advanced and paid, may be decreed to be sold according to law;

4.    That out of the monies arising from the sale thereof, the plaintiff may be paid the amounts due on said bond/note/loan agreement and mortgage and any sum which may have been paid by the plaintiff to protect the lien of plaintiff's mortgage as herein set forth, with interest upon said amounts from the dates of the respective payments and advances thereof, the costs and expenses of this action, additional allowance, if any, and reasonable attorney's fees, if provided

for in said bond, note, loan agreement or mortgage, so far as the amount of such money properly applicable thereto will pay the same;

5.     The premises are being sold subject to:

(a)  All common charges, if any, which are at the time a lien on the premises, together with such interest or penalties as may have lawfully accrued thereon to the date of payment;

(b)  Covenants, restrictions and easements of record and zoning regulations and ordinances of the City, Town and Village in which said premises lie;

(c)  Rights of the public and others in and to any part of the mortgaged premises that lies within the bounds of any street, alley or highway;

(d)  Any state of facts that an accurate survey, currently dated, might disclose;

(e)  Any state of facts an inspection would disclose, it being understood that the property is sold in an "as is" and "where is" condition;

(f)  Any and all tenancies, possessory interests and/or leases affecting said premises which are not extinguished by this foreclosure action;

(g)  The right of redemption of the United States of America, if any;

6.     That if the proceeds of said sale of the mortgaged premises aforesaid be insufficient to pay the amount found due to the plaintiff with interest and costs, the officer making the sale be required to specify the amount of such deficiency in his report of sale so that plaintiff may thereafter be able to make application to this Court, pursuant to Section 1371 of the Real Property Actions and Proceedings Law, for a judgment against the defendant(s) referred to in paragraph FOURTH of this Complaint for any deficiency which may remain after applying all of such moneys so applicable thereto, **except that this shall not apply to any defendant who has been discharged in bankruptcy from the subject debt;**

7.     That either or any of the parties to this action may become a purchaser upon such sale;

8.     That this Court, if requested, forthwith appoint a Receiver of the rents and profits of said premises with the usual powers and duties;

9.     That the plaintiff may have such other or further relief, or both, as may be just and equitable.

Plaintiff specifically reserves its right to share in any surplus monies arising from the sale of subject premises by virtue of its position as a judgment or other lien creditor excluding the mortgage being foreclosed herein;

DATED: December 8, 2014
Rochester, New York

BY: _____
Erinn K. Prestidge, Esq.
DAVIDSON FINK LLP
Attorneys for Plaintiff
Foreclosure Department
28 East Main Street, Suite 1700
Rochester, New York 14614
Tel: (585) 760-8218

**VERIFICATION**
(Complaint)

I affirm under penalty of perjury: That I am the attorney for Plaintiff, having an office at 28 East Main Street, Suite 1700, Rochester, New York, 14614, in the within action; that I have read the foregoing Summons and Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters I believe them to be true.  That the grounds of my belief as to all matters in the Complaint not stated to be upon knowledge are based upon the original bond/note/loan agreement, mortgage and/or financial statements, together with correspondence.  I further state that the reason this verification is made by Affirmant and not an officer of Plaintiff's corporation is that Plaintiff is either a foreign corporation, or its principal place of business is not in the county where I have my office.

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

_____
Erinn K. Prestidge, Esq.

Sworn to before me this _8_
day of _December, 2014_

_____
Notary Public

NICOLE A. RIVERS
NOTARY PUBLIC, State of New York
No. 01RI6235416
Qualified in Monroe County
Commission Expires February 22, 2015

**NOTICE REQUIRED BY THE FAIR DEBT
COLLECTION PRACTICES ACT
(THE ACT), 15 U.S.C. SECTION 1601 AS AMENDED**

1.    THE AMOUNT OF THE DEBT IS STATED IN THE COMPLAINT HERETO ATTACHED.

2.    THE PLAINTIFF AS NAMED IN THE ATTACHED SUMMONS AND COMPLAINT IS THE CREDITOR TO WHOM THE DEBT IS OWED.

3.    THE DEBT DESCRIBED IN THE COMPLAINT ATTACHED HERETO WILL BE ASSUMED TO BE VALID BY THE CREDITOR'S LAW FIRM, UNLESS THE DEBTOR, WITHIN THIRTY (30) DAYS AFTER THE RECEIPT OF THIS NOTICE, DISPUTES THE VALIDITY OF THE DEBT OR SOME PORTION THEREOF.

