**EXHIBIT M**



8742 Lucent Boulevard ▪ Suite 300 ▪ Highlands Ranch, CO 80129

P 800-315-4757
F 720-241-7218

May 23, 2016

Mark K. Macris
Catherine M. Macris
403 Teakwood Terrace
Amherst, NY  14221

RE:  Loan Number:  ████ **2479**

Dear Mark K. Macris and Catherine M. Macris,

This letter is in response to a written request received by Specialized Loan Servicing LLC ("SLS") on May 2, 2016 regarding your request to be removed from the above referenced account.

After a review of our records, it has been determined that both parties listed above executed the Note and Deed of Trust/Mortgage when the above referenced mortgage was originated.  Enclosed is a copy of the Note, Deed of Trust/Mortgage, payment history and transaction codes for your reference.  SLS is unable to accept the court documents you sent to remove a party from this loan. SLS is a third party mortgage loan servicer and does not offer refinancing.

In accordance with the Fair Credit Reporting Act ("FCRA"), SLS is required to report payments and account status accurately; therefore, credit cannot be corrected as a courtesy.  Please note that SLS has complied with your requests for information in accordance with both state and federal law.

It has been determined that SLS has forwarded account information to the credit reporting agencies accurately and we have not discovered any inaccuracies in the information that we have.

In researching your account, we have found no errors.  You have a right to request the documents relied upon in reaching this determination by contacting us at the number above, but please note that SLS has already enclosed the same for your reference as outlined above.

If you have any questions regarding this information, please contact Customer Care toll free at 1-800-315-4757, Monday through Friday, 6:00 a.m. until 6:00 p.m. MT or TDD 1-800-268-9419, Monday through Friday, 8:00 a.m. until 5:00 p.m. MT.

Sincerely,

*Patricia*

Patricia, Teller ID# 30614
Customer Care Support
Specialized Loan Servicing LLC

Enclosure(s)

**PLEASE SEE IMPORTANT DISCLOSURE ON FOLLOWING PAGE**



8742 Lucent Boulevard ■ Suite 300 ■ Highlands Ranch, CO 80129

P 800-315-4757
F 720-241-7218

**SPECIALIZED LOAN SERVICING LLC IS REQUIRED BY FEDERAL LAW TO ADVISE YOU THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

**BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.**

Prepared by: MANUEL LAFONT

**Multistate**                          # NOTE

LOAN #: ███████3414                               FHA Case No.
                                                  ███████3703

FEBRUARY 01, 2008
      [Date]

                    403 TEAKWOOD TERRACE, AMHERST, NY 14221
                              [Property Address]

### 1.   PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means COUNTRYWIDE BANK, FSB
and its successors and assigns.

### 2.   BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED NINETY THREE THOUSAND FOUR HUNDRED SEVENTY TWO and 00/100

Dollars (U.S. $193,472.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX                                        percent (   6.000 %) per year until the full amount of principal has been paid.

### 3.   PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a Mortgage, Deed of Trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4.   MANNER OF PAYMENT
**(A)  Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on APRIL 01, 2008       . Any principal and interest remaining on the first day of MARCH, 2038        , will be due on that date, which is called the "Maturity Date."
**(B)  Place**
Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.
**(C)  Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $1,159.96        . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
**(D)  Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐  Graduated Payment Allonge     ☐  Growing Equity Allonge     ☐  Other [specify]

### 5.   BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6.   BORROWER'S FAILURE TO PAY
**(A)  Late Charge for Overdue Payments**
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR                            percent (   4.000 %) of the overdue amount of each payment .

**(B)  Default**
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of





Case 1:17-cv-00365-WMS-LGF   Document 40-35   Filed 10/31/18   Page 5 of 28

CASE #:                    3703                                                          LOAN #:        8414

payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

   (C)  Payment of Costs and Expenses
        If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.  WAIVERS
   Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.  GIVING OF NOTICES
   Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
   Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE
   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.


PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY  *Michele Sjolander*
     MICHELE SJOLANDER
     SENIOR VICE PRESIDENT


BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.


