UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARK K. MACRIS,

                Plaintiff,

v.                                           Civil Action No. 17-CV-361

EXPERIAN INFORMATION SOLUTIONS, INC
And SPECIALIZED LOAN SERVICING LLC,

                Defendants.

---

### AFFIDAVIT OF MARK K. MACRIS

Mark K. Macris being duly sworn, deposes and says:

1. That I am the Plaintiff in this action.

2. This affidavit is made in support of Plaintiff's Motion for Summary Judgment.

3. That on or about February 1, 2008, I executed a note and mortgage with my then wife, Catherine Macris, with Countrywide for property located at 403 Teakwood Terrace, Amherst NY 14221 ("Property"). The note set forth that Catherine and I agreed to pay Countrywide Bank the principal sum of $193,472.00, with interest. The Mortgage was recorded in the Erie County Clerk's Office on February 19, 2008. Attached as **Exhibit A** are copies of the aforementioned note and mortgage.

4. That on June 9, 2010, a matrimonial settlement agreement ("divorce decree") between Catherine Macris and I was filed with the Erie County Clerk's Office. Pursuant to this divorce decree, Catherine Macris agreed to take over and assume responsibility for the obligations relative to the mortgage on the Property. Attached as **Exhibit B** is a copy of the divorce decree.

5. That on August 4, 2012, a warranty deed was filed with the Erie County Clerk's Office. The deed conveyed my interest in the Property to Catherine M. Schaefer, formerly Catherine M. Macris. Attached as **Exhibit C** is a copy of the warranty deed.

6. On March 26, 2015, an action bearing Index Number 503473/2015 and captioned, *U.S. Bank National Association, as Trustee for SROF-2013-S3 REMIC Trust I v. Mar K. Macris, Catherine M. Macris, et al.*, (the "2015 Foreclosure Action") was commenced to foreclose on the mortgage for the Property. Attached as **Exhibit D** is a copy for the Summons and Complaint that was served upon me relative to the above referenced action.

7. After being served with the Summons and Complaint for the 2015 Foreclosure Action, I contacted Davidson and Fink, LLP, the attorneys for the mortgagee. I requested to be removed from the action as I believed I was no longer obligated on the mortgage per the Divorce decree.

8. In response to my request, Mr. Kurt Odenbach, an attorney at Davidson and Fink LLP, emailed me and stated that he had reviewed the matter and agreed to drop me as a Defendant from the 2015 Foreclosure Action. Attached as **Exhibit E** is the email chain between myself and Mr. Kurt Odenbach

9. In June of 2015, I attended a settlement conference pursuant to the 2015 Foreclosure Action. At this conference, I provided the court with a certified copy of my divorce decree and was instructed by the court to follow up with Davidson and Fink LLP in order to be removed from the 2015 Foreclosure Action. See Exhibit D to Affirmation of Seth J. Andrews, Pg 91, L1 – Pg 93 L7)

10. On June 23, 2015, I emailed Kurt Odenbach to follow up on his request to be removed from the 2015 Foreclosure Action. See **Exhibit E**.

11. On September 10, 2015, Kurt Odenbach, emailed me and stated that if I could provide my divorce decree to him, he may be able to convince his client to waive the pursuit of a deficiency and drop me from the 2015 Foreclosure Action. See **Exhibit E**.

12. On October 9, 2015, Kurt Odenbach filed an Affirmation of Regularity in the 2015 Foreclosure Action wherein he requested that I be dropped from the caption as a defendant as I was no longer a necessary party. Attached as **Exhibit F** is copy of the Affirmation of Regularity.

13. On November 20, 2015, Honorable James H. Dillon granted an Order of Reference in the 2015 foreclosure action removing me as a defendant in that action. The caption was then amended to *U.S. ROF III Legal Title Trust 2015-1, by U.S. Bank National Association, as Legal Title Trustee v. Catherine Macris*. Attached as **Exhibit G** is a copy of the Order of Reference granted by Honorable James H. Dillon.

14. In early 2016, I received correspondence from Specialized Loan Servicing, INC. ("SLS") stating that I was delinquent in my mortgage obligation for the Property. See Exhibit D to Affirmation of Seth J. Andrews, Pg 102, L13 – Pg 103 L21)

15. On July 8, 2015, I had a telephone conversation with a representative from SLS regarding the status of the 2015 Foreclosure Action. I informed the representative that I received an email from their attorney, Davidson and Fink, LLP, that stated I was being dropped from that action. I inquired about the status of the mortgage account for the Property and was told that the "investor is not alleviating" me from the account and that it is still my "financial responsibility" I was told that my name was going to be on the paperwork they file for the foreclosure and that the "debt" was still mine. See Exhibit A to the affidavit of Gretchen Burger, Pgs.3, 7-8.

