# Exhibit B

# MATRIMONIAL SETTLEMENT AGREEMENT

Between

## CATHERINE M. MACRIS

and

## MARK K. MACRIS

F I L E D
ACTIONS & PROCEEDINGS

JUN 0 9 2010

ERIE COUNTY
CLERK'S OFFICE

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202


EXHIBIT
D
4/25/18

## MATRIMONIAL SETTLEMENT AGREEMENT

THIS AGREEMENT, made _Nov 4_, 2009, between **Catherine M. Macris**, referred to in this Agreement as the "Wife", and **Mark K. Macris**, referred to in this agreement as the "Husband".   In some parts of this agreement, the wife and husband may also be referred to as the "Mother" and "Father", respectively.

## PREMISES:

WHEREAS, the parties were married on August 20, 2005 in Cheektowaga, New York; and

WHEREAS, there is one minor child of the marriage, to wit:

**Sarah Macris**                               DOB: 5/15/07; and

WHEREAS, the parties desire to live separate and apart from one another; and

WHEREAS, the parties wish to enter into a comprehensive settlement agreement which will equitably settle their marital and financial rights and obligations in all respects; and

WHEREAS, each party has been fully advised with respect to the legal, financial, and practical effect of this agreement by their respective counsel; and

WHEREAS, both parties acknowledge that they have been legally advised or have had the opportunity to be legally advised of the terms and provisions of Section 5-

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

(9) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party;

(10) the tax consequences to each party;

(11) the wasteful dissipation of assets by either spouse;

(12) any transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;

(13) any other factor which the parties find to be just and proper

WHEREAS, in resolving the issue of spousal maintenance, the parties considered the following statutory factors, pursuant to Domestic Relations Law Section 236(B)(6):

(1) the income and property of the respective parties including marital property distributed pursuant to Domestic Relations Law Section 236(B);

(2) the duration of the marriage and the age and health of both parties;

(3) the present and future earning capacity of both parties;

(4) the ability of the party seeking maintenance to become self-supporting and, if applicable, the period of time and training necessary therefor;

(5) reduced or lost lifetime earning capacity of the party seeking maintenance as a result of having foregone or delayed education, training, employment, or career opportunities during the marriage;

4

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

(6) the presence of children of the marriage in the respective homes of the parties;

(7) the tax consequences to each party;

(8) contributions and services of the party seeking maintenance as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party;

(9) the wasteful dissipation of marital property by either spouse;

(10) any transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;

(11) any other factor which the parties expressly find just and proper

WHEREAS, in resolving child support, the parties have considered the provisions of Domestic Relations Law Section 236(B)(7) and have been advised of the provisions of Domestic Relations Law Section 240(1-b), commonly known as the Child Support Standards Act, and having been further advised that the basic child support obligation as determined by the formula contained in Domestic Relations Law Section 240(1-b)(c) would presumptively result in the correct amount of child support to be awarded, the parties have considered such provisions, including the respective pro rata shares of the basic child support obligation of the custodial parent and the noncustodial parent as determined pursuant to Domestic Relations Law Section 240(1-b)(c), as well as the variance factors enumerated in Domestic Relations Law Section 240(1-b)(f), to wit:

(1) the financial resources of the custodial and noncustodial parent, and those of the child;

5

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

(2) the physical and emotional health of the child and his/her special needs and aptitudes;

(3) the standard of living the child would have enjoyed had the marriage or household not been dissolved;

(4) the tax consequences to the parties;

(5) the nonmonetary contributions that the parents will make toward the care and well-being of the child;

(6) the educational needs of either parent;

(7) a determination that the gross income of one parent is substantially less than the other parent's gross income;

(8) the needs of the children of the noncustodial parent for whom the noncustodial parent is providing support who are not subject to the instant action and whose support has not been deducted from income pursuant to Domestic Relations Law Section 240(1-b)(b)(5)(vii)(d), and the financial resources of any person obligated to support such children, provided, however, that the factor may apply only if the resources available to support such children are less than the resources available to support the children who are subject to the instant action;

(9) provided that the child is not on public assistance (i) extraordinary expenses incurred by the noncustodial parent in exercising visitation, or (ii) expenses incurred by

6

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

the noncustodial parent in extending visitation provided that the custodial parent's expenses are substantially reduced as a result thereof.

WHEREAS, the parties understand that instead of entering into this agreement they have a right to proceed with litigation and to seek a judicial determination of the issues covered by this agreement but, notwithstanding such right, the parties desire to avoid the delay, expense, and risk of litigation and they believe that their interests and the interests of their child will be better served by the terms and provisions of this agreement;

WHEREAS, in entering this agreement, the Husband acknowledges that he has in no way relied upon any attorney certification of any factual submission or submissions, financial or otherwise, made by the Wife's attorney. The Husband acknowledges his understanding that any such attorney certification was made by the Wife's attorney solely and exclusively to the court and may not and should not be relied upon by the Husband in assessing the credibility of the submission or in deciding whether or on what terms to settle this matter. The Husband further acknowledges that he would have entered into this settlement on precisely the same terms even in the absence of any attorney certification by the Wife's attorney.

WHEREAS, in entering this agreement, the Wife acknowledges that she has in no way relied upon any attorney certification of any factual submission or submissions, financial or otherwise, made by the Husband's attorney. The Wife acknowledges her

7

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

understanding that any such attorney certification was made by the Husband's attorney solely and exclusively to the court and may not and should not be relied upon by the Wife in assessing the credibility of the submission or in deciding whether or on what terms to settle this matter. The Wife further acknowledges that she would have entered into this settlement on precisely the same terms even in the absence of any attorney certification by the Husband's attorney.

NOW, THEREFORE, based upon the above-stated premises, and the terms and provisions specified below, the parties agree as follows:

### ARTICLE ONE: LIVING SEPARATE AND APART

It shall be in all respects lawful for the parties to live separate and apart and, except as expressly otherwise provided in this agreement, they may and shall do so at all times hereafter. Each party shall be free from interference, authority or control, direct or indirect, by the other party as fully as if each party were single and unmarried.

