UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK K. MACRIS,

                     Plaintiff,

     v.                                                                  Civil Action No.  17-CV-361

EXPERIAN INFORMATION SOLUTIONS, INC
And SPECIALIZED LOAN SERVICING LLC,

                     Defendants.
_____

## STATEMENT OF FACTS PURSUANT TO LOCAL RULE 56.1

      Plaintiff, by his attorney, Seth J. Andrews, as and for its statement pursuant to Local Rule 56.1, states that the following material facts are not subject to a genuine issue requiring trial.

1. That on or about February 1, 2008, Plaintiff executed a note and mortgage with his then wife, Catherine Macris, with Countrywide Bank for property located at 403 Teakwood Terrace, Amherst NY 14221 ("Property"). The note set forth that Plaintiff and his then wife agreed to pay Countrywide Bank the principal sum of $193,472.00, with interest. The mortgage was recorded in the Erie County Clerk's Office on February 19, 2008. (Affidavit of Mark K. Macris, para 3).

2. That the note was paid through September 1, 2009 and then became past due. (Affirmation of Seth J. Andrews, Ex E, Pg. 56, L10 – Pg. 57 L5)

3. That on June 9, 2010, a matrimonial settlement agreement ("divorce decree") between Plaintiff and Catherine Macris was filed with the Erie County Clerk's Office. Pursuant to this divorce decree, Catherine Macris agreed to take over and assume responsibility for the obligations relative to the mortgage on the Property. (Affidavit of Mark K. Macris, para 4).

4. That on August 4, 2012, a warranty deed was filed with the Erie County Clerk's Office. The deed conveyed Plaintiff's interest in the Property to Catherine M. Schaefer, formerly Catherine M. Macris. (Affidavit of Mark K. Macris, para 5).

5. On April 11, 2014, the mortgage was placed with the Defendant Specialized Loan Servicing, INC. ("SLS")  who acted as the servicer for the current mortgagee. SLS's duties, among other things, were to collect the monthly mortgage payments, foreclose in instances where necessary, conduct loss mitigation, try and resolve delinquencies, and

selling of property in the event it goes to foreclosure. As a part of its regular practice, SLS collects on defaulted accounts for its clients. (Affirmation of Seth J. Andrews, Ex E, Pg. 15, L2 – Pg. 16 L10).

6. SLS communicated with the Plaintiff both verbally and in writing. SLS sent monthly billing statements to the Plaintiff. The substance of the communications involved loss mitigation. (Affirmation of Seth J. Andrews, Ex E, Pg. 15, L2 – Pg. 16 L10).

7. On March 26, 2015, an action bearing Index Number 503473/2015 and captioned, *U.S. Bank National Association, as Trustee for SROF-2013-S3 REMIC Trust I v. Mar K. Macris, Catherine M. Macris, et al.*, (the "2015 Foreclosure Action") was commenced to foreclose on the mortgage for the Property. (Affidavit of Mark K. Macris, para 6).

8. After being served with the Summons and Complaint for the 2015 Foreclosure Action, Plaintiff contacted Davidson and Fink, LLP, the attorneys for the mortgagee. Plaintiff requested to be removed from the action as he believed he was no longer obligated on the mortgage per the Divorce decree. (Affidavit of Mark K. Macris, para 7).

9. In response to Plaintiff's request, Mr. Kurt Odenbach, an attorney at Davidson and Fink LLP, emailed me and stated that he had reviewed the matter and agreed to remove the Plaintiff as a Defendant from the 2015 Foreclosure Action. (Affidavit of Mark K. Macris, para 8).

10. In June of 2015, Plaintiff attended a settlement conference pursuant to the 2015 Foreclosure Action. At this conference, Plaintiff provided the court with a certified copy of his divorce decree and was instructed by the court to follow up with Davidson and Fink LLP in order to be removed from the 2015 Foreclosure Action. (Affidavit of Mark K. Macris, para 9).

11. On June 23, 2015, Plaintiff emailed Kurt Odenbach to follow up on his request to be removed from the 2015 Foreclosure Action. (Affidavit of Mark K. Macris, para 10).

12. On August 24, 2015, Plaintiff contacted SLS and requested that he be removed from the 2015 Foreclosure Action. (Affirmation of Seth J. Andrews, Ex E, Pg. 59, L13 – L21).

