# Exhibit D

```
 1   UNITED STATES DISTRICT COURT
 2   WESTERN DISTRICT OF NEW YORK
 3   - - - - - - - - - - - - - - - - - - - - - - - - - - -
 4   MARK K. MACRIS,
 5           Plaintiff,
 6   -vs-
 7   EXPERIAN INFORMATION SOLUTIONS, INC
     And SPECIALIZED LOAN SERVICING LLC,
 8
             Defendants.
 9   - - - - - - - - - - - - - - - - - - - - - - - - - - -
10
11           Examination Before Trial of MARK
12   MACRIS, held before Shannon Gallagher, Notary
13   Public, at The Law Offices of Kenneth Hiller,
14   6000 North Bailey Avenue, Amherst, New York,
15   on Wednesday, April 25th, 2018 at 10:00 a.m.
16   ending at 2:06 p.m. pursuant to notice.
17
18
19
20
21
22
23
24
25
```



1   Q. Do you recall going to court in what's called
2      a foreclosure settlement conference in June of
3      2015?
4   A. Mm-hmm.  Yes, I do.
5   Q. Okay.  And at that settlement conference, do
6      you recall what happened?
7   A. Yes.
8   Q. And what happened?
9   A. I appeared before the court with my divorce
10     attorney, I believe, and explained to them
11     that I don't have any legal right to this
12     property anymore, I signed over the deed, and
13     that I should follow up with I believe -- I
14     believe at the time follow up with the
15     foreclosure attorneys, because they were the
16     ones handling the mortgage and the note and
17     everything that goes along with that.
18         They asked me if I was planning on keeping
19     the house I believe, I said no, I haven't
20     lived in that house in six or seven years.
21     That was -- if I can recall, that was what the
22     conversation was about.
23  Q. Okay.  At the time you went to the conference
24     in June of 2015, was your daughter still
25     living with your ex-wife at that time?



```
 1    A.  Yes.
 2    Q.  And at that time, was your son still living
 3        with you?
 4    A.  Yes.
 5    Q.  Okay.  So earlier you stated that your concern
 6        over the foreclosure is that your daughter
 7        would lose her home, correct?
 8    A.  Correct.
 9    Q.  So when you went to the conference in June of
10        2015 and were asked about retaining the house,
11        at that time were you still concerned about
12        retaining the house for your daughter?
13    A.  I believe that I knew she was going to have
14        other plans to leave the house and get an
15        apartment, so I didn't have any concerns about
16        the house.
17    Q.  When you say she, you mean your daughter or
18        your ex-wife?
19    A.  My daughter was only three.  My ex-wife.
20    Q.  Okay.  So your daughter was three in 2015?
21    A.  I'm sorry.  My daughter was born in 2007, so
22        she was eight.
23    Q.  Okay.  Do you recall what happened after --
24        were you told at that conference -- strike
25        that.  She never strikes it.  She writes down
```



```
 1        strike that.  What were you told after that
 2        conference in 2015 regarding your assertion
 3        that you were removed from your obligations on
 4        the property?
 5   A.   That I should -- that I should follow up with
 6        Davidson Fink, who was the foreclosure
 7        attorneys.
 8   Q.   Okay.  So at that conference the court didn't
 9        tell you you were relieved of your
10        obligations?
11   A.   No.
12   Q.   I'm going to give you what has been premarked
13        as Exhibit U.  Mr. Macris, I've handed you
14        what's been premarked as Exhibit U.  These are
15        copies of an email exchange between you and
16        Davidson Fink, that your attorney, Mr.
17        Andrews, provided to our office yesterday.
18        Have you seen these emails before?
19   A.   Yes.
20   Q.   Okay.  Starting at the end of the chain,
21        page 3, which is actually the beginning of the
22        chain, correct?  That's how emails work?  It
23        puts the oldest one at the bottom?
24   A.   Yes.
25   Q.   May 18, 2015, a Kurt Odenbach from Davidson
```



1   Q. So that's your interpretation of this order of
2      reference, that you're relieved from the note
3      and mortgage?
4   A. From the attorney's office, correct. I am not
5      an attorney, but that's what they advised me.
6   Q. Understood. But you testified already, unless
7      you want to change it, it does not say that in
8      this document?
9   A. It doesn't say that, no.
10  Q. Let's move on. I have two more topics to
11     cover. Do want to take a break or keep going?
12  A. Keep going.
13  Q. Did there come a time when you disputed my
14     clients reporting you as delinquent on the
15     mortgage loan for the property at 403 Teakwood
16     Terrace?
17  A. Yes.
18  Q. Do you recall approximately when you disputed
19     that, first disputed that?
20  A. I guess I have to ask you a question. Are you
21     talking a written dispute or phone dispute?
22  Q. Let's start with the earliest dispute, whether
23     it was written or by phone.
24  A. Mm-hmm. It was -- I -- probably first by
25     phone I would say.



```
 1   Q. Do you recall approximately when?
 2   A. I would say initial correspondence was
 3      January, February, 2016, somewhere around
 4      there.
 5   Q. Do you recall what prompted you to call them
 6      to dispute your being reported as delinquent
 7      on that loan?
 8   A. Do I recall contacting them?  Yes.
 9   Q. Sorry.  Bad question.  Do you recall what it
10      was that raised this issue for you that you
11      needed to dispute the credit report?
12   A. When you get a bill in the mail that says I
13      owe $159,000 and I'm -- that I owe Specialized
14      Loan Servicing, yeah, I'm going to act on it.
15   Q. Okay.  So you received correspondence from
16      Specialized Loan Servicing stating you owed
17      money on the mortgage loan for the 403
18      Teakwood Terrace?
19   A. Correct.
20   Q. Do you recall when you received that document?
21   A. Around that timeframe, 2016 or so.
22   Q. Do you still have copies of that
23      correspondence?
24   A. I do.  I don't have them with me, but I have
25      copies of correspondence that I received from
```

