UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK K. MACRIS,

                      Plaintiff,

     v.                                                  **Civil Action No.  17-CV-361**

EXPERIAN INFORMATION SOLUTIONS, INC
And SPECIALIZED LOAN SERVICING LLC,

                      Defendants.
_____

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      This is an action under the Fair Debt Collection Practice Act (FDCPA), 15 U.S.C.§1692 et seq. as well as the Fair Credit Reporting Act, 15 U.S.C.§1681 et seq. ("FCRA")  On April 28, 2017, Plaintiff filed his Complaint alleging that the Defendant Specialized Loan Servicing, Inc. ("SLS")  violated the FCRA with respect to 15 U.S.C § 1681s(2)(b)(1). In addition, Plaintiff alleged that the Defendant SLS violated 15 U.S.C. §1692d, §1692e, §1692e(2), §1692e(5), §1692e(8), §1692e(10), §1692f, §1692f(1) and§1692g.

      On June 26, 2017, Defendant SLS filed its Answer.  Defendant Experian filed its answer to Plaintiff's complaint on June 23, 2017.  On August 21, 2018, a stipulation of dismissal was filed, dismissing Defendant Experian from the action. Plaintiff now moves this Court for Summary Judgment against Defendant SLS under 15 U.S.C § 1681s(2)(b)(1) as well as under 15 U.S.C. §1692e(8).

**ARGUMENT**

**I.     Summary Judgment Standard**

As Judge Skretny aptly stated in <u>Marino v. Hoganwillig, PLLC</u>, 910 F. Supp. 2d 492, 494–95 (W.D.N.Y. 2012), "Rule 56 for the Federal Rules of Civil Procedure provides that '[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' A fact is 'material' only if it 'might affect the outcome of the suit under governing law.' <u>Anderson v. Liberty Lobby, Inc</u>., 447U.S. 242, 248, 106 S. Ct. 2510, 91 l. Ed. 2d 2020 (1986). A 'genuine' dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.' <u>Id</u>.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence 'must be viewed in the light most favorable to the party opposing the motion.'

**II.     The Fair Debt Collection Practices Act**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To further these ends, the FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir.2001).

Because the FDCPA is "remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." <u>Vincent v. The Money Store</u>, 736 F.3d 88, 98 (2d Cir. 2013) quoting <u>N.C. Freed Co. v. Bd. of Governors of</u>

Fed. Reserve Sys., 473 F.2d 1210, 1214 (2d Cir.1973); see also Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir.1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices.")

### III. Defendant is a "debt collector" who was attempting to collect a "debt"

SLS's 30b6 corporate representative testified that SLS's duties, among other things, were to collect the monthly mortgage payments, foreclose in instances where necessary, conduct loss mitigation, try and resolve delinquencies, and selling of property in the event it goes to foreclosure. Moreover, as a part of its regular practice, SLS collects on defaulted accounts for its clients. (Affirmation of Seth J. Andrews, Ex E, Pg. 15, L2 – Pg. 16 L10). The corporate representative testified that SLS communicated with the Plaintiff both verbally and in writing as well as sent monthly billing statements to the Plaintiff. The substance of the communications involved loss mitigation. (Affirmation of Seth J. Andrews, Ex E, Pg. 15, L2 – Pg. 16 L10).

This Court's sister court has already held as a matter of law that SLS is a debt collector per the definition contained within the FDCPA. "A mortgage servicer, like SLS, may be a debt collector for purposes of the FDCPA, but only if the debt was in default at the time it was obtained. Munroe v. Specialized Loan Servcing, LLC, 2016 WL 5339364, at *5 (E.D.N.Y. 2016), report and recommendation adopted sub nom. Munroe v. Specialized Loan Servicing LLC, No., 2016 WL 1248818 (E.D.N.Y. 2016). In that case, just as in here, SLS began servicing the account after it was in default.  (Account was past due since September 1, 2009- (Affirmation of Seth J. Andrews, Ex E, Pg. 56, L10 – Pg. 57 L5). Thus, the Court should find that SLS is a debt collector per the statute.