4.    IF THE DEBTOR NOTIFIES THE CREDITOR'S LAW FIRM WITHIN THIRTY (30) DAYS OF THE RECEIPT OF THIS NOTICE THAT THE DEBT OR ANY PORTION THEREOF IS DISPUTED, THE CREDITOR'S LAW FIRM WILL OBTAIN A VERIFICATION OF THE DEBT AND A COPY OF THE VERIFICATION WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

5.    IF THE CREDITOR NAMED AS PLAINTIFF IN THE ATTACHED SUMMONS AND COMPLAINT IS NOT THE ORIGINAL CREDITOR, AND IF THE DEBTOR MAKES A REQUEST TO THE CREDITOR'S LAW FIRM WITHIN THE THIRTY (30) DAYS FROM THE RECEIPT OF THIS NOTICE, THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR WILL BE MAILED TO THE DEBTOR BY THE CREDITOR'S LAW FIRM.

6.    REQUESTS SHOULD BE ADDRESSED TO DAVIDSON FINK LLP, 28 EAST MAIN STREET, 1700 FIRST FEDERAL PLAZA, ROCHESTER, NEW YORK 14614, (585) 760-8218.

7.    THE ABOVE-REFERENCED THIRTY (30) DAYS TIME PERIOD IN WHICH THE DEBTOR MAY DISPUTE THIS DEBT SHALL IN NO WAY AMEND OR EXTEND SAID DEBTOR'S STATUTORY TIME PERIOD, AS STATED IN THE ATTACHED SUMMONS, TO INTERPOSE AN ANSWER TO THE COMPLAINT IN THIS MATTER.

### Schedule A-Defendants

MARK K. MACRIS
67 Federal Ave
Cheektowaga, NY 14225

Original mortgagor of premises being foreclosed herein and the party liable for payment of the note and mortgage herein.

CATHERINE M. MACRIS
403 Teakwood Ter
Amherst, NY 14221

Record owner and original mortgagor of premises being foreclosed herein by virtue of a deed recorded on August 14, 2012 in the Erie County Clerk's Office in Book 11227 Page 9904 and the party liable for payment of the note and mortgage herein.

"JOHN DOE" and "MARY DOE"
403 Teakwood Ter
Amherst, NY 14221

Said names being fictitious, it being the intention of plaintiff to designate any and all occupants, tenants, persons or corporations, if any, having or claiming an interest in or lien upon the premises being foreclosed herein.

**Schedule B-Defendants**

FILED: ERIE COUNTY CLERK 11/20/2015 02:10 PM

NYSCEF DOC. NO. 22

INDEX NO. 803473/2015

RECEIVED NYSCEF: 11/20/2015

At an Ex Parte Term of the Supreme Court,
held in and for the County of Erie at the Erie
County Hall, Buffalo, New York on the _18th_
day of _November_ 2015.

PRESENT:   HON. ___JAMES H. DILLON___

J.S.C.

STATE OF NEW YORK
SUPREME COURT        COUNTY OF ERIE

---

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
FOR THE SROF-2013-S3 REMIC TRUST I,**

Plaintiff,

-vs-

**MARK K. MACRIS;
CATHERINE M. MACRIS;**
and **"JOHN DOE"** and **"MARY DOE,"**
(Said names being fictitious, it being the intention of plaintiff to
designate any and all occupants, tenants, persons or corporations,
if any, having or claiming an interest in or lien upon the premises
being foreclosed herein.)

Defendants.