_____  (Seal)
MARK K. MACRIS                     -Borrower

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

_____  (Seal)
CATHERINE M. MACRIS                -Borrower

BY  *Laurie Meder*
    LAURIE MEDER
    SENIOR VICE PRESIDENT

_____  (Seal)
                                   -Borrower

_____  (Seal)
                                   -Borrower

CRPRDNRBS46b          12/12/2011 12:55:45 PM   PAGE   44/108     888-294-5658



610 ████ 3414  N   001  002



**Home Loans**

BAC Home Loans Servicing, LP
100 Beecham Drive Suite 104
Pittsburgh, PA 15205

Notice Date: April 16, 2010

MARK K MACRIS
CATHERINE M MACRIS
403 TEAKWOOD TERRACE
AMHERST, NY 14221

Account No: ████ 3414

FHA Case No: ████ 3703

Property Address:
403 TEAKWOOD TERRACE
AMHERST, NY 14221

## AMENDED AND RESTATED NOTE
### State of New York

Origination Date: February 1, 2008

**1. PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means BAC Home Loans Servicing, LP and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of two hundred seven thousand six hundred ninety five and 77/100 (Dollars U.S.) $207,695.77 plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of five and 50/100, (5.500%) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on June 1, 2010. Any principal and interest remaining on the May 1, 2040 will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made to Payment Processing  PO Box 650070  Dallas, TX 75265, or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. 1,179.27. This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge          ☐ Growing Equity Allonge          ☐ Other [specify]

CRPRDNRBS46b          12/12/2011 12:55:45 PM   PAGE   46/108     888-294-5658

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payments unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of 4.00% of the overdue amount of each payment. of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.

This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the Principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the right of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address. Any notice that must be given to Lender under this Note will be given by first- class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

## 10. GROUNDS FOR ACCELERATION OF DEBT

### (A) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by the Security Instrument and due under this Note if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Note and the Security

Instrument prior to or on the due date of the next monthly payment, or (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in the Security Instrument securing this Note.

**(B) Sale Without Credit.** Lender shall, if permitted by applicable law (including section 341 (d) of the Garn- St Germain Depository Institutions Act of 1982, 12 U.S.C. 1702j-3(d) and with the prior approval of the Secretary, require immediate payment in full of all the sums due under this Note and secured by the Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been in accordance with the requirements of the Secretary.

**(C) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payment, Lender does not waive its right with respect to subsequent events.

**(D) Regulations of HUD.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclosure if not paid. This Note and the Security Instrument do not authorize acceleration of foreclosure if not permitted by regulations of the Secretary.

**(E) Mortgage Not Insured.** Borrower agrees that should the Security Instrument and this Note secured thereby not be eligible under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 10, require immediate payment in full of all sums secured by the Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date thereof, declining to insure the Security Instrument and this Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by lender when the unavailability of insurance is solely due to Lender's failure to remit mortgage insurance premium to the Secretary.

BY SIGNING BELOW, borrower accepts and agrees to the terms and covenants contained in this Note.

MARK K MACRIS _____ Dated _____

_Catherine M Macris_ Dated 4/20/2010
CATHERINE M MACRIS

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.

WITHOUT RECOURSE
BAC HOME LOANS SERVICING, LP

BY _Michele Sjolander_
MICHELE SJOLANDER
SVP, OPERATIONS AND LOAN DELIVERY

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _Michele Sjolander_
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

COVER SHEET REV 02-14-06



## ERIE COUNTY CLERKS OFFICE
**County Clerk's Recording Page**

Return To:

COUNTRYWIDE HOME LOANS INC
PO BOX 10423

VAN NUYS CA 91410

Party 1:
**MACRIS MARK K**

Party 2:
**COUNTRYWIDE BANK**

Book: **13392**     Page: **1246**

Page Count: **8**

Doc Type: **MTG 1-2 BANK**

Rec Date: **02/19/2008**

Rec Time: **03:37:55 PM**

Control #: **2008034590**

User ID: **lance**

Trans Num: **487898**

DEED SEQ:

MTG SEQ: **MTCY2007032488**

UCC:

SCAR:

INDEX:

| Recording Fees: | | | Consideration Amount: | **$193,472.00** |
|---|---|---|---|---|
| RECORDING | $41.00 | | BASIC | **$967.50** |
| COE COUNTY | 1.00 | | SONYMA | **$0.00** |
| BASIC | $967.50 | | ADDL | **$458.75** |
| ADDL | $458.75 | | NFTA MT | **$483.75** |
| NFTA MT | $483.75 | | TRANSFER | **$0.00** |
| COE STATE GENERAL | $14.25 | | NFTA TT | **$0.00** |
| COE STATE RM | $4.75 | | | |

**Total:**     **$1,971.00**

**STATE OF NEW YORK**
**ERIE COUNTY CLERK'S OFFICE**

**WARNING - THIS SHEET CONSTITUTES THE CLERK'S ENDORSEMENT,**
**REQUIRED BY SECTIONS 319&316-a (5) OF THE REAL PROPERTY LAW**
**OF THE STATE OF NEW YORK.  DO NOT DETACH.  THIS IS NOT A BILL.**

**Kathleen C. Hochul**
**County Clerk**

THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO
FAMILY RESIDENCE OR DWELLING ONLY.

Return To:
COUNTRYWIDE BANK, FSB
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
KIM WALDRON

———————————————— [Space Above This Line For Recording Data] ————————————————

████████3703              RT-08-02684              ████████2008
  [Case #]              [Escrow/Closing #]              [Doc ID #]

**State of New York**

# MORTGAGE

FHA Case No.
████████3703

MIN ████████742-8

THIS MORTGAGE ("Security Instrument") is given on    FEBRUARY 01, 2008    . The Mortgagor is
MARK K MACRIS, AND CATHERINE M MACRIS

whose address is
403 TEAKWOOD TERRACE, AMHERST, NY 14221                                     ,
("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"),
(solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS
IS THE MORTGAGEE OF RECORD.**
COUNTRYWIDE BANK, FSB
("Lender") is organized and existing under the laws of THE UNITED STATES          , and has an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314                                     .
Borrower owes Lender the principal sum of
ONE HUNDRED NINETY THREE THOUSAND FOUR HUNDRED SEVENTY TWO and 00/100

Dollars (U.S. $ 193,472.00          ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on    MARCH 01, 2038    . This Security Instrument secures to Lender: (a) the repayment of the
debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender
and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property

Section: 69.08      Block: 6      Lot: 32      Unit: _____

FHA New York Mortgage with MERS - 4/96                    Page 1 of 8
(VMP) -4N(NY) (0506)      CHL (09/05)(d)      VMP Mortgage Solutions, Inc. (800)521-7291                    Amended 2/01





AM H
6 (
m2) - 7

CASE #: ████████████3703                    DOC ID #: ███████████2008
located in  ERIE                           County, New York:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which has the address of            403 TEAKWOOD TERRACE, AMHERST
                                            [Street, City]
New York   14221   ("Property Address");
           [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

CASE #: ▮▮▮▮3703                                    DOC ID #: ▮▮▮▮▮▮▮2008

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an

CASE #: [redacted]3703                    DOC ID #: [redacted]2008

agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8. Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9. Grounds for Acceleration of Debt.**

        **(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

            (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

            (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

        **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

            (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

            (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

        **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

        **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

        **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

    **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

    **13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

CASE #: ████████3703                    DOC ID #: ████████2008

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may bring a lawsuit to take away all of the Borrower's remaining rights in the Property and have the Property sold. At this sale, Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount owed Lender, which fees shall become part of the Sums Secured.**

**Lender may require immediate payment in full under paragraph 9.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Borrower will not be required to pay Lender for the discharge, but Borrower will pay all costs of recording the discharge in the proper official records.

**20. Agreements about New York Lien Law.** Borrower will receive all amounts lent by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, Borrower will: (A) hold all amounts which Borrower received and which Borrower has a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts only to pay for that construction or work before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvement located on the Property Borrower has a special responsibility under the law to use the amount in the manner described in this paragraph 20.