16. On March 16, 2016, I had a telephone conversation with a representative from SLS regarding why SLS was reporting the account on my credit report despite having been removed from the 2015 Foreclosure Action. The representative told me that the account will stay on until the Property is foreclosed upon. I then asked the representative if SLS had a copy of the Order of Reference removing me from the 2015 Foreclosure Action. The representative responded that he was pretty sure it was in the system. See Exhibit A to the affidavit of Gretchen Burger, Pgs.16,18.

17. On March 30, 2016, I had a telephone conversation with a representative from SLS regarding why SLS was reporting the account on my credit report despite having been removed from the 2015 Foreclosure Action. I inquired if SLS received the court documents from their attorneys, Davidson and Fink. The representative stated that SLS and their attorneys don't share documents. The representative stated that the attorney is the party handling the matter and all "communication has to go through then." See Exhibit A to the affidavit of Gretchen Burger, Pg 30.

18. On April 20, 2016, I received a telephone call from a representative from SLS regarding the mortgage for the Property. I asked the representative if he was familiar with what an order of reference is in a mortgage action and he replied "yes." I then asked him why am I still on the account if SLS agrees through their attorney that I am not a defendant and he replied that SLS does not agree with their attorneys and that in order to sell the Property, the court, the county, the recorder, the liquidation department all would say I need to be on the account to do it. See Exhibit A to the affidavit of Gretchen Burger, Pgs 43-44.

19. On April 27, 2016, I received a telephone call from a representative from SLS regarding the mortgage for the Property. During this conversation I was told that the account was going to continue to be reported on my credit until the home was sold. See Exhibit A to the affidavit of Gretchen Burger, Pg. 50.

20. On or about April 28, 2016, I sent a written dispute letter to SLS relative to how SLS was reporting the mortgage account for the Property on my credit report. I requested that SLS remove the derogatory information and attached a copy of the Order of Reference showing I was no longer a party in the 2015 Foreclosure Action. Attached as **Exhibit H** is a copy of my dispute letter sent on April 28, 2016.

21. On May 3, 2016, I had a telephone conversation with a representative from SLS regarding why SLS was reporting the account on my credit report despite having been removed from the 2015 Foreclosure Action. The representative told me that I can get court orders all day until the cows come home but banks will not remove one of the borrowers. The representative also stated that the bank would not remove me because it would cut down their ability to "recoup any losses." When I informed him that SLS's attorneys approved me being removed from the 2015 Foreclosure Action, he told me his normal stance is "I don't care" and that he cannot do anything until his system shows only my ex-wife and not me. He stated that requested that an attorney or someone above him to review this. See Exhibit A to the affidavit of Amanda Tagliarino, Pgs. 50, 57-58.

22. On May 10, 2016, I had a telephone conversation with a representative from SLS to follow up on the review of the documents I had previously provided to SLS to demonstrate I was removed from the 2015 Foreclosure Action. I was informed by the

representative that the review would be complete by May 17, 2017. See Exhibit A to the affidavit of Amanda Tagliarino, Pg 61.

23. On May 17, 2016, I had a telephone conversation with a representative from SLS to follow up on the review of the documents I had previously provided to SLS to demonstrate I was removed from the 2015 Foreclosure Action. The representative stated that I needed to provide documentation for a short sale. I asked him to confirm that he had the order of reference which I sent on April 28, 20016 and he replied that he had it and was aware of it but he required additional documentation from me. When I refused to provide any documents for a short sale, he stated I was still involved and that he would mark the file accordingly and proceed on their end. See Exhibit A to the affidavit of Amanda Tagliarino, Pgs. 72, 75.

24. That May 19, 2016, I viewed my credit report from Experian which showed SLS reporting a trade line relative to the mortgage for the Property indicating that there was a balance of $259,468.00 with a past due amount of $143,631.00 and that foreclosure proceeding started. Attached as **Exhibit I** is a copy of the May 19, 2016 Experian credit report.