Each party may reside at such place or places as he or she may select.

Neither party shall molest, disturb, or harass the other, in any manner, nor shall either party publish, speak or disseminate slanderous comments or materials, whether oral or written, concerning the other party, to each other, or to any third persons , including any child of the marriage.

Each party shall be free to and may conduct, engage in or carry on any business, profession or employment which to him or her may seem advisable.

8

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

Neither party shall endeavor, by legal proceedings or otherwise, to compel the other party to cohabit, dwell or resume marital relations.

## ARTICLE TWO:  SITUS OF AGREEMENT

This agreement shall be governed and construed in all respects and exclusively in accordance with the laws of the State of New York.

## ARTICLE THREE:  BINDING EFFECT

Except as otherwise expressly stated in this agreement, the terms and provisions of this agreement shall be forever binding and conclusive upon the parties, their respective heirs, next of kin, successors, executors, administrators, assigns or other representatives.

## ARTICLE FOUR:  MUTUAL RELEASE

Except to the extent of the rights and obligations provided in this agreement, each party hereby releases and discharges the other from any and all claims, causes of action, liabilities, rights, interests, demands or other obligations of any kind, whether arising in law or equity, with the sole and singular exception of any and all cause or causes of action for divorce.

## ARTICLE FIVE:  MODIFICATION AND WAIVER

No modification or waiver of any provision of this agreement shall be binding unless made in writing and executed and acknowledged with the same degree of

9

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

formality as this agreement or unless stipulated to by the parties upon the record of a court of competent jurisdiction.

## ARTICLE SIX:  FAILURE TO INSIST UPON STRICT PERFORMANCE

The failure of either party on any given occasion or from time to time to insist upon the strict performance of any term or provision of this agreement by the other party shall not be deemed a waiver or relinquishment of the right to insist upon strict performance of such term in the future nor shall it be deemed a waiver or relinquishment of the obligations established by any other term or provision of this agreement.

## ARTICLE SEVEN:  BREACH

If either party breaches any provision of this agreement, the other party shall have the right to recover money damages, obtain specific performance, or seek any other remedy for such breach which may be available in law or equity.

## ARTICLE EIGHT:  PARTIAL INVALIDITY

If any provision of this agreement is held to be invalid or unenforceable, all other provisions hereof shall nonetheless continue in full force and effect.

## ARTICLE NINE:  INCORPORATION INTO SUBSEQUENT DIVORCE JUDGMENT

The terms and provisions of this agreement shall not be deemed to in any way prevent either party from maintaining an action for divorce at any time and on any

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

ground, based either on past or future conduct, in any court of competent jurisdiction. Nor shall such terms and provisions in any way prevent the other party from defending such action.

The parties shall be in all respects hereafter bound by the terms and provisions of this agreement and such terms and provisions shall not be invalidated, diminished, impaired, expanded, or otherwise altered or affected by any judgment or decree of divorce granted by any court and neither party shall request any relief which is inconsistent with the terms and provisions of this agreement.

In the event that either party may institute or maintain an action for divorce, the parties shall be fully bound by the terms and provisions of this agreement. The party obtaining any judgment of divorce shall present a true copy or duplicate original of this agreement to the court entertaining jurisdiction of such action and request that its terms and provisions be incorporated by reference in the judgment or decree of divorce so that each term and provision of this agreement shall be fully enforceable to the same extent as if each such term or provision were set forth in its entirety in such judgment or decree. If consistent with the rules or practice of such court, the terms and provisions of this agreement shall be incorporated into the judgment of divorce by reference.

Notwithstanding the incorporation of the terms and provisions of this agreement into any judgment of divorce obtained by either party, however, the terms and provisions of this agreement shall not merge in such judgment. Rather, such terms and

11

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

provisions shall in all respects survive such judgment and be forever binding, conclusive and controlling upon the rights and obligations of the parties.

### ARTICLE TEN:  RECONCILIATION

This agreement shall not be invalidated, terminated, canceled, or otherwise affected by a reconciliation between the parties or by resumption of cohabitation or marital relations between them, unless such reconciliation or such resumption is confirmed by a written document which expressly invalidates, terminates, cancels, or otherwise alters this agreement and which is executed and acknowledged with the same degree of formality as this agreement or unless stipulated to by the parties upon the record of a court of competent jurisdiction.

### ARTICLE ELEVEN:  FULL DISCLOSURE

Each party is entering into this agreement with a full understanding of its provisions and with full financial disclosure by the other party.  Neither party requires any further information from the other in order to knowingly and intelligently execute this agreement.  Each party acknowledges that this agreement has been achieved after full financial disclosure and good-faith negotiations and each party is entering into this agreement because he or she fully believes that the terms and provisions of this agreement are in his or her best interest.

Each party has made independent inquiry into the financial circumstances of the other and is fully informed of the income, assets, and financial condition of the other.

12

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

Each party acknowledges that this agreement has not been the result of any fraud, duress, coercion, undue influence, or overreaching by or on behalf of the party. Each party acknowledges that this agreement has been achieved after full disclosure and good-faith negotiations. Neither party requires any further information from the other in order to knowingly and intelligently execute this agreement.

## ARTICLE TWELVE: LEGAL REPRESENTATION

Each party has been fully advised of the legal and practical effect of this agreement by his or her respective legal counsel.

The Husband has been represented by:

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, NY 14202

and the Wife has been represented by:

Kyle W. Calabrese, Esq.
265 Union Street, Union Square, Suite 203
Hamburg, NY 14075.

The interests of the minor child have been represented by her court appointed attorney and law guardian:

Katherine J. Bestine, Esq.
343 Elmwood Avenue, PO Box 5204
Buffalo, New York 14213-5204

13

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

### ARTICLE THIRTEEN:  UNDERSTANDING OF AGREEMENT

Each party hereby represents and acknowledges that, prior to executing this agreement, he or she has carefully read each and every word contained in this agreement and fully understands all of its terms and provisions and their legal, financial and practical effect.  Based upon such understanding, each party believes that this agreement is fair and reasonable in all respects and each party executes this agreement freely and voluntarily.