13. On September 10, 2015, Kurt Odenbach, emailed Plaintiff and stated that if he could provide his divorce decree to him, he may be able to convince his client to waive the pursuit of a deficiency and drop Plaintiff from the 2015 Foreclosure Action. (Affidavit of Mark K. Macris, para 11).

14. On October 9, 2015, Kurt Odenbach filed an Affirmation of Regularity in the 2015 Foreclosure Action wherein he requested that Plaintiff be removed from the caption as a defendant as Plaintiff was no longer a necessary party. (Affidavit of Mark K. Macris, para 12).

15. On November 20, 2015, Honorable James H. Dillon granted an Order of Reference in the 2015 foreclosure action removing Plaintiff as a defendant in that action. The caption was then amended to *U.S. ROF III Legal Title Trust 2015-1, by U.S. Bank National Association, as Legal Title Trustee v. Catherine Macris*. (Affidavit of Mark K. Macris, para 13).

16. In early 2016, Plaintiff received correspondence from Defendant SLS stating that he was delinquent in his mortgage obligation for the Property. (Affidavit of Mark K. Macris, para 14).

17. On July 8, 2015, Plaintiff had a telephone conversation with a representative from SLS regarding the status of the 2015 Foreclosure Action. Plaintiff informed the representative that he received an email from their attorney, Davidson and Fink, LLP, that stated he was being dropped from that action. Plaintiff inquired about the status of the mortgage account for the Property and was told that the "investor is not alleviating" him from the account and that it is still his "financial responsibility" Plaintiff was told that his name was going to be on the paperwork they file for the foreclosure and that the "debt" was still mine. (Affidavit of Mark K. Macris, para 15).See Exhibit A to the affidavit of Gretchen Burger, Pgs.3, 7-8.

18. On March 16, 2016, Plaintiff had a telephone conversation with a representative from SLS regarding why SLS was reporting the account on his credit report despite having been removed from the 2015 Foreclosure Action. The representative told Plaintiff that the account will stay on until the Property is foreclosed upon. Plaintiff then asked the representative if SLS had a copy of the Order of Reference removing him from the 2015 Foreclosure Action. The representative responded that he was pretty sure it was in the system. (Affidavit of Mark K. Macris, para 16). See Exhibit A to the affidavit of Gretchen Burger, Pgs.16,18.

19. On March 30, 2016, Plaintiff had a telephone conversation with a representative from SLS regarding why SLS was reporting the account on his credit report despite having been removed from the 2015 Foreclosure Action. Plaintiff inquired if SLS received the court documents from their attorneys, Davidson and Fink. The representative stated that SLS and their attorneys don't share documents. The representative stated that the attorney is the party handling the matter and all "communication has to go through then." (Affidavit of Mark K. Macris, para 17). See Exhibit A to the affidavit of Gretchen Burger, Pg 30.

20. On April 20, 2016, Plaintiff received a telephone call from a representative from SLS regarding the mortgage for the Property. Plaintiff asked the representative if he was familiar with what an order of reference is in a mortgage action and the representative replied "yes." Plaintiff then asked him why am he was still on the account if SLS agrees through their attorney that Plaintiff is not a defendant and the representative replied that SLS does not agree with their attorneys and that in order to sell the Property, the court, the county, the recorder, the liquidation department all would say Plaintiff needs to be on

the account to do it. (Affidavit of Mark K. Macris, para 18).See Exhibit A to the affidavit of Gretchen Burger, Pgs 43-44.

21. On April 27, 2016, Plaintiff received a telephone call from a representative from SLS regarding the mortgage for the Property. During this conversation Plaintiff was told that the account was going to continue to be reported on his credit until the home was sold. (Affidavit of Mark K. Macris, para 19).See Exhibit A to the affidavit of Gretchen Burger, Pg. 50.

22. On or about April 28, 2016, Plaintiff sent a written dispute letter to SLS relative to how SLS was reporting the mortgage account for the Property on his credit report. Plaintiff requested that SLS remove the derogatory information and attached a copy of the Order of Reference showing Plaintiff was no longer a party in the 2015 Foreclosure Action. (Affidavit of Mark K. Macris, para 20).