### IV.    Defendant's Inaccurate reporting on Plaintiff's credit report is a violation of 15 U.S.C. §1692e(8).

SLS reported to CRA'S, specifically Experian, on May 19, 2018 and July 27, 2018, that Plaintiff had foreclosure proceedings started and that he owed $143,631 as past due as of March 2016. Affidavit of Mark K. Macris, Para 24, 26; (Affirmation of Seth J. Andrews, Ex F).

However, on November 20, 2015, Honorable James H. Dillon granted an Order of Reference in the 2015 foreclosure action removing me as a defendant in that action. The caption was then amended to *U.S. ROF III Legal Title Trust 2015-1, by U.S. Bank National Association, as Legal Title Trustee v. Catherine Macris*.  Affidavit of Mark K. Macris, Para 13. 31.  Then on June 29, 2016, Honorable James H. Dillon granted a judgment of foreclosure and sale for the Property. This order was filed with the Erie County Clerk's Office on July 5, 2016. (Affirmation of Seth J. Andrews, Ex C.)

In New York, where a mortgagor defaults, a mortgagee must elect between pursuing a legal remedy or foreclosing on the property, but may not prosecute both actions without leave of court Manufacturers Hanover Tr. Co. v. 400 Garden City Assocs., 150 Misc. 2d 247, 249, 568 N.Y.S.2d 505, 507 (Sup. Ct. 1991). See (RPAPL § 1301; TBS Enterprises, Inc. v. Grobe, 114 A.D.2d 445, 494 N.Y.S.2d 716 (2d Dept.1985 ); see U.S. v. Whitney, 602 F.Supp. 722 (W.D.N.Y., 1985). Pursuant to RPAPL 1301, "[t]he holder of a note and mortgage may proceed at law to recover on the note or proceed in equity to foreclose on the mortgage, but must only elect one of these alternate remedies" VNB New York Corp. v. Paskesz, 131 A.D.3d 1235, 1235–36, 18 N.Y.S.3d 68, 69–70 (N.Y. App. Div. 2015)

"The purpose of the statute is to avoid multiple lawsuits to recover the same mortgage debt" (Aurora Loan Servs., LLC v. Lopa, 88 A.D.3d at 930, 932 N.Y.S.2d 496). Courts have recognized that "RPAPL 1301 should be strictly construed since it is in derogation of a plaintiff's

4

common-law right to pursue the alternate remedies of foreclosure and recovery of the mortgage debt at the same time" (Dollar Dry Dock Bank v. Piping Rock Bldrs., 181 A.D.2d 709, 710, 581 N.Y.S.2d 361; see Hometown Bank of Hudson Val. v. Colucci, 127 A.D.3d 702, 7 N.Y.S.3d 291; Hometown Bank of Hudson Val. v. Belardinelli, 127 A.D.3d 700, 7 N.Y.S.3d 289; Valley Sav. Bank v. Rose, 228 A.D.2d 666, 646 N.Y.S.2d 349).

Here, SLS's client opted to pursue a foreclosure action on the Property as opposed to bringing an action to enforce the note against the Plaintiff. Once the mortgagee filed the foreclosure action, they elected their remedy and forfeited their right to pursue any recovery based on an action with respect to the note. The law allows for a mortgagee to possibly recovery monies still owed after a sale of the foreclosed property but such proceeding can only be brought in a deficiency action against the judgment debtor relative to the foreclosure action. N.Y. Real Prop. Acts. Law § 1371 (McKinney).

The judgment was entered in the Erie County Clerk's Office on July 5, 2016 and then the Property was sold on September 27, 2016. Affirmation of Seth J. Andrews, Ex C.) In order for SLS's client to pursue any deficiency, they would have to have filed the action against the only remaining judgment debtor, Plaintiff's ex-wife- Catherine Macris. Once Plaintiff's name was no longer in the caption, which it was not as of November 20, 2015, the only possible person who the mortgagee could pursue for a deficiency judgment was Ms. Marcis.