Index No.: 803473/2015

**ORDER OF REFERENCE**

Mortgaged Premises:
403 Teakwood Ter
Amherst, (Town of Amherst)
NY 14221

---

UPON the Summons, Verified Complaint and Notice of Pendency filed in this action on

March 16, 2015 hereto annexed as Exhibit A, and upon reading plaintiff's sworn affidavit and

the affirmation of Kurt B. Odenbach, an attorney with the firm of Davidson Fink LLP, counsel

for Plaintiff herein, dated ___10/9/2015___ and upon the Affidavit of Cynthia

Wallace, who is Second Assistant Vice President of Plaintiff sworn to October 8, 2015, from all

of which it appears that this action was brought to foreclose a certain Mortgage upon real

property situated at 403 Teakwood Ter, Amherst, NY 14221, County of Erie; and it further

appearing that each and all Defendants have appeared herein or have been duly served with the

Summons and Verified Complaint, which copies of said affidavits of service are annexed hereto as Exhibit B, except the Defendants 'John Doe' and 'Mary Doe' who were not served copies of the Summons and Verified Complaint and are not necessary parties to this action, and that the time to answer has expired as to each and all Defendants and that no answer has been interposed nor any motion nor appearance made by any Defendants except Catherine Schaefer and that said Defendants have now defaulted herein; and it appearing that none of the Defendants is an infant, incompetent, absentee or in the military; and that since the filing of the Notice of Pendency the Complaint has not been amended; and on all the pleadings and papers filed herein, and the proceedings had herein;

NOW, on motion of Kurt B. Odenbach, of Davidson Fink LLP, attorneys of record for Plaintiff herein, it is:

ORDERED, that the motion is granted; and it is further

ORDERED, that Mark Macris be dropped from the caption as said defendant is no longer a necessary party defendant; and it is further

ORDERED, that this action be and the same hereby is discontinued as against Defendants sued herein as 'John Doe' and 'Mary Doe', not having been served with copies of the Summons and Complaint and are not necessary party Defendants, and that the said Defendants be stricken out and eliminated from the title and caption of this action accordingly, all without prejudice to any of the proceedings heretofore had or to be had in this action; and it is further

ORDERED, that the caption be amended to reflect the recorded Assignment of Mortgage; and it is futher

ORDERED, that the caption shall read as follows:

**U.S. ROF III Legal Title Trust 2015-1, by U.S. Bank National Association, as Legal Title Trustee**

Plaintiff,                          Index No.: 803473/2015

-vs-

**CATHERINE M. MACRIS;**

Defendants.

; and it is further

ORDERED, that this action be and the same hereby is referred to

JASON DIPASQUALE, Esq,

with an office at  43 Court Street, Suite 800, Buffalo NY  14202

Phone Number: 716 854 5311            Fax Number:

as Referee to ascertain and compute the amount due except attorney's fees to Plaintiff in this

action for principal and interest on the Note and Mortgage sued upon and set forth in the

Complaint and for payments made by Plaintiff for taxes, assessments, water charges, insurance

premiums and any other expenses that Plaintiff has paid or may pay in connection with the

protection of its security hereunder against the Mortgaged Premises including, but not limited to,

the costs of preserving or protecting the Mortgaged Premises, and fees for other services and

charges affecting the premises herein described, during the pendency of this action and until the

closing of title with purchaser at foreclosure sale, and that any sums so paid by Plaintiff shall be

added to the sum otherwise due to Plaintiff, pursuant to Plaintiff's claim herein, and shall be

deemed secured by said Note and Mortgage as therein provided and adjudged a valid lien on the

Mortgages Premises herein described, with interest thereon from the date of each such payment, and to examine and report whether the Mortgaged Premises should be sold in one or more parcels and the Referee complete his report to the Court with all convenient speed; and it is further

ORDERED that, if required, the Referee take testimony pursuant to §1321 of the Real Property Actions and Proceedings Law (RPAPL); and it is further

ORDERED, that the Referee appointed herein is subject to the requirements of Rule (c) of the Chief Judge, and if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall notify the Appointing Judge forthwith; and it is further

ORDERED, that by accepting this appointment the Referee certifies that he/she is in compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to, §36.2(c) ("Disqualifications from appointment") and § 36.2(d) ("Limitations on appointments based upon compensation"); and it is further

ORDERED, that a copy of this Order with Notice of Entry shall be served upon the owner of the equity of redemption, any tenants named in this action and any other party entitled to notice.

Dated:
Buffalo, New York

ENTER:  IN ERIE COUNTY

JAMES H. DILLON                    J.S.C.

Section:   69.08
Block:      6
Lot:         32

**GRANTED**

NOV 2 0 2015

BY
LAURA HAAS
COURT CLERK