CASE #: ▓▓▓▓▓▓▓3703                                    DOC ID #: ▓▓▓▓▓▓▓2008

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

☐ Condominium Rider            ☐ Growing Equity Rider            ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
MARK K. MACRIS                                    -Borrower

_____ (Seal)
CATHERINE M. MACRIS                               -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

**STATE OF NEW YORK** County of Erie                )ss.

On the _____1_____ day of ___Feb___ in the year _2008_ before me, the undersigned, a notary public in and for said state, personally appeared _____
Mark K. Macris & Catherine M. Macris_____

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

My Commission Expires: _____
                                        Notary Public

ROBERT R. GOODS
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Aug. 12, 20___
7/11/08

Tax Map Information:

-4N(NY) (0508)      CHL (09/05)                Page 6 of 6

Prepared by: KIM WALDRON

## COUNTRYWIDE BANK, FSB

Branch #: 0000710
6440 SOUTHPOINT PARKWAY  #300
JACKSONVILLE, FL 32216
Phone: (866)205-9595
Br Fax No.: (000)000-0000

DATE:          02/01/2008
CASE #:        ██████████3703
DOC ID #:      ███████2008
BORROWER: MARK K. MACRIS
PROPERTY ADDRESS: 403 TEAKWOOD TERRACE
                  AMHERST, NY 14221

## LEGAL DESCRIPTION EXHIBIT A

### COMMITMENT

### LEGAL DESCRIPTION

File Number: **RT-08-02684**

All that Tract or Parcel of Land, situate in the Town of Amherst, County of Erie and State of New York, being part of Lot Number ninety-seven (97), Township twelve (12), Range seven (7) of the Holland Land Company's Survey and further distinguished as Subdivision Lot Number six hundred twenty-two (622) filed in the Office of the Erie County Clerk under Cover No. 2278.

Being the same premises as was conveyed to Mark K. Macris and Catherine M. Macris by Warranty Deed recorded 10/12/2006 in the Erie County Clerk's Office in Liber 11120 of Deeds at Page 4787.

Tax Account Number 69.08 - 6 - 32.

Premises being known as 403 Teakwood Terrace, Buffalo, NY 14221.

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03)(d)





**Payment Histories**

Account Number: ■■■ 2479
Borrower Information: MARK K MACRIS
403 TEAKWOOD TER
AMHERST, NY 14221