25. On June 8, 2016, I had a telephone conversation with a representative from SLS to follow up on the review of the documents I had previously provided to SLS to demonstrate I was removed from the 2015 Foreclosure Action. The representative stated that I was still on the loan and would have to be involved in a short sale. I asked if anyone has reviewed the order of reference and the representative replied he did not know. He claimed that he was working on this account the day prior and it is now being reviewed by underwriting. I then asked when would the account be removed from my credit and he replied his best guess was 30-60 days but also indicated that they could take it off immediately. He then apologized for not understanding that it was a court order removing me from the 2015 Foreclosure Action when we last spoke and for not taking care of it then. I explained to him that with SLS reporting a $143,000 debt on my credit, I could never get a loan and he added, "don't forget the to throw in there that the property is in foreclosure"; there's not a lender out there that would look at you for another loan with that on your credit. See Exhibit A to the affidavit of Amanda Tagliarino, Pgs. 77-79, 81.

26. On or about June 9, 2016, I received a May 23, 2016 letter from SLS responding to my April 28, 2016 dispute letter requesting that SLS remove the derogatory information from my credit report. SLS responded in its May 23, 2016 letter stating that it is unable to accept the court documents I attached to my dispute letter and that they forwarded account information to credit reporting agencies accurately. Attached as **Exhibit J** is a copy of the May 23, 2016 SLS letter.

27. On June 9, 2016, I had a telephone conversation with a representative from SLS to inquire why I received the SLS May 23, 2016 letter when I was previously told that the account was going to come off my credit report. The representative stated he never heard back from his supervisor when he previously forwarded my prior request and that he would forward my inquiry to his supervisor again. See Exhibit A to the affidavit of Amanda Tagliarino, Pg 87.

28. In or about July 11, 2016, I disputed the SLS trade line with Experian and received a re-investigation report dated July 27, 2016 wherein the disputed trade line's information was confirmed by SLS as accurate and the information in the May 19, 2016 report was once again disseminated in the July 27, 2016 report. Attached as **Exhibit K** is a copy of the July 27, 2016 Experian credit report.

29. On July 19, 2016, I had a telephone conversation with a representative from SLS where I returned a miss call from them. The representative indicated that they were from the collections department and asked me what my intentions were for the property. The representative stated that I need to look into reinstating and bring the account current. See Exhibit A to the affidavit of Amanda Tagliarino, Pgs. 93, 95-96

30. On July 26, 2016, I received a telephone call from a representative from SLS regarding the mortgage for the Property. The representative stated that she was calling as there was a delinquency on the account and asked for my plans for the property. The representative also stated that the Property would be foreclosed on September 27, 2016 See Exhibit A to the affidavit of Amanda Tagliarino, Pgs. 97-98.

31. That on August 1, 2016, I was denied a Visa credit card with Bank of America that I had previously applied for due to past delinquencies, derogatory public records, or collection accounts appearing on my Experian credit report. Attached as **Exhibit L** is a copy of the August 1, 2016 denial letter.

32. That on August 2, 2016, I was denied a Visa credit card through Chase Bank USA N.A. that I has previously applied for due to my Experian credit report showing foreclosure or repossession or early lease termination, charge offs or bad debt collection, delinquent past/present credit obligations, and delinquency, public record, or bankruptcy. Attached as **Exhibit M** is a copy of the August 2, 2016 denial letter.

33. On November 27, 2016, I had a telephone conversation with a representative from SLS wherein I inquired as to the status of the property and as well as the loan. The representative stated that SLS owns the property and there was no loan for the property. See Exhibit A to the affidavit of Amanda Tagliarino, Pg. 103.

34. As a result of SLS's improper and inaccurate reporting on my credit report, I suffered from emotional distress. I experienced fear in not being able to financial support myself or my children. I was anxious and distracted at work and was afraid that my inability to perform my job to the best of my ability could result in demotion or termination. I suffered from tension and elevated blood pressure. I also had difficulty sleeping. In addition, the vast number of hours spent trying to get SLS to fix what they were reporting on my credit took up a considerable amount of my time as it was 16 months of pleading with them to fix what they were reporting on my credit. It was beyond frustrating to have to labor over and over again with a different representative to try and get SLS to fix what they were reporting incorrectly. The last few months, I felt that I was never going to get my credit fixed as they were more interested in trying to get me to agree to pay the arrears or sell the property as opposed to reviewing the documents that removed me from the 2015 Foreclosure Action.

_____
Mark K. Macris

Sworn to before me this
31st day of October , 2018.

_____
Seth J. Andrews
Notary Public, State of New York
Qualified in Erie County
My Commission Expires September 8, 2019