### ARTICLE FOURTEEN:  ENTIRE AGREEMENT

This agreement contains the entire understanding of the parties and there are no promises, terms, conditions, representations, warranties, undertakings, covenants or understandings by either party to the other, except as expressly set forth in this agreement.

### ARTICLE FIFTEEN:  WAIVERS OF ESTATE RIGHTS

Except as otherwise provided in this agreement, each party may dispose of his or her property in any manner that he or she may deem appropriate.  Each party hereby waives, relinquishes, and releases forever any and all rights which he or she may now have or may hereafter acquire under the present or future laws of any jurisdiction to share in the property or estate of the other as a result of the marital relationship of the parties.  This waiver includes, but is not limited to, dower, curtesy, statutory allowance, homestead rights, right to take under the rules of intestate succession, right to elect

14

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

against the will of the other, right to act as administrator or executor of the estate of the other, or in any manner participate in the estate of the other.

The right of either party to take under any testamentary disposition, including any testamentary substitute, which is presently in effect is likewise waived in all respects and any such pre-existing testamentary disposition is hereby revoked by the testator of such will and renounced by the party in whose favor such testamentary devise or bequest has been made.

However, if either party executes a will on or after the date of execution of this agreement and provides in such will a testamentary disposition for the benefit of the other party, the provisions of this agreement shall not constitute a waiver of or bar to the receipt and enjoyment of such devise or bequest.

Except as otherwise expressly provided in this agreement, any prior designation by one party of the other party as a beneficiary, whether primary or alternative, under any policy of life insurance is hereby revoked by the party who made such designation and is hereby renounced by the party so designated as such beneficiary.

None of the foregoing waivers, releases or relinquishments shall bar either party or his or her estate from making claim against the person or estate of the other party if, and to the extent that, such a claim arises out of any obligation established by this agreement or a breach of this agreement.

15

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

## ARTICLE SIXTEEN:  PENALTIES ON DEFAULT

In the event that either party defaults with respect to any obligation set forth in this agreement, the injured party shall send written notice, by certified mail, return receipt requested, to the defaulting party, which notice shall specify the nature of the default and, if relevant, any amount due which remains unpaid.  If the payment is not made, or the default otherwise cured, within 20 days of receipt of said notice, and the ~~injured party incurs attorney's fees and related expenses or costs in commencing and~~ maintaining an action or proceeding to enforce this agreement, the defaulting party shall pay all such fees and costs.

In the event that either party defaults with respect to any obligation set forth in this agreement, the defaulting party shall pay the attorney's fees and related expenses and costs incurred by the injured party in the enforcement of this agreement, irrespective of whether such enforcement is ultimately attained by judgment or by settlement.

## ARTICLE SEVENTEEN:  BANKRUPTCY

The parties have consented to the terms of this Agreement upon their reliance on the express representations made to each other that all of its terms, particularly those with respect to the maintenance, child support, payments of debts, property division, and distributive award, or any other transfers or payments to implement equitable

16

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

distribution, shall be fully paid and completed in accordance with such terms and provisions.

It is the intention of the parties that the obligations for maintenance, child support, payment of debts, property division, and distributive award, or any other transfers or payments to implement equitable distribution, which are to be made pursuant to the terms and provisions of this agreement, shall not be discharged, canceled, terminated, diminished or in any way affected by the filing of a petition in bankruptcy, or by the making of an assignment for the benefit of creditors.

Accordingly, in the event that the either party files a petition in bankruptcy or makes an assignment for the benefit of creditors, all transfers or payments provided for in this agreement are intended to be maintenance or child support.  The party who files such petition in bankruptcy or makes such assignment for the benefit of creditors shall be liable for any resulting tax consequences.

To the extent that any obligation arising under this agreement may be discharged, canceled, terminated, diminished or in any way affected by the filing of a petition in bankruptcy, or by the making of an assignment for the benefit of creditors, the party adversely affected by such action shall be entitled to apply to any court of competent and appropriate jurisdiction for modification of this agreement and any order or decree into which it may hereafter be incorporated.  The party who files such petition in bankruptcy or who makes an assignment for the benefit of creditors hereby consents

17

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

that in any proceeding brought by the other party pursuant to this provision, the court hearing the same may grant economic relief of any kind or nature to relieve the other party of the adverse impact of the bankruptcy or assignment, irrespective of the otherwise applicable standards for such relief, including, but not limited to, the granting of maintenance to a party who would otherwise not qualify for such relief under the criteria of the particular jurisdiction.

## ARTICLE EIGHTEEN:  PAYMENTS MADE UPON DEFAULT OF OTHER PARTY

If either party makes a payment or payments with respect to any debt or obligation of the other party due to the default of such other party, the party who makes such payment shall have, in addition to any other rights or remedies which he or she may have at law or equity or pursuant to the terms of this agreement, the right to either deduct the amount of such payment or payments from any other payment or payments which are to be made to the defaulting party under the other terms and provisions of this agreement, or to have immediate reimbursement for same.

## ARTICLE NINETEEN:  SUBSEQUENT ATTACK ON AGREEMENT

All of the transfers, conveyances, distributions, assignments, and payments made pursuant to this agreement are made in consideration of all of the other transfers, conveyances, distributions, assignments, and payments, waivers, and obligations established by the terms and provisions of this agreement.

18

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

In the event that either party at any future time institutes an action or proceeding to terminate, cancel, avoid, set aside, diminish, impair, extend, expand, alter, or modify, this agreement, or any of its terms or provisions, whether such proceeding is successful or not, such party shall, in advance of and as a condition precedent to the commencement of such action or proceeding, retransfer, reconvey, return, reassign, and repay to the other party all assets, income, payments, or other transfers or consideration which such party had received pursuant to this agreement. In the event that the party who institutes an action or proceeding has already sold, transferred or otherwise disposed of any asset received pursuant to this agreement, such party shall, in advance of and as a condition precedent to the commencement of such action or proceeding pay to the other party all proceeds received upon the sale, transfer or disposition of such asset.