23. On May 3, 2016, Plaintiff had a telephone conversation with a representative from SLS regarding why SLS was reporting the account on his credit report despite having been removed from the 2015 Foreclosure Action.  The representative told Plaintiff that he can get court orders all day until the cows come home but banks will not remove one of the borrowers. The representative also stated that the bank would not remove Plaintiff because it would cut down their ability to "recoup any losses." Upon Plaintiff informing the representative that SLS's attorneys approved Plaintiff to be removed from the 2015 Foreclosure Action, the representative told Plaintiff that  his normal stance is "I don't care" and that he cannot do anything until his system shows only Plaintiff's ex-wife and not him.  The representative stated that he requested that an attorney or someone above him to review this. (Affidavit of Mark K. Macris, para 21). See Exhibit A to the affidavit of Amanda Tagliarino, Pgs. 50, 57-58.

24. On May 10, 2016, Plaintiff had a telephone conversation with a representative from SLS to follow up on the review of the documents he had previously provided to SLS to demonstrate Plaintiff was removed from the 2015 Foreclosure Action. Plaintiff was informed by the representative that the review would be complete by May 17, 2017. (Affidavit of Mark K. Macris, para 22).See Exhibit A to the affidavit of Amanda Tagliarino, Pg 61.

25. On May 17, 2016, Plaintiff had a telephone conversation with a representative from SLS to follow up on the review of the documents he had previously provided to SLS to demonstrate Plaintiff was removed from the 2015 Foreclosure Action. The representative stated that Plaintiff needed to provide documentation for a short sale. Plaintiff asked him to confirm that he had the order of reference which Plaintiff sent on April 28, 20016 and the representative replied that he had it and was aware of it but he required additional documentation from Plaintiff. Upon Plaintiff's refusal to provide any documents for a short sale, the representative stated Plaintiff was still involved and that he would mark the file accordingly and would proceed on their end. (Affidavit of Mark K. Macris, para 23). See Exhibit A to the affidavit of Amanda Tagliarino, Pgs. 72, 75.

26. That May 19, 2016, Plaintiff viewed his credit report from Experian which showed SLS reporting a trade line relative to the mortgage for the Property indicating that there was a balance of $259,468.00 with a past due amount of $143,631.00 and that foreclosure proceeding started. (Affidavit of Mark K. Macris, para 24)..

27. On June 8, 2016, Plaintiff had a telephone conversation with a representative from SLS to follow up on the review of the documents he had previously provided to SLS to demonstrate Plaintiff was removed from the 2015 Foreclosure Action. The representative stated that Plaintiff was still on the loan and would have to be involved in a short sale. Plaintiff asked if anyone at SLS has reviewed the order of reference and the representative replied he did not know. The representative claimed that he was working on Plaintiff's account the day prior and it is now being reviewed by underwriting. Plaintiff then asked when would the account be removed from his credit and the representative replied that his best guess was 30 to 60 days but also indicated that SLS could take it off immediately if they so desired. The representative then apologized for not understanding that it was a court order removing Plaintiff from the 2015 Foreclosure Action when they last spoke and for not taking care of it then. Plaintiff explained to him that with SLS reporting a $143,000 debt on his credit, he could never get a loan and the representative added, "don't forget the to throw in there that the property is in foreclosure"; there's not a lender out there that would look at you for another loan with that on your credit. (Affidavit of Mark K. Macris, para 25). See Exhibit A to the affidavit of Amanda Tagliarino, Pgs. 77-79, 81.

28. On or about June 9, 2016, Plaintiff received a May 23, 2016 letter from SLS responding to his April 28, 2016 dispute letter requesting that SLS remove the derogatory information from his credit report. SLS responded in its May 23, 2016 letter stating that it is unable to accept the court documents Plaintiff attached to his dispute letter and that they forwarded account information to credit reporting agencies accurately. (Affidavit of Mark K. Macris, para 26).

29. SLS has a routine policy to have multiple analysts work a dispute. (Affirmation of Seth J. Andrews, Ex E, Pg. 81, L7 – L11).