N.Y. Real Prop. Acts. Law § 1371 (3) states, "If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist." N.Y. Real Prop. Acts. Law § 1371 (McKinney). The law states that if there is no motion, then the debt is satisfied. If the deficiency motion can only be brought against

the judgment debtor in the foreclosure action, it is then clear that as a matter of law that the Plaintiff was free of any financial obligation as soon as his name was removed from the foreclosure action as a Defendant.

Even if the Court was inclined to take the position that until there is a judgment in the foreclosure action, the Plaintiff technically could still be held responsible for the debt, the fact of the matter is SLS still reported to Experian that Plaintiff had foreclosure proceedings started and that he owed $143,631 as past due despite there being a judgment entered in that foreclosure action against Plaintiff's ex-wife only. The Judgment was entered in July 5, 2016 and SLS provided its response to Experian's e-Oscar dispute on July 27, 2018 by sending back an ACDV form that confirmed that the information was accurate as previously disputed. (Affirmation of Seth J. Andrews, Ex C.); (Affidavit of Mark K. Macris, para 28; (Affirmation of Seth J. Andrews, Ex E, Pg. 48, L8 – Pg. 51 L14), See Ex  F, bates 0001, 0007-022 and I to Affirmation of Seth J. Andrews.

Thus, it is clear that SLS reported inaccurate, false, and misleading information on Plaintiff's credit report.  Plaintiff was not a part of any foreclosure action since being removed in November 2015. Moreover, as of July 5, 2016, any financial obligation Plaintiff previously had is extinguished as the mortgagee can only proceed at that point with a deficiency against the foreclosure action's judgment debtor. Despite these truths, SLS continued to report that Plaintiff owed on the loan and that he was a part of a foreclosure action.

The FDCPA prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e. Among the conduct that violates this provision is the "communication or threat to communicate

to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

The term "communication" is given a very broad definition in the act. It means "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of § 1692e(8) can subject a debt collector to liability under the FDCPA. Sullivan v. Equifax, Inc., 2002 WL 799856, at *4 (E.D. Pa. 2002), See also Blanks v. Ford Motor Credit, No. 2005 WL 43981 (N.D. Tex. 2005); Akalwadi v. Risk Mgt. Alternatives, Inc., 336 F.Supp.2d 492, 503 (D. Md. 2004)

.The reporting of debt to a credit reporting agency constitutes a "collection activity." See Purnell v. Arrow Fin. Servs., LLC, 303 Fed.Appx. 297, 304 (6th Cir. 2008) ("We assume without deciding that the reporting of the debt to Equifax constitutes a 'collection activity.' "); Smith v. Encore Capital Grp. Inc., 966 F. Supp. 2d 817, 829 (E.D. Wis. 2013) ("[C]redit reporting constitutes collection of a debt."); Edeh v. Midland Credit Mgmt., Inc., 748 F. Supp. 2d 1030, 1035 (D. Minn. 2010), aff'd, 413 Fed.Appx. 925 (8th Cir. 2011) ("[T]hreatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver."); Quale v. Unifund CCR Partners, 682 F. Supp. 2d 1274, 1279 (S.D. Ala. 2010); ("[T]he reality is that debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls.").

SLS also violated this section by failing to note that the Plaintiff disputed the trade line that SLS was reporting as accurate to Experian. Plaintiff sent a written dispute on April 28, 2016, to SLS. (Affidavit of Mark K. Macris, para 20). Plaintiff requested that SLS remove the

7

derogatory information and attached a copy of the Order of Reference showing Plaintiff was no longer a party in the 2015 Foreclosure Action. (Affidavit of Mark K. Macris, para 20). However, when SLS responded to the Experian e-Oscar dispute, the ACDV form does not have any information showing that SLS updated the information to state that the Plaintiff had in fact disputed this trade line. (Affirmation of Seth J. Andrews, Ex E, Pg. 48, L8 – Pg. 51 L14), See Ex F, bates 0001, 0007-022 and I to Affirmation of Seth J. Andrews.