| Account Number | Transaction Date | Effective Date | Principal Amt | Interest Amt | Escrow Amt | Late Charge Amt | Unapplied Funds Amt | Transaction Amt | Transaction Type | Balance Principal | Balance Escrow |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1008702479 | 01/26/2016 | 01/26/2016 | $0.00 | $0.00 | ($2,625.82) | $0.00 | $0.00 | ($2,625.82) | E92 | 188706.88 | -46963.95 |
| 1008702479 | 12/15/2015 | 12/15/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($375.00) | FB | N/A | N/A |
| 1008702479 | 09/25/2015 | 09/25/2015 | $0.00 | $0.00 | ($757.00) | $0.00 | $0.00 | ($757.00) | E21 | 188706.88 | -44338.13 |
| 1008702479 | 09/17/2015 | 09/17/2015 | $0.00 | $0.00 | ($3,791.44) | $0.00 | $0.00 | ($3,791.44) | E91 | 188706.88 | -43581.13 |
| 1008702479 | 07/31/2015 | 09/01/2009 | $0.00 | $0.00 | ($39,789.69) | $0.00 | $0.00 | ($39,789.69) | PT | 188706.88 | -39789.69 |
| 1008702479 | 07/31/2015 | 07/31/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ITR | 188706.88 | 0.00 |
| 1008702479 | 07/31/2015 | 09/01/2009 | $0.00 | $0.00 | $39,789.69 | $0.00 | $0.00 | $39,789.69 | RT | 188706.88 | 0.00 |
| 1008702479 | 07/22/2015 | 07/22/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($500.00) | FWV | N/A | N/A |
| 1008702479 | 07/17/2015 | 07/17/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $665.00 | FB | N/A | N/A |
| 1008702479 | 07/17/2015 | 07/17/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $461.00 | FB | N/A | N/A |
| 1008702479 | 07/17/2015 | 07/17/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $500.00 | FB | N/A | N/A |
| 1008702479 | 03/31/2015 | 09/01/2009 | $0.00 | $0.00 | ($39,789.69) | $0.00 | $0.00 | ($39,789.69) | PT | 188706.88 | -39789.69 |
| 1008702479 | 03/31/2015 | 03/31/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ITR | 188706.88 | 0.00 |
| 1008702479 | 03/31/2015 | 09/01/2009 | $0.00 | $0.00 | $39,789.69 | $0.00 | $0.00 | $39,789.69 | RT | 188706.88 | 0.00 |
| 1008702479 | 03/30/2015 | 03/30/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $54.00 | FB | N/A | N/A |
| 1008702479 | 03/30/2015 | 03/30/2015 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $460.00 | FB | N/A | N/A |
| 1008702479 | 01/22/2015 | 01/22/2015 | $0.00 | $0.00 | ($2,726.36) | $0.00 | $0.00 | ($2,726.36) | E92 | 188706.88 | -39789.69 |
| 1008702479 | 09/25/2014 | 09/25/2014 | $0.00 | $0.00 | ($721.00) | $0.00 | $0.00 | ($721.00) | E21 | 188706.88 | -37063.33 |
| 1008702479 | 09/15/2014 | 09/15/2014 | $0.00 | $0.00 | ($3,758.46) | $0.00 | $0.00 | ($3,758.46) | E91 | 188706.88 | -36342.33 |
| 1008702479 | 09/08/2014 | 09/08/2014 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $350.00 | FB | N/A | N/A |
| 1008702479 | 08/18/2014 | 08/18/2014 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($195.00) | FWV | N/A | N/A |
| 1008702479 | 08/15/2014 | 08/15/2014 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $195.00 | FB | N/A | N/A |
| 1008702479 | 07/23/2014 | 07/23/2014 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $81.00 | FB | N/A | N/A |
| 1008702479 | 07/23/2014 | 07/23/2014 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($350.00) | FWV | N/A | N/A |
| 1008702479 | 07/21/2014 | 07/21/2014 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $350.00 | FB | N/A | N/A |
| 1008702479 | 04/09/2014 | 04/09/2014 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $660.00 | FB | N/A | N/A |
| 1008702479 | 04/09/2014 | 04/09/2014 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $15.00 | FB | N/A | N/A |
| 1008702479 | 04/09/2014 | 04/09/2014 | $0.00 | $0.00 | ($32,583.87) | $0.00 | $0.00 | ($32,583.87) | SR0 | 188706.88 | -32583.87 |

| Paid Through Date | Transaction Code | Transaction Desc |
|---|---|---|
| 09/01/2009 | | |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | | |
| 09/01/2009 | | |
| 09/01/2009 | | |
| 09/01/2009 | 000 | |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | | |
| 09/01/2009 | 000 | |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | | |
| 09/01/2009 | | |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | 40 | EXPENSE ADVANCES |
| 09/01/2009 | 36 | CORP ADV 1 DEFAULT AD |
| 09/01/2009 | | |

# PAYMENT TRANSACTION CODES

| PRIMARY | |
|---|---|
| **TYPE** | **DESCRIPTION** |
| AP | MORTGAGE PAYMENT |
| CT | PAYMENT TO PRINCIPAL |
| CTA | PAYMENT TO PRINCIPAL |
| CTB | INVESTOR TRANSACTION |
| CTR | INVESTOR TRANSACTION |
| CTT | INVESTOR TRANSACTION |
| CWA | CURTAILMENT POSTED WITH A PAYMENT VIA AUTOPOST |
| CWP | CURTAILMENT POSTED |
| FB | FEE BILLED |
| FE | FEE PAID |
| FEA | FEE PAID BY AUTOPOST |
| FP | FEE COLLECTED OR PAID |
| FR | FEE REVERSAL |
| FWA | FEE PAID WITH AN AUTOPOSTED PAYMENT |
| FWP | FEE PAID |
| FWV | FEE WAIVED |
| PA | PAYMENT |
| PF | PAYOFF |
| PR | PAYMENT REVERSAL |
| PRL | PAYMENT REVERSAL |
| PRN | PAYMENT REVERSAL |
| PT | INVESTOR TRANSACTION |
| RP | REGULAR PAYMENT |
| RT | INVESTOR TRANSACTION |
| SR | SINGLE ITEM RECEIPT |
| SRA | SINGLE ITEM RECEIPT VIA AUTOPOST |
| SRN | SINGLE ITEM RECEIPT REVERSAL |
| SVC | SERVICE RELEASE REVERSAL |
| SVP | SERVICE RELEASE REVERSAL |
| SWA | SINGLE ITEM RECEIPT WITH PAYMENT VIA AUTOPOST |
| SWP | SINGLE ITEM RECEIPT POSTED |
| UFU | FUNDS POSTED TO UNAPPLIED |
| UI | UNCOLLECTED ITEMS - SUCH AS INTEREST OR LATE FEES |