In the event that either party at any future time institutes an action or proceeding, or endeavors by way of interposition of a counterclaim or defense, to set aside this agreement or any of its terms or provisions on the ground or for any reason, including but not limited to, incapacity, fraud, duress, overreaching, undue influence, unfairness, unreasonableness, unconscionability, such party shall fully reimburse the other party for any and all attorneys fees and related legal expenses and costs incurred in connection with the defense of such action or proceeding in the event that the claims or defenses of invalidity are dismissed, rejected, or otherwise unsuccessful.

19

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

**ARTICLE TWENTY:  ADDITIONAL INSTRUMENTS AND FUTURE COOPERATION**

Each party shall immediately, upon request, execute, acknowledge and deliver, in proper form, either to the other party or to any other persons, firms or entities as the other party may direct, any and all further instruments, documents, forms or information which may be reasonably required, from time to time, and shall otherwise reasonably cooperate with the other party to give full force and effect to the provisions of this agreement.

**ARTICLE TWENTY-ONE: ADDRESSES**

So long as either party shall have any continuing obligation arising under this agreement, either to the other party, to a child of the marriage, or to any other persons, firms or entities, each party shall at all times keep the other informed of his or her current mailing address and actual place of residence and place of employment.  Each party shall, upon any change of mailing address, actual place of residence, or place of employment, promptly and immediately upon learning of same, notify the other party of the new mailing address, actual place of residence, or place of employment.  In the event that any minor child shall reside at any place other than the residence of a party to this agreement, the party having knowledge or information concerning such child's address or location shall promptly and immediately learning of same, notify and convey such knowledge or information to the other party.

**ARTICLE TWENTY-TWO:  FUTURE DIVORCE BASED ON AGREEMENT**

20

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

In addition to any other ground for divorce which either party may presently have or may hereafter acquire, the parties have been advised that the execution of this agreement and the filing of it, or a memorandum of it, in the Office of the County Clerk, in the county where either party resides, may give rise to a ground for divorce which may be asserted by either party if they live separate and apart for a period of one or more years and if the party who seeks such divorce has substantially performed his or her obligations under this agreement.

## ARTICLE TWENTY-THREE:  CUSTODY

The parties shall share joint custody of the minor child of the marriage, with neither party designated as the primary residential parent.  The Wife shall be designated as primary residential parent ONLY for educational purposes.  However, this designation shall continue so long as the Wife resides in Williamsville.  Should both parties reside in the Williamsville School District, either parent may be designated as primary residential parent for educational purposes only.

Each party shall have such right of access as is specifically delineated in the ensuing Article.

## ARTICLE TWENTY-FOUR:  PARENTING TIME

Neither party shall have any access schedule, but shall equally share parenting time with their daughter.

21

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

For the purposes of identifying parenting time, the child shall be with the Father each and every day that the Mother works, which, depending on her work schedule, shall be three (3) to four (4) days per week. Further, each parent shall cooperate with one another to establish times and exchange details. Should they be unable to agree to said times and details, the pick up shall occur ~~at the Tim Horten's on~~ at the Corner of Maple and North Forest and the pick up time shall be ~~5:00~~ 5:20 p.m. Further, each party shall ~~have access with the child every other weekend from Friday at 5:00 p.m. until Sunday at~~ 5:00 p.m., with the Mother's weekend not to be scheduled during weekends that she works. During weekends the Mother works, the father shall pick up the child at 12PM on Saturday until the day her shift ends at 3pm.

**Holiday access shall be defined below:**

| HOLIDAY | EVEN | ODD | PARENTING TIME From:     To: |
|---|---|---|---|
| New Year | Mother | Father | 9:00 a.m. to 9:00 p.m. |
| Easter morning | Mother | Mother | 8:00 a.m. to 3:00 p.m. |
| Easter afternoon | Father | Father | 3:00 p.m. to 8:00 p.m. |
| Mother's Day | Mother | Mother | 8:00 a.m. to 8:00 p.m. |
| Memorial Day | Father | Mother | 9:00 a.m. to 8:00 p.m. |
| Father's Day | Father | Father | 8:00 a.m. to 8:00 p.m. |
| July 4th | Mother | Father | 9:00 a.m. to 8:00 p.m. |
| Labor Day | Mother | Father | 8:00 a.m. to 8:00 p.m. |
| Halloween | Father | Mother | 4:00 p.m. to 8:00 p.m. |
| Thanksgiving (afternoon) | Father | Mother | 8:00 a.m. to 3:00 p.m. |

22

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202



| Thanksgiving (evening) | Mother | Father | 3:00 p.m. to 8:00 p.m. |
| Christmas Eve | ~~Father~~ Mother | ~~Mother~~ Father | Christmas Eve to ~~11a.m.~~ 1pm on 12/25 |
| Christmas Day | ~~Mother~~ Father | ~~mother~~ Father | 1 PM ~~12:00~~ p.m. to 8:00 p.m. on 12/26 |
| Mother's Birthday | Mother | Mother | 8:00 a.m. to 8:00 p.m. |
| Father's Birthday | Father | Father | 8:00 a.m. to 8:00 p.m. |

The aforementioned holiday access supercedes the regular periods of access as provided for in this agreement. Father shall pick up the children at the Mother's residence and the Mother shall pick up the children at the termination of access.

**Christmas Recess:** In all years the Mother and Father shall evenly divide the remainder of the Christmas recess beginning December 27th and ending the day before school resumes. The parties shall exchange the child at 5:00 p.m. on the Monday between December 27th and the day before school resuming.

During **even** years, the Father shall have the first portion of the recess. During **odd** years, the Mother shall have the first portion of the recess.

**February/Winter Recess**: In all years ending with an **even** number, the Mother shall have the child from the last day of school at 5:00 p.m. until day before school is to resume at 5:00 p.m. In all years ending with an **odd** number, the Father shall have the child from the last day of school at 5:00 p.m. until day before school is to resume at 5:00 p.m.