30. On June 9, 2016, Plaintiff had a telephone conversation with a representative from SLS to inquire why he received the SLS May 23, 2016 letter when Plaintiff was previously told that the account was going to come off his credit report. The representative stated he never heard back from his supervisor when he previously forwarded Plaintiff's prior request and that he would forward Plaintiff's latest inquiry to his supervisor again. (Affidavit of Mark K. Macris, para 27).See Exhibit A to the affidavit of Amanda Tagliarino, Pg 87.

31. On June 29, 2016, Honorable James H. Dillon granted a judgment of foreclosure and sale for the Property. This order was filed with the Erie County Clerk's Office on July 5, 2016. The Property was on September 27, 2016.(Affirmation of Seth J. Andrews, Ex C.)

5

32. In or about July 11, 2016, Plaintiff disputed the SLS trade line with Experian and received a re-investigation report dated July 27, 2016 wherein the disputed trade line's information was confirmed by SLS as accurate and the information in the May 19, 2016 report was once again disseminated in the July 27, 2016 report.  (Affidavit of Mark K. Macris, para 28).

33. On July 19, 2016, Plaintiff had a telephone conversation with a representative from SLS where he returned a miss call from SLS. The representative indicated that they were from the collections department and asked Plaintiff what his intentions were for the property. The representative stated that Plaintiff needed to look into reinstating the loan and bringing the account current. (Affidavit of Mark K. Macris, para 29).See Exhibit A to the affidavit of Amanda Tagliarino, Pgs. 93, 95-96

34. That on July 26, 2016, SLS received an ACDV form from Experian relative to Plaintiff's dispute. SLS responded to the request to verify the information relative to the trade line for the mortgage for the Property by confirming the account information as accurate as date reported. This confirmation was sent back to Experian on July 27, 2016. The gray area of the ACDV is the section that details the response from SLS. Anything not in grey is what was sent by the CRA. (Affirmation of Seth J. Andrews, Ex E, Pg. 48, L8 – Pg. 51 L14), See Ex  F, bates 0001, 0007-022 and I to Affirmation of Seth J. Andrews.

35.  SLS did not review and documents prior to providing the ACDV response. (Affirmation of Seth J. Andrews, Ex E, Pg. 89, L3 – L7).

36. SLS responded to the Experian ACDV in one day after receiving the e-Oscar dispute. (Affirmation of Seth J. Andrews, Ex E, Pg. 15, L2 – Pg. 16 L10). See Ex J. Bates 001 and I to Affirmation of Seth J. Andrews.

37. SLS employs a group that handles FCRA compliance. The hierarchy of the group is analysts, regular level department employees, supervisor, manager, junior officers, and senior officers. (Affirmation of Seth J. Andrews, Ex E, Pg. 25, L25 – Pg. 27 L2)Analysts handle FCRA disputes.  (Affirmation of Seth J. Andrews, Ex E, Pg. 27, L24 –L25).  In 2016, SLS did not have any protocol for how long they are to take to investigate a FCRA dispute. SLS also did not have any guidelines from either its clients or in-house counsel for how long it should take to respond to a dispute. (Affirmation of Seth J. Andrews, Ex E, Pg. 33, L1 –L21).

38. SLS's corporate representative testified that they have procedure for responding to disputes from Credit reporting agencies ("CRA") in connection with the FCRA ("e-Oscar disputes"). The corporate representative testified that SLS receives an ACDV form from the CRA and identified said form in this case as SLS 371.  The form gets electronically sent to SLS from the CRA and is then placed with an analyst. SLS does not have any procedure for what analyst receives a particular dispute. The analyst then looks up the account in dispute with their account management system, FISERV. This houses all the account information such as the borrowers' address, financial information about the loan, including payment history, and servicing notes. . (Affirmation of Seth J. Andrews, Ex E,

Pg. 35, L17 – Pg. 38 L13). The analyst then looks at the imaging system that houses the note, mortgage, assignments, any correspondence regarding the loan, and any images related to the loan. . (Affirmation of Seth J. Andrews, Ex E, Pg. 40, L17 – L23). SLS policy is to never contact their client to when responding to an e-Oscer dispute. . (Affirmation of Seth J. Andrews, Ex E, Pg. 46 L10 – Pg. 47 L17). The Analyst will then review the documents and notes on the FISERV system and then send back an electronic response to the dispute from the CRA. . (Affirmation of Seth J. Andrews, Ex E, Pg. 48, L1 –L7).