The July 27, 2016 Experian report shows that the customer/consumer has logged a dispute (Your statement "Y item disputed by consumer") but that statement clearly is merely signifying that Experian is taking note of the direct dispute of the Plaintiff to them, the CRA.. Looking at Page 7 of that report, there is a Verizon trade line that shows what it looks like when the actual furnisher, like SLS, does in fact confirm that the consumer is in fact disputing the account. (Comment- "account information disputed by the consumer (meets requirements of the Fair Credit Reporting Act") (Affidavit of Mark K. Macris, para 28), See Ex F, bates 0001, 0007-022 and I to Affirmation of Seth J. Andrews. Thus as demonstrated, by SLS's ACDV, Experian's acknowledgement of the return ACDV information, and the Experian July 27, 2016 credit report, SLS failed to properly note that Plaintiff had disputed the information that they had previously reported and then confirmed as accurate. (Affirmation of Seth J. Andrews, Ex E, Pg. 48, L8 – Pg. 51 L14), See Ex F, bates 0001, 0007-022 and I to Affirmation of Seth J. Andrews.

Courts have interpreted § 1692e(8) as requiring a debt collector who knows, or should have known that a debt is disputed, to disclose the disputed status of the debt to persons inquiring about a consumer's credit history. Kinel v. Sherman Acquisition II LP, , 2006 WL 5157678 (S.D.N.Y. 2006), report and recommendation adopted, 2007 WL 2049566 (S.D.N.Y.2007). See

Brady v. Credit Recovery Co., Inc., 160 F.3d 64, 67 (1st Cir.1998); Perez v. Telecheck Servs., Inc., 208 F.Supp.2d 1153, 1156 (D.Nev.2002).

"The failure to communicate that a disputed debt is "disputed"—is rooted in the basic fraud law principle that, if a debt collector elects to communicate "credit information" about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." Foster v. E Partner Net, 2017 WL 1375177, at *2 (D.N.J. 2017).

As such, the Court should find that SLS's failure to notify Experian that Plaintiff disputed the information they were reporting on his credit is a clear violation of 15 U.S.C. § 1692e(8).

**V.    Defendant's actions in reporting to the credit bureaus that the account was delinquent, had an outstanding balance, was in foreclosure, and that Plaintiff did not dispute the account was intentional and not an error.**

Defendant raises an affirmative defense of bona fide error in its Answer. Affirmation of Seth J. Andrews, Ex B.

To avail itself of a bona fide defense, a defendant must prove: "(1) the presumed FDCPA violation was not intentional; (2) the presumed FDCPA violation resulted from a bona fide error; and (3) that [the defendant] maintained procedures reasonably adapted to avoid any such error." Cerrato v. Solomon & Solomon, 909 F.Supp.2d 139, 147 (D.Conn.2012) (citing Kort v. Diversified Collection Services, 394 F.3d 530 (7th Cir.2005)). The procedures need not be "fool proof," but must constitute a "reasonable precaution" to avoid the error at issue. *Id.* at 148. The bona fide error defense is an affirmative defense, and the defendant bears the burden of proving its elements at trial by a preponderance of the evidence. To survive summary judgment, a defendant must make a showing sufficient to establish the existence of, or at least a factual question as to, every

9

element of the defense. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In this case, SLS's affirmative defense fails to meet the first prong of the requirements for a bona fide error defense. The corporate representative unequivocally stated that SLS never made any error in either the manner or substance in which they communicated with the Plaintiff nor did SLS make any error with respect to what they intended to report on Plaintiff's credit report. (Affirmation of Seth J. Andrews, Ex E, Pg. 94, L14 –Pg 95 L18).