Continued on next page

# PAYMENT TRANSACTION CODES

| SECONDARY TYPE | DESCRIPTION |
|---|---|
| E01 | ESCROW ANALYSIS REFUND |
| E10 | PAYMENT OF LENDER-PLACED INSURANCE |
| E11 | PAYMENT OF LENDER-PLACED FLOOD INSURANCE |
| E20 | PAYMENT OF FIRE INSURANCE |
| E21 | PAYMENT OF HOMEOWNERS INSURANCE |
| E22 | PAYMENT OF FLOOD INSURANCE |
| E23 | PAYMENT WINDSTORM/HAIL/HURRICANE INSURANCE |
| E24 | PAYMENT OF EARTHQUAKE INSURANCE |
| E25 | PAYMENT OF CONDO COVERAGE |
| E26 | PAYMENT OF HOMEOWNERS 2ND POLICY |
| E27 | PAYMENT OF FIRE 2ND POLICY |
| E28 | PAYMENT OF WINDSTORM/HAILHURRICANE 2ND POLICY |
| E29 | PAYMENT OF FLOOD 2ND POLICY |
| E40 | PAYMENT OF PRIVATE MORTGAGE INSURANCE |
| E70 | CORRECTION TO ESCROW - PRIOR SERVICER |
| E90 | PAYMENT OF COUNTY TAX |
| E91 | PAYMENT OF SCHOOL TAX |
| E92 | PAYMENT OF CITY/TOWN/VILLAGE/PARISH/BOROUGH |
| E93 | PAYMENT OF WATER/IRRIGATION/SPECIAL/LIGHTING TAX |
| E94 | PAYMENT OF CONSOLIDATED TAX |
| E95 | PAYMENT OF LIENS |
| E96 | PAYMENT OF SUBDIVISION MAINTEN/BOND/MIS |
| EI | INTEREST ON ESCROW |
| EIL | INTEREST ON ESCROW |
| EIP | INTEREST ON ESCROW |
| EIS | INTEREST ON ESCROW |
| FBR | FEE BILLED |
| LD | LOSS DRAFT DISBURSEMENT |
| MO1 | ESCROW ANALYSIS REFUND |
| M10 | PAYMENT OF LENDER-PLACED INSURANCE |
| M11 | PAYMENT OF LENDER-PLACED FLOOD INSURANCE |
| M20 | PAYMENT OF FIRE INSURANCE |
| M21 | PAYMENT OF HOMEOWNERS INSURANCE |