23

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202



~~Our Kids Program Each~~ _handwritten illegible_ in the Catholic Charities "Our Kids" awareness program

**Easter/Spring Recess**:  In all years ending with an **odd** number, the Mother shall have the child from the last day of school at 5:00 p.m. until day before school is to resume at 5:00 p.m. In all years ending with an **even** number, the Father shall have the child from the last day of school at 5:00 p.m. until day before school is to resume at 5:00 p.m.

**Mother's Day/Father's Day**:  Irrespective of any other provisions of this article, ~~the child shall be with the Mother on Mother's Day and with the Father on Father's Day.~~

**Summer Recess**:   Between the last day of classes and prior to the recommencement of classes in the Fall of each year, each parent shall have the child for a period of four (4) weeks, either consecutively or nonconsecutively, upon reasonable notice in accordance with the notice provisions which follow.

**Notice Provisions**:  With respect to the summer recess period of access, the Father shall give notice of which weeks are selected for access on or before May 1st in **even** years. The Mother shall give the Father notice of her weeks by May 1st on **odd** years.

**Additional Time by Agreement**:  Nothing in this agreement shall be deemed to limit the parties in subsequently agreeing to greater access with the child.

**Notice of Cancellation**:  To avoid disappointment to the child and to permit the other party to effectively plan the child's schedule, each party shall give advance notice to the other party at least 24 hours if it is their intention not to exercise any access

24

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202



period specifically prescribed in this article or upon which the parties may subsequently agree.

## ARTICLE TWENTY-FIVE:  RESIDENTIAL LOCATION

In no event shall the Wife relocate the child outside the boundaries of the Williamsville School District without the prior written consent of the other Husband or an order from a court of competent jurisdiction.

## ~~ARTICLE TWENTY-SIX:  OTHER PROVISIONS CONCERNING CHILDREN~~

The parties shall mutually cooperate with one another to consult and arrive at decisions which are in the best interest of the child with respect to health, education and general well-being.  Neither party shall have a superior right to make such decisions and, in the event that the parties are unable to agree upon any matter of importance to the rearing of the child, either party may apply to a court of appropriate jurisdiction and seek a judicial resolution of the issue in dispute.

Neither party shall do anything nor permit anything to be done which will estrange the child from the other party or otherwise hamper the natural development of love and affection between the other parent and the child and the development of a positive parent/child relationship between them.  Indeed, each party shall take all reasonable affirmative steps to foster such a relationship of love, affection and respect between the child and the other party.

25

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

Each party shall have the right to communicate with the child by telephone at all reasonable times and for reasonable periods of time when the child is with the other party and neither party shall interfere with or restrict or impair such right of communication.  Each party shall accordingly keep the other informed of his or her residential telephone number and of any other number where such child may temporarily reside or sojourn.

Each party shall promptly notify the other regarding any sickness, disability, injury or accident involving the child. In the event that a child is confined to bed or home as a result of such sickness, disability, injury, or accident for more than 48 hours, the other party shall have the right to visit such child at reasonable times and for reasonable periods of time.

Each party shall encourage the child to use the terms "Father" and "Mother" or their equivalents when referring to the other party hereto and shall discourage the use of such terms in reference to any other person.

The each party shall be fully entitled to access to all information, records, reports, correspondence, memoranda, or other documentation which in any way relates to the health, education or well-being of the child, including, but not limited to, medical records of any hospital, physician, therapist mental health professional, or other health care provider, and school records.

26

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

## ARTICLE TWENTY-SEVEN:  CHILD SUPPORT

The Husband agrees to pay the sum of fifty dollars ($50.00) per week as and for child support to the Wife for the aforementioned child.

The above-stated child support amount represents a deviation from the basic child support obligation, which, if determined in accordance with Domestic Relations Law Section 240(1-b)(c), would be in the amount of $810.00 per month for the Father and $589.00 per month for the Mother.  In addition, as an additional element of child support, the parties would be obligated to pay the following pro rata shares of unreimbursed medical expenses and child care costs :

Husband's obligation is 58%;

Wife's obligation is 42%.

This agreement does not provide for payment of the basic child support obligation amount, or the pro rata share thereof, for the following reason or reasons:

The financial resources of the custodial and non-custodial parent, and those of the child; (Domestic Relations Law Section 240(1-b)(f)(1))

The physical and emotional health of the child and his/her special needs and aptitudes; (Domestic Relations Law Section 240(1-b)(f)(3))

The standard of living the child would have enjoyed had the marriage or household not been dissolved; (Domestic Relations Law Section 240(1-b)(f)(3))

27

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

The tax consequences to the parties; (Domestic Relations Law Section 240(1-b)(f)(4))

The nonmonetary contributions that the parents will make toward the care and well-being of the child; (Domestic Relations Law Section 240(1-b)(f)(5)

The educational needs of either parent; (Domestic Relations Law Section 240(1-b)(f)(6))

A determination that the gross income of one parent is substantially less than the other parent's gross income; (Domestic Relations Law Section 240(1-b)(f)(7))

The needs of the children of the noncustodial parent for whom the noncustodial parent is providing support who are not subject to the instant action and whose support has not been deducted from income pursuant to Domestic Relations Law Section 240(1-b)(b)(5)(vii)(d), and the financial resources of any person obligated to support such children, provided, however, that this factor may apply only if the resources available to support such children are less than the resources available to support the children who are subject to the instant action; (Domestic Relations Law Section 240(1-b)(f)(8))

Provided that the child is not on public assistance (i) extraordinary expenses incurred by the noncustodial parent in exercising visitation, or (ii) expenses incurred by the noncustodial parent in extended visitation provided that the custodial parent's

28

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

expenses are substantially reduced as a result thereof; (Domestic Relations Law Section 240(1-b)(f)(9))

Other factors which the court determines relevant; (Domestic Relations Law Section 240(1-b)(f)(10))  The equally shared parenting access time with the child as outlined in this agreement.