39. SLS 's policy is that regardless of whether Plaintiff was or was not a judgment debtor in the 2015 Foreclosure Action, that had no impact on how they reported the account on Plaintiff's credit.  (Affirmation of Seth J. Andrews, Ex E, Pg. 87, L16 – L23).

40. SLS's policy is to not report to the CRA's that a consumer has disputed a debt when receiving a e-Oscar dispute from a CRA. (Affirmation of Seth J. Andrews, Ex J. Pg 197 L1-23.

41. On July 26, 2016, Plaintiff received a telephone call from a representative from SLS regarding the mortgage for the Property. The representative stated that she was calling as there was a delinquency on the account and asked for Plaintiff's plans for the property. The representative also stated that the Property would be foreclosed on September 27, 2016(Affidavit of Mark K. Macris, para 30). See Exhibit A to the affidavit of Amanda Tagliarino, Pgs. 97-98.

42. On September 14, 2016, SLS analyst noted that they required proof of income for Plaintiff. The corporate representative testified that they were seeking proof of income for Ms. Macris to see if she could pay the loan. The corporate representative did not know why SLS wanted Plaintiff's income. (Affirmation of Seth J. Andrews, Ex E, Pg. 85, L15 – Pg. 86 L15).

43. That on August 1, 2016, Plaintiff was denied a Visa credit card with Bank of America that he had previously applied for due to past delinquencies, derogatory public records, or collection accounts appearing on my Experian credit report. (Affidavit of Mark K. Macris, para 31).

44. That on August 2, 2016, Plaintiff  was denied a Visa credit card through Chase Bank USA N.A. that he hds previously applied for due to his Experian credit report showing foreclosure or repossession or early lease termination, charge offs or bad debt collection, delinquent past/present credit obligations, and delinquency, public record, or bankruptcy. (Affidavit of Mark K. Macris, para 32).

45. On November 27, 2016, Plaintiff had a telephone conversation with a representative from SLS wherein he inquired as to the status of the property and as well as the loan. The representative stated that SLS owns the property and there was no loan for the property. (Affidavit of Mark K. Macris, para 33).See Exhibit A to the affidavit of Amanda Tagliarino, Pg. 103.

46. SLS representative testified that it is their policy to record all telephone calls unless the borrower requests for the call to not be recorded. (Affirmation of Seth J. Andrews, Ex E, Pg. 73, L1 – L10). The representative stated that there were recordings of the phone calls between Plaintiff and SLS. (Affirmation of Seth J. Andrews, Ex E, Pg. 74, L1 –L24). (Affirmation of Seth J. Andrews, Ex G and H).

47. SLS never made any error in either the manner or substance in which they communicated with the Plaintiff. Nor did SLS make any error with respect to what they intended to report on Plaintiff's credit report.  (Affirmation of Seth J. Andrews, Ex E, Pg. 94, L14 – Pg 95 L18).

48. As a result of SLS's improper and inaccurate reporting on Plaintiff's credit report, Plaintiff suffered from emotional distress. Plaintiff experienced fear in not being able to financial support himself or his children. Plaintiff was anxious and distracted at work and was afraid that his inability to perform his job to the best of his ability could result in demotion or termination. Plaintiff suffered from tension and elevated blood pressure and also had difficulty sleeping. In addition, Plaintiff, over the course of over 16 months, spent vast number of hours attempting to get SLS to fix what they were reporting on his credit. This took up a considerable amount of Plaintiff's time.  Plaintiff felt frustrated from the process of have to speak with many different representatives to try and get SLS to fix what they were reporting incorrectly on his credit. The last few months, Plaintiff felt that he was never going to get his credit fixed as SLS was more interested in trying to get him to agree to pay the arrears on the note or to sell the Property as opposed to reviewing the documents that removed Plaintiff from the 2015 Foreclosure Action. (Affidavit of Mark K. Macris, para 34).

Dated:  October 31, 2018

/s/Seth J. Andrews_____
Seth J. Andrews, Esq.
Law Offices of Kenneth Hiller PLLC
*Attorneys for the Plaintiff*
6000 North Bailey Avenue, Ste. 1A
Amherst, NY 14226
(716) 564-3288
Email: sandrews@kennethhiller.com