Thus this Court should find that SLS is not entitled to a bona fide error defense as Defendants' failure to make an adequate showing as to the existence of an error or the lack of intentional conduct is lacking in the record before the Court. See Barrientos v. Law Offices of Mark L. Nichter, 76 F. Supp. 2d 510, 516 (S.D.N.Y. 1999).

## VI.     Defendant violated the Fair Credit Reporting Act

15 USC 1681s-2a lays out guidelines that a "furnisher" must follow to report information to a credit reporting agency. There is no private right of action under 1681s-2(a). There is, however, a private right of action under 1681s-2(b). SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 359 (3d Cir. 2011) This section requires that a furnisher conduct a "reasonable investigation" of a dispute that a consumer lodges with a credit reporting agency. Seamans v. Temple Univ., 744 F.3d 853, 866-67 (3d Cir. 2014) When responding to a dispute under 1681s-2(b), the furnisher is obligated to follow the strictures of 1681s-2(a). (Id.)

When assessing whether a furnisher's investigation was "reasonable" the fact finder should balance "the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." Id at 865.  The purpose of 1681s-2(b) is to get the information correct. Gorman

v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1155-56 (9th Cir. 2009);Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430-31 (4th Cir. 2004).

To be correct, the credit information must be complete and accurate. In Seamans v. Temple Univ., 744 F.3d 853, 865 (3d Cir. 2014), the Circuit defined what is meant by "complete" and "accurate" by stating that even if information is technically correct, it may nonetheless be inaccurate if, through omission, it "create[s] a materially misleading impression." See also Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008);

Additionally, a furnisher responding to a dispute lodged with a consumer reporting agency is also obligated to report back to the credit reporting agency that the consumer disputes the credit reporting. Seamans v. Temple Univ., 744 F.3d 853, 867 (3d Cir. 2014)

Whether a furnisher has met their obligations under 15 USC 1681s-2(b) is generally a jury question, unless the ""the reasonableness or unreasonableness of the procedures is beyond question." Cortez v. Trans Union, LLC, 617 F.3d 688, 709 (3d Cir. 2010)

Under15 USC 1681n., furnishers who violate the FCRA can be liable for actual damages. Additionally, if the furnisher's violations were knowing or willful, Plaintiff is entitled to statutory and punitive damages. Id. Defendants who acts with a "reckless disregard" can be held liable under 15 USC 1681n.  Safeco Ins.Co. of America v. Burr, 551 U.S. 47, 56-60 (2007). A standard policy of a furnisher that violates the FCRA can form the basis of a finding of willfulness. *Seamans*, at 869.

### A. SLS has a blanket policy to never report accounts as disputed

Plaintiff made numerous disputes to SLS regarding their reporting of information on his credit. (Affidavit of Mark K. Macris, para15-19, 21-23, 25, 27, and  29).  In responding to the Plaintiff's disputes, SLS  utilized blanket policies that failed to adhere to compliance with the

FCRA.. Utilizing these illegal policies in responding to the Plaintiff's complaints not only constitutes negligent violations of the FCRA, but it is submitted that they also constitute willful violations.  <u>Seamans v. Temple Univ.,</u> 744 F.3d 853, 867-69 (3d Cir. 2014)

The FCRA, 15 U.S.C. § 1681s-2(b), specifically obligates a furnisher responding to a consumer dispute to report back to the CRA that the debt is disputed. The Third Circuit addressed this in <u>Seamans</u>.  The Third Circuit held that there exists a a private cause of action arises under 15 U.S.C. § 1681s-2(b) when, having received notice of a consumer's potentially meritorious dispute, a furnisher subsequently fails to report that the claim is disputed.