Continued on next page

| | |
|---|---|
| M22 | PAYMENT OF FLOOD INSURANCE |
| M23 | PAYMENT WINDSTORM/HAIL/HURRICANE INSURANCE |
| M24 | PAYMENT OF EARTHQUAKE INSURANCE |
| M25 | PAYMENT OF CONDO COVERAGE |
| M26 | PAYMENT OF HOMEOWNERS 2ND POLICY |
| M27 | PAYMENT OF FIRE 2ND POLICY |
| M28 | PAYMENT OF WINDSTORM/HAIL/HURRICANE 2ND POLICY |
| M29 | PAYMENT OF FLOOD 2ND POLICY |
| M40 | PAYMENT OF PRIVATE MORTGAGE INSURANCE |
| M70 | CORRECTION TO ESCROW - PRIOR SERVICER |
| M90 | PAYMENT OF COUNTY TAXES |
| M91 | PAYMENT OF SCHOOL TAX |
| M92 | PAYMENT OF CITY/TOWN/VILLAGE/PARISH/BOROUGH TAX |
| M93 | PAYMENT OF WATER/IRRIGATION/SPECIAL/LIGHTING TAX |
| M94 | PAYMENT OF CONSOLIDATED TAX |
| M95 | PAYMENT OF LIENS |
| M96 | PAYMENT OF SUBDIVISION MAINTEN/BOND/MISC |
| PFL | PAYOFF THROUGH LOCKBOX |
| POA | BANKRUPTCY PAYMENT |
| PRO-PR9 | PAYMENT REVERSAL |
| R01 | REFUND OF ESCROW ANALYSIS |
| R10 | REFUND OF LENDER-PLACED INSURANCE |
| R11 | REFUND OF LENDER-PLACED FLOOD INSURANCE |
| R20 | REFUND OF FIRE INSURANCE |
| R21 | REFUND OF HOMEOWNERS INSURANCE |
| R22 | REFUND OF FLOOD INSURANCE |
| R23 | REFUND OF WINDSTORM/HAIL/HURRICANE INSURANCE |
| R24 | REFUND OF EARTHQUAKE INSURANCE |
| R25 | REFUND OF CONDO INSURANCE |
| R26 | REFUND OF HOMEOWNERS 2ND POLICY |
| R27 | REFUND OF FIRE 2ND POLICY |
| R28 | REFUND OF WINDSTORM/HAIL/HURRICANE 2ND POLICY |
| R29 | REFUND OF FLOOD 2ND POLICY |
| R40 | REFUND OF PRIVATE MORTGAGE INSURANCE |
| R90 | REFUND OF COUNTY TAX |
| R91 | REFUND OF SCHOOL TAX |
| R92 | REFUND OF CITY/TOWN/VILLAGE/PARISH/BOROUGH TAX |

Continued on next page

| R93 | REFUND OF WATER/IRRIGATION/SPECIAL/LIGHTING TAX |
|---|---|
| R94 | REFUND OF CONSOLIDATED TAX |
| R95 | REFUND OF LIENS |
| R96 | REFUND OF SUBDIVISION MAINTEN/BOND/MISC |
| RP | MORTGAGE PAYMENT |
| SR0-SR9 | SINGLE ITEM REVERSAL |
| SV | SERVICE RELEASE |
| SW | SINGLE ITEM RECEIPT |
| UF | UNAPPLIED FUNDS |
| UFE | UNAPPLIED FUNDS EXPENSES |
| UFF | UNAPPLIED FUNDS FORBEARANCE |
| UFL | UNAPPLIED FUNDS LOSS DRAFT |



8742 Lucent Boulevard ▪ Suite 300 ▪ Highlands Ranch, CO 80129

P 800-315-4757
F 720-241-7218

05/02/2016

MARK K MACRIS & CATHERINE M MACRIS
403 TEAKWOOD TER
AMHERST, NY 14221

RE: Loan Number: ███2479
Property Address:
403 TEAKWOOD TER
AMHERST, NY 14221

Dear MARK K MACRIS & CATHERINE M MACRIS,

Specialized Loan Servicing LLC has received your letter regarding the above referenced loan. Your correspondence was sent to the following address for response:

Specialized Loan Servicing LLC
8742 Lucent Boulevard
Highlands Ranch, CO 80129

Please note for future reference all Qualified Written Request correspondences will need to be sent to the following designated address:

Specialized Loan Servicing LLC
PO Box 630147
Littleton, CO 80163

Your qualified written request or general correspondence is currently under review.  We realize the urgency of your inquiry and we appreciate your patience.  We will have a response issued to you within 30 business days.  If your property is in the state of North Carolina or Washington, a response will be issued within 15 days.

If you have any questions, please contact Customer Care at 1-800-315-4757 between 6:00 a.m. and 6:00 p.m. MT Monday through Friday. TDD number – 1-800-268-9419 Monday through Friday between 8:00 a.m. and 5:00 p.m. MT.

Sincerely,

Customer Care Support
Specialized Loan Servicing, LLC

**BANKRUPTCY NOTICE- IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN.  THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE.  HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY.  IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT OUR CUSTOMER CARE CENTER AT 800-306-6057.**

Letter 5.21  Loan Number: ███2479  05/02/2016