The parties are aware that DRL Section 240(1-b)(2) requires that the court issue an income deduction order pursuant to CPLR 5241(c) at the time it issues an order of support and have reached agreement on an alternative arrangement, as follows:

The child support amount shall remain unless modified by an order of a court of competent jurisdiction.  Should either party seek to modify the current child support order, the moving party must show a substantial change of circumstances.  However, changes in the party's income shall not constitute a change of circumstances to increase either party's child support obligation.

The parties understand that the court retains discretion with respect to child support and that any court order or judgment incorporating this agreement must set forth the court's reasons for the deviation from the pro rata share of the basic child support obligation.

ARTICLE TWENTY-EIGHT:  TERMINATION EVENTS

29

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

Any and all child support obligations established by this agreement shall continue with respect to each child until the happening of any one of the following events, whichever shall first occur:

A child attains age twenty-one (21) years.

A child marries, whether or not such marriage may be void, voidable or may subsequently terminate by death, divorce, annulment, or dissolution, or in any other manner.

A child cohabits with an unrelated person of the opposite sex.

A child enters the armed forces of the United States or any other country or political entity.

A child dies.

Either parent dies.

There is a change in custody pursuant to an order of a court of competent jurisdiction.

A child ceases to permanently reside with the parent who is herein designated as the "custodial parent" or "residential custodian".

Residence away from the other party's home, which a child maintains in conjunction with his or her college studies, or residence at boarding school or camp, or in conjunction with summer employment undertaken between college semesters while

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

the child remains a full-time student, shall not terminate the child support obligations established in this agreement.

A child attains the age of eighteen (18) years and becomes full-time employed; except that full-time summer employment undertaken by a child while such child is still engaged as a full-time college student shall not terminate the child support obligations established in this agreement.

~~A child attains the age of eighteen (18) years and does not continue to pursue a~~ formal education at an accredited secondary school, college or university on full-time basis.

## ARTICLE TWENTY-NINE:  HEALTH INSURANCE

In addition to the foregoing child support, the Wife shall maintain in effect and pay for comprehensive health care insurance, including extended dental, orthodontia, psychiatric, psychological, and mental health coverage to the extent the same is available through the Wife's employment . The Wife shall execute and deliver any and all necessary notices, forms, or other documents to ensure prompt payment of any and all health insurance claims for such child.

The Husband shall agree to pay half (½) of the difference between family coverage and single coverage, with the Wife proving the Husband, on an annual basis, the appropriate documentation from her employer of the costs associated with family

31

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

versus single coverage in order to determine the Husband's correct amount of contribution.

### ARTICLE THIRTY: HEALTH EXPENSES NOT COVERED BY INSURANCE

Each party shall promptly pay fifty percent (50%) of any and all reasonable health care expenses not covered by insurance, including dental, orthodontia, psychiatric, psychological, and mental health care relative to the child until age 21 or earlier emancipation. ~~Such payments shall be made to the party incurring said expense. There shall be a cap of $100.00 per expense.~~ AN APPROVAL of any expenditure that exceeds $100 The party incurring the expense shall provide notice to the other parent within seven (7) days of incurring same. Upon proper receipt of notice of uninsured expenses, the receiving parent must reimburse their one-half share within seven (7) days.

~~The parties acknowledge that there is currently outstanding a dental bill in the amount for $197. The Husband agrees to pay this amount to the Wife, provided she hold him harmless for this obligation.~~

### ARTICLE THIRTY-ONE: EDUCATIONAL EXPENSES

In the event that the child, upon graduating from high school, attends a fully accredited college or university on a full-time basis and matriculates in a course of study leading to an undergraduate degree, the parties shall contribute toward payment of the reasonable educational expenses of such child in an amount to be agreed upon them at the time it is determined that a child will be attending college.

The parents shall equally share any expenses incurred for school supplies.

32

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202



In the event that the parties are unable to agree upon their respective shares, either party may apply to a court of appropriate jurisdiction for a determination of a fair and reasonable apportionment of such expenses based upon the respective financial positions of the parties.

For purposes of this agreement, "reasonable educational expenses" is hereby defined to mean and shall include tuition, academic fees, books, and transportation with the costs capped by the State University of New York System (SUNY) rate.

### ARTICLE THIRTY-TWO:  LIFE INSURANCE

Each party shall maintain and pay for a policy or policies of life insurance in the amount of $250,000.00 and shall designate the aforementioned child as the irrevocable beneficiary until such time as the child attain age 21 or earlier emancipation.  Each party shall provide proof to the other party that such insurance is in full force and effect, with all premiums paid up to date and no liens thereon, at least annually, and neither party shall borrow against or in any way hypothecate said policy or policies.

### ARTICLE THIRTY-THREE: DAY CARE AND RIGHT OF FIRST REFUSAL

The parties agree that day care service for the minor child affected by this proceeding may used only if both parties are working.  Both parties agree that paternal grandmother shall be the preferred day care provider if both Father and Mother are working.  Should paternal grandmother be unavailable, than the party having access with the child on said date shall use day care services, upon providing notice to the

33

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

other parent.  Each party shall be responsible for 50% of these day care costs.  The

parties are to agree on any future day care provider.  Should the child be enrolled in day

care without first contacting paternal grandmother, notifying the other parent, or an

agreement on the particular day care provider, there shall exist no responsibility to

contribute towards day care costs.

~~For past day care costs, the Father agrees to reimburse the Mother $424.00~~

~~within seven (7) days from the date of the execution of this agreement.~~

## ARTICLE THIRTY-FOUR:  DEPENDENCY EXEMPTION

In **even** years, the Wife shall be entitled to claim the child as a dependency

exemption for State and Federal Income Tax purposes and the Husband shall execute

any instrument, document, or form which is necessary to effectuate same.

In **odd** years, the Husband shall be entitled to claim the child as a dependency

exemption for State and Federal Income Tax purposes and the Wife shall execute any

instrument, document, or form which is necessary to effectuate same.