In <u>Seamans</u>, the Third Circuit also outlined the practical reasons for this provision:

> "It may seem peculiar that the FCRA compels a furnisher, who can only be formally notified of a dispute by a CRA, to then re-designate the account as disputed in its submission back to the same CRA, which of course already knows about the dispute, having been the initial recipient of notice from the consumer. But this requirement serves two purposes: first, the furnisher, not the CRA, is in the best position to determine whether the dispute is bona fide, and thus the furnisher's validation of the dispute signifies that the dispute is genuine; and second, the furnisher must provide notice of the dispute to all CRAs to whom it originally submitted the information—not just to the CRA which initially notified the furnisher of the dispute."
>
> <u>Seamans</u>, at n. 11.

SLS has admitted in a deposition that it is in fact **their policy** that while responding to an ACDV, they never report back to a CRA that the debt is disputed. Affirmation of Seth J. Andrews, Ex J. Pg. 197. This testimony was provided at deposition taken in October of 2016. Id. The ACDV form that SLS sent to Experian in the present case is dated July 26, 2016. (Affirmation of Seth J. Andrews, Ex E, Pg. 48, L8 – Pg. 51 L14), See Ex I to Affirmation of Seth J. Andrews. Therefore, this policy was in full effect when SLS failed to note on the ACDV to Experian that Plaintiff had disputed the information they were reporting to the CRA's.

It is undeniable that this SLS policy violates the FCRA as a matter of law. Indeed, the Third Circuit in Seamans has made clear that SLS's policy may constitute a willful violation of the statute. Seamans, at note 11. In the present matter, the Court should find that SLS willfully violated this provision as a matter of law. SLS never reported to Experian that the Plaintiff disputed any aspect of the account that they were reporting. This fact is all the more troubling given Plaintiff had at that point sent in a written dispute to SLS three months prior to SLS's ACDV response as well as had multiple conversations with SLS over the past year in which he repeatedly inquired why SLS was reporting the account on his credit despite his insistence the information being reported was incorrect. (Affidavit of Mark K. Macris, para15-19, 21-23, 25, 27, and 29).

**B.      Damages**

The Court should find that SLS's policies as applied to the Plaintiff violated the FCRA as a matter of law. As SLS's actions were willful, Plaintiff is entitled to statutory and punitive damages.

SLS has admitted that it is their standard practice not to mark accounts as disputed during the ACDV process. As there is no factual dispute about this policy and the

Court should rule as a matter of law that Defendant willfully violated the Act. SLS's conduct is exactly what Congress sought to prevent in passing the FCRA. In <u>Nitti v. Credit Bureau of Rochester, Inc.</u>, 375 N.Y.S.2d 817, 822 (Monroe County Supreme Court, New York, 1975), the court described the extreme frustration a consumer feels when good faith efforts fall upon deaf ears:

> Time and again plaintiff came to the defendant's office and went over the same credit information with the defendant's employees, pointing out the errors, all to no purpose. Time and again he tried to have the defendant update and correct its report of him; he pleaded, he lost his temper, all to no avail. Like a character in Kafka, he was totally powerless to move or penetrate the implacable presence brooding, like some stone moloch, within the castle.
>
> It was this very kind of contumacious conduct that Congress sought to correct. It recognized that to do so, it must be necessary to cause and, if need be, to coerce a change in the defendant's operations in order to make it comply with the law. Congress intended to make it expensive for the defendant not to comply. This was the purpose of assessing, without limitation, punitive damages.

The Court should find the Defendant willfully violated the Fair Credit Reporting Act as a matter of law.

## **CONCLUSION**

Accordingly, by reason of the foregoing, it is respectfully submitted that this Court should grant Plaintiff's Motion for Summary Judgment.

Dated: October 31, 2018              s/Seth J. Andrews____
                                                         Seth J. Andrews, Esq.
                                                         Law Offices of Kenneth Hiller PLLC
                                                         *Attorneys for Plaintiff*
                                                         6000 North Bailey Avenue, Ste. 1A
                                                         Amherst, New York 14226
                                                         (716)564-3288
                                                         Email: sandrews@kennethhiller.com