## ARTICLE THIRTY-FIVE:  SPOUSAL MAINTENANCE

Each of the parties to this agreement is gainfully employed and fully capable of

self-support and providing for his or her own reasonable needs.  Accordingly, each party

forever waives any claim for maintenance from the other.  Each party has been

specifically advised of the provisions of Domestic Relations Law Section 236(B)(6)

34

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

relative to maintenance and makes this waiver with full knowledge of such rights as are set forth in that statute.

## ARTICLE THIRTY-SIX:  HEALTH INSURANCE

The Husband shall be responsible to maintain insurance coverage for his own benefit.

Pursuant to Domestic Relations Law § 177, the following notice is attached: Each party fully understand that upon the entrance of this divorce agreement, he or she may no longer be allowed to receive health coverage under their former spouse's health insurance plan.  He or she may be entitled to purchase health insurance on his or her own through a COBRA option, if available; otherwise he or she may be required to secure their own health insurance.

## ARTICLE THIRTY-SEVEN:  COUNSEL FEES

Each party shall pay for his or her own attorney's fees and other legal expenses incurred in connection with the negotiation, preparation, and execution of this agreement.

## ARTICLE THIRTY-EIGHT:  PERSONAL PROPERTY

Except as otherwise specifically provided in this agreement, all personal property, whether tangible or intangible, and including, but not limited to, cash, credit union and bank accounts or similar savings or investment vehicles, including checking and savings accounts of any kind or nature, automobiles or other motor vehicles,

35

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

recreational vehicles, tools, household items, furniture and furnishings, has been fairly and reasonably divided between the parties, and any such property presently in the actual or constructive possession of either party shall henceforth be the sole, separate, and exclusive property of the party in actual or constructive possession thereof, free and clear of the nonpossessory party and the nonpossessory party hereby waives any present or future interest in such property.  In the instance of intangible items of property, such as accounts or investment devices, if there is a conflict between possession and title, the concept of title shall control.  In the event that any such account or investment device be titled jointly to the parties, the party not in present possession shall execute whatever documents, forms, or papers may be required to permit the possessory party to enjoy the sole and exclusive ownership, dominion and control contemplated by this article.  In particular, the Husband shall take possession of the following items as listed on Exhibit B.

Except as otherwise specifically provided by this agreement, any stocks, bonds, mutual funds, securities, cash accounts, bank accounts, or any other assets in the name of the Husband or Wife solely, shall be deemed the sole and separate property of the person in whose name such property is owned and each party hereby waives and relinquishes any and all right, claim or interest which they may otherwise have with respect to such assets.  Any such assets which are titled jointly, such as stocks, bonds

36

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

or bank accounts, and which are not specifically divided under the terms of this agreement shall be equally divided by and between the parties.

With respect to the specific division of personal property, whether tangible or intangible, those assets identified and described on the Schedule of Wife's Personal Property shall henceforth be the sole, separate, and exclusive property of the Wife, and the Husband hereby waives any present or future interest in such property.  In the event that it be required with respect to any asset enumerated in said Schedule, the Husband shall execute whatever documents, forms, or papers may be required to permit the Wife to enjoy the sole and exclusive ownership, dominion and control contemplated by this article.

With respect to the specific division of personal property, whether tangible or intangible, those assets identified and described on the Schedule of Husband's Personal Property shall henceforth be the sole, separate, and exclusive property of the Husband, and the Wife hereby waives any present or future interest in such property.  In the event that it be required with respect to any asset enumerated in said Schedule, the Wife shall execute whatever documents, forms, or papers may be required to permit the Husband to enjoy the sole and exclusive ownership, dominion and control contemplated by this article.

Within 30 days from the execution of this agreement each party shall deliver any new registration, certificate of title or other ownership papers or title documentation, as

37

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

may be necessary to effect the terms and provisions of this agreement. The Wife shall retain the 2007 Toyota and the Husband shall retain the 2009 Toyota.

Unless otherwise expressly provided in this agreement, the party who is receiving any particular personal asset, whether tangible or intangible, shall assume any and all liabilities associated with the ownership of such asset, and shall indemnify and hold the other party harmless from any and all such liabilities.

## ARTICLE THIRTY-NINE:  PENSION, RETIREMENT, AND DEFERRED COMPENSATION

Husband and Wife acknowledge and agree that neither party is presently participating in a pension, retirement plan, 401(k) plan or other tax sheltered plan.  Each party waives any claim of interest in a pension, retirement plan, 401(k) plan or other tax sheltered plan in which either party may acquire an interest in the future.

## ARTICLE FOURTY:  REAL PROPERTY

The parties are the owners as tenants by the entirety of an improved parcel of real property which previously served as the marital residence, situated at 403 Teakwood Drive, Williamsville, NY  14221.

The Wife shall have exclusive use and possession of the marital residence until twelve (12) months from the date of the full execution of this agreement. In the event that the Wife shall remarry or cohabit with another unrelated person, the exclusive use and occupancy of the marital residence shall immediately terminate.

38

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

Prior to the execution of this agreement, the Wife shall bring all outstanding mortgage charges current and provide notice to the Husband.

For so long as the Wife's exclusive use and possession of the marital residence shall continue hereunder, the Wife shall not bring nor permit to be brought on the Wife's behalf any action or proceeding for partition or otherwise seeking to compel a sale of said residence.

Should the Wife be tardy with any mortgage or tax payment, the exclusive use and occupancy arrangement shall terminate and the house shall be immediately listed for sale in accordance with the terms and provisions of this agreement.

During the period of the Wife's exclusive use and possession of the marital residence, it shall be the sole obligation of the Wife to pay all sums required with respect to and under the terms of the mortgage pertaining to such residence. The Wife shall pay all real estate taxes and insurance premiums on homeowners or other casualty and/or liability insurance with respect to said residence. The Wife shall pay all other carrying charges, and maintenance and repair expenses incurred in connection with said residence.

During the period of the Wife's exclusive use and possession of the marital residence, neither party shall cause or permit, either by affirmative act or by omission, the accrual of any new or additional liens or encumbrances against such property. In the event that either party should incur or permit the accrual of any such lien or

39

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

encumbrance, then, in addition to any other remedy available to the other party at law or equity, the amount required to satisfy and discharge such lien or encumbrance shall be fully paid exclusively from the share of the proceeds of sale of the party who incurred or permitted the accrual of such lien or encumbrance.

The Wife agrees that within six (6) from the full execution of this agreement, she shall secure the Husband's release and/or discharge from the mortgage obligation presently encumbering the former marital premises. Upon said refinance, the Husband shall immediately convey his interest in the former marital premises to the Wife and he shall execute a Quit Claim Deed and other required transfer documents. If the Wife fails to secure the Husband's release or discharge from said mortgage obligation within this time period, she will cooperate in the sale of said property at the best available price and upon the best available terms.  In the event the parties cannot agree upon an acceptable gross sale price, each party shall select a reputable real estate appraiser of his or her own choosing. Each party shall be bound to accept a gross sale price equal to said appraisal value.

Both parties agree to waive the requirements of Section 3-309 of the General Obligations Law. If either party dies before the transfer of the premises has been completed, the respective estates of the parties shall be obligated to promptly comply with the terms of this provision.

### ARTICLE FORTY-ONE:  DEBTS AND OBLIGATIONS

40

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

The parties have allocated and apportioned responsibility for repayment of existing debts and obligations as set forth in the "Schedule of Debts", which is annexed to and made part of this agreement as Exhibit A.

The party who is designated as the "Responsible Party" with respect to any given debt or obligation in said Schedule of Debts shall be solely responsible for repayment in full of such debt or obligation and shall indemnify and hold the other party harmless from payment of such debt or obligation and from any other liability of any kind associated with such debt or obligation, including but not limited to costs or fees.

Each party represents and warrants to the other that there are no debts or obligations that either has incurred which are not identified on the Schedule of Debts. In the event that a party has incurred a debt or obligation not so identified shall be solely responsible for repayment of such unidentified loans or obligation.

Neither party will at any time in the future, incur any debt or obligation whatsoever for which the other party, his or her heirs, representatives, and successors or assigns, may be or become liable, and shall hold the other party, his or her heirs, representatives, and successors or assigns harmless and indemnified from any and all debts or obligations.

Each party understands that, notwithstanding the allocation of debts and obligations set forth in this agreement, he or she continues to bear ultimate liability with respect to any third party creditor to whom a debt or obligation was previously incurred

41

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

by a party, absent a direct release of liability from the third party creditor. In other words, this agreement between husband and wife can affect such debts and obligations only between husband and wife and rights can in no way adversely effect or alter the rights of third party creditors in the absence of independent action by such creditors.

### ARTICLE FORTY-TWO: INCOME TAX RETURNS & TAX EXEMPTIONS

The Husband and Wife have previously filed joint Federal and State income tax returns.

The parties shall be responsible for and pay for any income taxes which are due as a result of the filing of such income tax returns in equal portions. Any and all income taxes due shall be defined as the total tax obligation of the parties for that tax year, as well as, any unpaid balance of taxes due as reflected on said return.

The parties shall divide any such income tax refunds equally.

IN WITNESS WHEREOF, the parties hereto, having read each and every word of this agreement, together with any and all attachments, and believing this agreement to be fair and reasonable in all respects, have duly signed, executed and acknowledged this agreement in four counterparts, each of which shall constitute a duplicate original, on the date reflected by the respective acknowledgments of the parties.

_____
Catherine M. Macris

_____
Mark K. Macris

42

Emilio Colaiacovo, Esq.
Bouvier Partnership, LLP
350 Main Street, Ste. 1400
Buffalo, New York 14202

Katherine J. Bestine, Law Guardian
I find that this agreement is in the
best interests of the minor child

STATE OF NEW YORK    )
                                                      ss.:
COUNTY OF ERIE  )

      On this 1st day of ~~April~~ September, 2009, before me, the undersigned, personally appeared Therine ~~Mark R.~~ **Macris**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC – STATE OF NEW YORK
Commission expires: 07-31-11.

STATE OF NEW YORK               )
                                                      ss.:
COUNTY OF ERIE                       )

      On this 4 day of April, 2009, before me, the undersigned, personally appeared Mark ~~Catherine~~ M. **Macris**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC – STATE OF NEW YORK
Commission expires: 4-11-10.

43

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

<u>EXHIBIT A</u>
**Schedule of Debts**

The following Marital Debts shall be distributed to the **Husband:**

*American Express (Husband agrees to remove this from Western Division within 15 days from the date of execution of this agreement)*

*Toyota Financing – 2009 Toyota*

*Dental Bill (approximately $197)*

The following Marital Debts shall be distributed to the **Wife:**

*Toyota Financing – 2007 Toyota (Wife agrees to remove this from Western Division with 15 days from the date of execution of this agreement)*

*Student Loan*

*Sprint Bill (approximately $200)*

*National Grid Bill (approximately $500)*

*Amernational Loan (Wife agrees to remove this from Western Division within 15 days from the date of execution of this agreement)*

Both parties agree to close the Western Division account with 15 days of the execution of this agreement, with both parties to cooperate in said closing, which shall include, but not be limited to, executing any necessary instruments to effectuate the closing of this account.

44

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202

## Exhibit B

## Personal Property

**Husband:**

~~Family Room Set, loveseat, couch~~  ( 2nd Set of Couches OLIVE + BROWN)

2 End table + Coffee table

Office furniture and file cabinet

Entertainment center in family room

Misc. Dishware

Misc. yard tools

~~Generator~~

~~Patio Set and chairs~~

Exercise bike

Gladiator Garage cabinets

Craftsman tool bench

Stihl Weed Whacker

Craftsman Shop Vac

Step Ladder

Craftsman Leaf Blower

45

Emilio Colaiacovo, Esq.
**Bouvier Partnership, LLP**
350 Main Street, Ste. 1400
Buffalo, New York 14202