MARK K. MACRIS,

                Plaintiff,

v.

**DECISION AND ORDER**

17-CV-361S

SPECIALIZED LOAN SERVICING, LLC,

                Defendant.

## I.    Introduction

This is a Fair Credit Reporting Act, 15 U.S.C. ch. 41, subch. III, §§ 1681-1681x, and New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law ch. 25, §§ 380-380-v, action. Defendant, Specialized Loan Servicing, LLC ("SLS" or "Defendant"), allegedly is a debt collector (Docket No. 1, Compl. ¶ 17; cf. Docket No. 18, SLS Ans. ¶ 17). Plaintiff alleges SLS inaccurately reported to a credit reporting agency, Defendant Experian Information Solutions ("Experian"), a mortgage debt that Plaintiff argues he no longer owed. Experian, a consumer reporting agency, reported Plaintiff's alleged debt. (Docket No. 1, Compl.)

SLS moved for summary judgment (Docket No. 40), submitting in support the Affidavit of Cynthia Wallace, second assistant vice president for SLS (Docket No. 40, Wallace Aff. ¶ 1), with exhibits (id. Exs. A-N).

In addition to moving for summary judgment himself (Docket No. 41) and filing opposition papers to SLS's motion (Docket No. 47), Plaintiff filed the present Motion to

Strike Ms. Wallace's Affidavit and attached exhibits (Docket No. 46)[1]. Plaintiff moves to strike because SLS failed to disclose Ms. Wallace as a witness in the initial Rule 26(a) disclosure or otherwise identified her as Defendant's Rule 30(b)(6) representative.

For reasons that follow, Plaintiff's Motion to Strike Ms. Wallace's Affidavit (Docket No. 46) is denied. This Court will consider in separate Decision and Order the parties' pending Motions for Summary Judgment (Docket Nos. 40, 41) consistent with the disposition of Plaintiff's Motion to Strike.

## II. Background

### A. Facts and Claims

Plaintiff, with his then spouse Catherine Macris Schaefer ("Ms. Macris"), entered into a mortgage and note on a house on Teakwood Terrace, Amherst, New York (Docket No. 40, Wallace Aff. § 6). Plaintiff contends that on or about June 10, 2009, he entered into a matrimonial settlement agreement with his wife with Ms. Macris agreeing to secure Plaintiff's release from the mortgage on the Teakwood Terrace property (Docket No. 1, Compl. ¶ 23; Docket No. 41, Pl. Aff. Ex. B). Under that marital agreement, Ms. Macris got exclusive use of the property for twelve months after execution of the agreement; she exclusively was obliged to make mortgage payments and to secure a release or discharge of Plaintiff from the mortgage (Docket No. 41, Pl. Aff. ¶ 4, Ex. B at 38-40). If Ms. Macris became tardy in paying the mortgage, she would lose exclusive use and occupancy of the property and it would be put up for sale (id., Ex. B at 39). Once the release or discharge is obtained, Plaintiff conveys his interest in a quit claim deed (id. at 40).

---

[1] In support of his motion, Plaintiff submits his attorney's Affirmation with exhibits and Memorandum of Law, Docket No. 46. Defendant SLS responded within its Reply Memorandum in support of its Motion for Summary Judgment, Docket No. 48, at 8-9. Plaintiff did not submit a reply to its motion.

2

On or about August 14, 2012, a deed and Real Property Transfer Report was filed with the Erie County Clerk removing Plaintiff from the deed to the Teakwood Terrace property (Docket No. 1, Compl. ¶ 24; Docket No. 41, Pl. Aff. Ex. C). Then, on or about March 6, 2015, U.S. Bank as trustee for the SROF 2013-S3 Remic Trust I sued Plaintiff and his now ex-wife to foreclose on the mortgage for the Teakwood Terrace property (Docket No. 1, Compl. ¶ 25; Docket No. 41, Pl. Aff. Ex. D; Docket No. 40, Wallace Aff. Ex. I). On or about November 20, 2015, an Order of Reference was filed removing Plaintiff from the action because he was deemed to be no longer a necessary party for that foreclosure (Docket No. 1, Compl. ¶ 26; Docket No. 41, Pl. Aff. ¶ 13, Ex. G).

Plaintiff claimed he later obtained his credit report from Experian in May 2016 that showed Plaintiff still owing the mortgage and that it was past due (Docket No. 1, Compl. ¶ 27). Plaintiff disputed that account (Docket No. 1, Compl. ¶ 28 (the "subject debt," id. ¶ 29); Docket No. 41, Pl. Aff. Ex. H). If Plaintiff owed on the note, he would be in default and SLS is the servicer of the mortgage loan (Docket No. 1 Compl. ¶¶ 32, 33; Docket No. 18, SLS Ans. ¶¶ 32, 33). In May 2016, SLS called Plaintiff seeking financial information to collect the mortgage debt but Plaintiff denied having any obligation to pay the subject debt (Docket No. 1, Compl. ¶ 34). Nevertheless, SLS continued to call Plaintiff seeking to recover on that loan (Docket No. 1, Compl. ¶ 35). In July 2016, Experian sent Plaintiff a reinvestigation report which verified the disputed subject debt (Docket No. 1, Compl. ¶ 36). On August 2016, Plaintiff applied unsuccessfully for a Visa card and the denial was due to the subject debt on his credit report (Docket No. 1, Compl. ¶ 37). In August and September 2016, SLS's representatives contacted Plaintiff and stated that

the mortgage would be foreclosed, and that Plaintiff would be responsible for the subject debt (id. ¶¶ 38-39).

Plaintiff filed his Complaint on April 28, 2017 (Docket No. 1). Defendants eventually (Docket Nos. 6, 11, 13, Stipulations extending time to answer, 8, 12, 14, Orders adopting Stipulations) and separately answered (Docket Nos. 16 (Experian Ans.), 18 (SLS Ans.)). Plaintiff settled with Experian on August 14, 2018 (Docket No. 31; see Docket No. 34, Order dismissing Experian).

    B. Motion to Strike (Docket No. 46)

Later, the remaining parties moved for summary judgment (Docket Nos. 40, 41). In support of its motion, SLS filed Ms. Wallace's Affidavit with exhibits (Docket No. 40, Wallace Aff.), incorporating references to her Affidavit and exhibits in its Statement of Material Facts (id., Def. Statement). SLS's Statement of Fact tracks documents surrounding the mortgage and its foreclosure as presented in Wallace's Affidavit (id.). Wallace claims that Plaintiff defaulted on the mortgage leading to the foreclosure (id., Wallace Aff. ¶ 11). She also claims that following Plaintiff's written dispute of the credit report listing the mortgage in his name SLS conducted diligent investigation and wrote to Plaintiff that Plaintiff and Ms. Macris still were obligated under the mortgage (id. ¶ 15) and SLS conducted another thorough investigation after the dispute shifted to Experian (id. ¶ 16).

Plaintiff responded to SLS's motion (Docket No. 47) and moved to strike Ms. Wallace's Affidavit (Docket No. 46). Plaintiff denies all of SLS's assertions of facts in SLS's Statement because it relies on Wallace's Affidavit (Docket No. 47, Pl. Response to

Def. Material Statement of Facts).  Plaintiff objects because Wallace was not disclosed as a defense witness.

SLS's initial disclosure stated "corporate representative(s) of SLS" were its potential witnesses without identifying who those representatives might be (Docket No. 46, Pl. Atty. Affirm. Ex. A, SLS's First FRCP 26(a)(1) Initial Disclosures).  Plaintiff noticed SLS's Rule 30(b)(6) deposition (id., Ex. B) and SLS produced Loretta Poch as its representative for that examination (id., Ex. C; Docket No. 41, Pl. Atty. Affirm. Ex. E (Poch EBT Tr.); Docket No. 40, Def. Atty. Decl. Ex. 18 (Poch EBT Tr.)).

This Court did not set a briefing schedule for Plaintiff's Motion to Strike, but SLS included its response in its reply Memorandum supporting its Motion for Summary Judgment (Docket No. 48, Def. Reply Memo. at 8-9).  Upon this briefing and absent Plaintiff's reply, this Court deems the motion submitted (without oral argument).

### III. Discussion

#### A. Applicable Standards

##### 1. Motion to Strike

As this Court observed in Coolidge v. United States, No. 10CV363, 2015 WL 5714237, at *2-3 (W.D.N.Y. Sept. 29, 2015) (Skretny, J.) (Docket No. 43), in denying the Government's motion to strike the declaration from plaintiff's attorney,

> "An affidavit or declaration used to support or oppose a motion for summary judgment 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.' Fed. R. Civ. P. 56(c)(4). Declarations, however, 'often do not rest entirely on personal knowledge, and it is expected that some advocacy will appear' as it is expected that the declaration will be used for the purpose of introducing documents or other evidence into the record. Degelman Indus. Ltd. v. Pro–Tech Welding and Fabrication, Inc., No. 06–CV–6346T, 2011 WL 6752565, at *4 (W.D.N.Y. Dec.23, 2011).

5

> "'The principles governing admissibility of evidence do not change on a motion for summary judgment,' and 'only admissible evidence' may be considered by the district court. Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997); see also Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009). 'Because the purpose of summary judgment is to weed out cases in which there is no genuine issue as to any material fact ... it is appropriate for districts courts to decide questions regarding the admissibility of evidence on summary judgment.' Id. (internal quotations and citations omitted). Courts may consider any material usable or admissible at trial when considering a summary judgment motion. Lyons v. Lancer Ins. Co., 681 F.3d 50, 57 (2d Cir. 2012); see Raskin, 125 F.3d at 65 (noting that a district court 'has broad discretion in choosing whether to admit evidence' on a motion for summary judgment.) Indeed, the purpose of summary judgment is to allow courts to 'pierc[e] the pleadings' and access admissible evidence to 'determine whether there are genuine issues to be tried.' Lemelson v. Carolina Enters. Inc., 541 F. Supp. 645, 648 (S.D.N.Y.1982)."

See also Black v. Buffalo Meats Serv., No. 15CV49, 2021 WL 763723, at *2 (W.D.N.Y. Feb. 26, 2021) (Docket No. 121).

Rather than strike an offending declaration or attorney's affirmation, "courts considering a motion for summary judgment are free to disregard the improper portions, independently review the record, and consider only that which is admissible," Coolidge, supra, 2015 WL 5714237, at *3 (citations omitted). A court may strike under Rule 56(e) "portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements," Hollander v. American Cyanamid, 172 F.3d 192, 198 (2d Cir. 1999), abrogated on other grounds, Schnabel v. Abramson, 232 F.3d 83, 89 (2d Cir. 2000) (prima facie case standard abrogated).

### 2. Discovery Rules

Federal Rule of Civil Procedure 26(a)(1) requires parties to submit the names and addresses of individuals with discoverable information without awaiting a discovery

request, Fed. R. Civ. P. 26(a)(1)(A)(i); see, e.g., Stover v. Northland Group, Inc., No. 05CV476, 2007 WL 1969724, at *2-3 (W.D.N.Y. July 6, 2007) (Schroeder, Mag. J.) (on consent). A party who makes this disclosure also is obliged to supplement or correct its disclosure either when the party learns that the disclosure was incomplete or as ordered, Fed. R. Civ. P. 26(e)(1); Stover, supra, 2007 WL 1969724, at *2.

If a party fails to identify a witness under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless," id., R. 37(c)(1). In addition to barring that witness, this Court may order the non-compliant party pay the reasonable expenses of the opponent caused by the failure, inform the jury of the failure, or impose other sanctions listed in Rule 37(b)(2)(A)(i)-(vi) (such as prohibiting the disobedient party from supporting a claim or defense, staying proceedings, or rendering judgment against the noncompliant party).

This Court has broad discretion in imposing discovery sanctions, 8B Charles A. Wright, Arthur R. Miller & Richard O. Marcus, Federal Practice and Procedure § 2284, at 436-37, 439 (2010).

Upon a Rule 30(b)(6) deposition notice, the deponent entity must designate "one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf," Fed. R. Civ. P. 30(b)(6). The designee then must testify "about information known or reasonably available to the organization," id. The burden is upon the corporate entity to identify one or more persons to testify on its behalf, 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2110, at 518-19, § 2103, at 455 (no obligation to produce person with personal knowledge of events but must produce

someone who can answer regarding information "known or reasonably available to the organization"), 477 (2010); see also id., at 518-19 (use of Rule 26(a) initial disclosure to identify correct corporate witnesses)}

    B. Contentions

Plaintiff argues that Ms. Wallace was not disclosed in SLS's initial disclosure or identified as Defendant's Rule 30(b)(6) representative. Plaintiff contends that Ms. Wallace's Affidavit was inconsistent with the testimony of Rule 30(b)(6) representative, Loretta Poch (Docket No. 46, Pl. Memo. at page 3 of 5), a high-risk analyst for SLS who works on contested foreclosures (Docket No. 40, Def. Def. Atty. Decl. Ex. 18, Poch EBT Tr. at 11-12, hereinafter "Poch EBT Tr."). Specifically, Plaintiff points out Wallace deviates from Poch's testimony on whether Plaintiff remains liable for the mortgage and note despite the foreclosure judgment (id. at pages 3-4 of 5; Docket No. 40, Ex. 18, Poch EBT Tr. at 93; cf. Docket No. 40, Wallace Aff. ¶ 11). He contends that Poch testified that Plaintiff did not owe the debt following the foreclosure (Docket No. 46, Pl. Memo. at page 4 of 5). Plaintiff also disputes Wallace's contentions that SLS made thorough investigation of Plaintiff's dispute as raised by Plaintiff and later by Experian (Docket No. 46, Pl. Memo. at pages 3-4 of 5; Poch EBT Tr. at 89, 90, 91; cf. Docket No. 40, Wallace Aff. ¶¶ 15, 16).

Plaintiff argues that SLS is attempting to sandbag Plaintiff by submitting Wallace's Affidavit in its motion but never identifying her in discovery, depriving Plaintiff the opportunity to depose her (Docket No. 46, Pl. Memo. at pages 4 and 5 of 5).

SLS responds that the Motion to Strike is frivolous, that Ms. Wallace was not a "fact witness" but was "a proper SLS corporate designee" (Docket No. 48, Def. Memo. at

8

8). SLS also denies any conflict between Wallace Affidavit and Poch's testimony (id.). SLS argues that Plaintiff remained an obligor under the mortgage loan and the fact that he was not a defendant or judgment debtor in the later foreclosure action is not a conflict (id. at 8, 2-5 (mortgage lender had election of remedies, either action at law on debt or at equity foreclosing the mortgage)). SLS argues that the diligence of its investigation that Ms. Wallace avers is based upon Wallace's personal involvement in the investigation (id. at 8; see Docket No. 40, Wallace Aff. ¶ 1 (Affidavit made "based on my personal knowledge or based on my review of the records of SLS")), although there is little stated about her involvement in the investigation or that her job included participation in such investigations. SLS concludes, since Wallace and Poch's statements are not contradictory, Plaintiff is not prejudiced by Wallace's Affidavit (Docket No. 48, Def. Memo. at 8-9). SLS, however, did not discuss the failure to disclose Wallace in its initial disclosure or subsequent discovery.

Plaintiff did not reply in support of his motion.

### C. Effect of Failure to Name Affiant as Rule 30(b)(6) Designee

Defendant's initial disclosure did not name its Rule 30(b)(6) representatives and it did not designate Loretta Poch as its sole designee. SLS's initial disclosure identified "corporate representative(s) of SLS" as potential witnesses without naming them (Docket No. 46, Pl. Atty. Affirm. Ex. A, SLS's First FRCP 26(a)(1) Initial Disclosures). This gave SLS leave to use more than Poch as its corporate representative.

Wallace is a second assistant vice president of SLS (but her duties are not disclosed), and her Affidavit was based upon her "personal knowledge or based on my

review of the records of SLS" (Docket No. 40, Wallace Aff. ¶ 1) and her access to the computerized loan records at issue (id. ¶¶ 2, 3).

Poch is a high-risk analyst for SLS who handles contested foreclosures and apparently not credit report disputes. Poch testified at the Rule 30(b)(6) deposition that she did not know of Experian's Automated Credit Dispute Verifications (or "ACDV") reports (Docket No. 40, Poch EBT at 89) which Plaintiff interprets as part of the inconsistency with Wallace's sworn statements (cf. Docket No. 46, Pl. Memo. at page 4 of 5).

Plaintiff alleges a discrepancy between Poch and Wallace's statements on whether Plaintiff owed the mortgage debt (id.). Poch agreed with Plaintiff's question that Plaintiff was a "judgment debtor relative to the foreclosure proceeding" on July 27, 2016 (Docket No. 40, Poch EBT at 92, ll. 1-5, 9). Plaintiff then asked Poch whether he was a defendant in that foreclosure (id. ll. 10-14) to which Poch agreed (id. l. 17). Poch was not asked, however, whether Plaintiff owed the mortgage debt, as Plaintiff argues in moving to strike Wallace's Affidavit (cf. Docket 46, Pl. Memo. at page 4 of 5).

Wallace also stated that Plaintiff was a defendant in the foreclosure proceedings until his dismissal in November 2017 (Docket No. 40, Wallace Aff. ¶ 11).

Plaintiff's objections stem from these purported inconsistencies in testimony and the Affidavit about Plaintiff's liability on the mortgage despite no longer being a foreclosure defendant (Docket No. 46, Pl. Memo. at pages 3-4 of 5, citing Docket No. 40, Wallace Aff. ¶¶ 11, 15-16). There is no inconsistency between Poch's and Wallace's statements. Both declared that Plaintiff was a defendant in the foreclosure (compare Docket No. 40, Poch EBT Tr. at 93 with Docket No. 40, Wallace Aff. ¶ 11), a fact alleged by Plaintiff (see

Docket No. 1, Compl. ¶ 25). Plaintiff did differ with Poch as to when he was removed from the foreclosure; Plaintiff states he was removed on November 2015 (id. ¶ 26), months before July 2016 that Poch answered that Plaintiff then was a judgment debtor (Docket No. 40, Poch EBT Tr at 93). There is no difference in the testimony between Poch and Wallace on this point. Wallace merely claims that Plaintiff remained obligated under the mortgage loan regardless of his status in the foreclosure (Docket No. 40, Wallace Aff. ¶ 11); Poch says nothing about this in her testimony. That contention, however, is a legal conclusion as to the effect of the foreclosure has on the mortgage loan.

Plaintiff's objection here to Wallace's Affidavit lies with Wallace's allegedly inconsistent statements to those of SLS's representative Poch that, although Plaintiff was removed as a party in the foreclosure of the mortgage, he still owed on the mortgage and note. This is not inconsistent. Foreclosure is one remedy open to a mortgage creditor and the creditor could seek enforce the mortgage note for a money judgment (rather than reclaiming title in foreclosure). The fact that the mortgage still had Plaintiff's name on it (even if in error) does not render Wallace's statement to be inconsistent with SLS's position in seeking collection of the debt on multiple fronts. On the basis of consistency between the witnesses' testimonies, Plaintiff lacks grounds to strike Wallace's Affidavit; Plaintiff's Motion (Docket No. 46) for that relief is denied.

The next alleged discrepancy is the thoroughness of SLS's investigations of Plaintiff's credit report discrepancy. Poch could not identify a Kirsten Palumbo, who apparently investigated Plaintiff's disputed credit report and Experian's claims (Docket No. 40, Poch EBT at 90, ll. 6-21), although Plaintiff does not identify who Ms. Palumbo is

11

and her role (if any) in SLS's investigations. Poch also testified that she did not know how long SLS conducted its investigations (id. at 91, ll. 2-7). When asked whether SLS performed its investigation the same day it received Experian's ACDV verification form, Poch testified that she did not know, since the form was not SLS's she did not know what the dates therein referred to (id.). Again, Poch did not testify to any involvement in SLS's investigations of disputed credit reports.

Wallace announced, however, that the two investigations of Plaintiff's credit report discrepancies were thorough (Docket No. 40, Wallace Aff. ¶¶ 15, 16). Wallace recounted the thoroughness of SLS's investigations of credit report complaints lodged by Plaintiff (id.) but Wallace merely reported the correspondence to Plaintiff and Ms. Macris which relied upon the mortgage (id. ¶ 15, Ex. M) or Experian's internal records regarding Plaintiff's complaint (id. ¶ 16, Ex. N). The Affidavit does not indicate that Wallace based these statements upon her personal knowledge or her investigation of Plaintiff's credit reporting complaints; she apparently reviewed SLS's records and made her statements and conclusions. There is no inconsistency here with Poch's statements, which deny Poch's knowledge about purported elements of these investigations.

As SLS's Rule 30(b)(6) representative, Poch testified not to her own personal knowledge, see 8A Federal Practice and Procedure, supra, § 2103, at 455, but from information known or reasonably available to SLS. Poch testified about the foreclosure aspects of the case. SLS should have also produced a representative more knowledgeable about its credit report dispute investigation, but this failure is not grounds for striking Wallace's Affidavit. SLS is not offering Wallace as its representative on credit report investigation; it merely presented Wallace's conclusory statements about the

12

completeness of the investigations, based upon correspondence sent by SLS to Plaintiff following each investigation (Docket No. 40, Wallace Aff. ¶¶ 15, 16, Exs. M, N), with the first letter (dated May 23, 2016) signed by a teller in Customer Care Support with the first name of Patricia (id., Ex. M) and the second exhibit being Experian's ACDV form from July 27, 2016 (id., Ex. N).

SLS now produced Wallace here as the transmitter of SLS's records with her brief contentions about the thoroughness of SLS's investigations of Plaintiff's credit report disputes. Wallace compiled SLS's records in her Affidavit and she was not a fact witness. As for her contentions about the thoroughness of the investigation, that is more of a conclusion than an assertion of fact and can be readily considered on Motions for Summary Judgment.

This Court also notes that there is overlap between Wallace's exhibits and those submitted by Plaintiff in support of his Motion for Summary Judgment (compare Docket No. 40, Wallace Aff. Exs. I, L with Docket No. 41, Pl. Aff. Exs. D, H). There is no need to strike these exhibits. Much of Wallace's other exhibits are recorded documents surrounding the mortgage and its foreclosure (Docket No. 40, Wallace Aff. Exs. D-G, J). This Court will not strike these exhibits. Other exhibits (id. Exs. A-C, H, K, M, N) are SLS's documents presented here by one of its employees. SLS could have produced these through its counsel, through Poch or some other official of SLS. The fact that Wallace was not disclosed as a witness does not prejudice the admissibility of these exhibits. These exhibits will not be stricken. As a result, Plaintiff's Motion to Strike (Docket No. 46) Defendant SLS's exhibits presented with Cynthia Wallace is denied.

Stover, a case cited by Plaintiff (whose counsel also represented plaintiff Charles Stover) in support of striking Wallace's Affidavit (cf. Docket No. 46, Pl. Memo. at page 1 of 5), is distinguishable. There, defendant Northland Group, Inc., sought to introduce the trial testimony of one of its employees, Valerie Bartosh, whom Northland Group failed to disclose until filing its potential witness list on July 2, 2007, for a July 16, 2007, trial, 2007 WL 1969724, at *2, 1. Ms. Bartosh was not disclosed in Northland Group's Rule 26 disclosure (as SLS did not list Wallace here) or in subsequent discovery requests (again, as SLS failed to do for Wallace). Northland Group stated that Ms. Bartosh would testify about contacts she had with Mr. Stover attempting to collect the debt at issue in that case as well as testifying about Northland Group's internal policies, id. at *2.

The record in Stover did not indicate that Northland Group had a Rule 30(b)(6) representative or representatives as SLS did in this case. The chief difference between the cases is that SLS listed "representative(s)" of the corporation in its initial Rule 26 disclosure without naming them. SLS later produced for deposition Poch as its Rule 30(b)(6) representative, but did not make her the company's exclusive representative. The plural representatives in the initial disclosure also would include Wallace. Stover also is distinguished by the procedural posture of that case, the eve of trial, from the present case, where dispositive motions are pending. Magistrate Judge Schroeder sanctioned Northland Group under Rule 37(c)(1) for its failure to identify Ms. Bartosh because Northland Group did not supplement its disclosure and discovery "upon learning that" its discovery responses were incomplete, Stover, supra, 2007 WL 1969724, at *2.

14

Upon this Court's discretion in considering motions to strike and considering or imposing discovery sanctions, striking what is essentially a covering Affidavit from SLS's employee is unwarranted. Upon notice of this present motion, SLS shall supplement its disclosures to list Wallace and describe her role with SLS, Fed. R. Civ. P. 26(e)(1)(B). At the procedural stage of this case, such a supplementation is the better result than striking an Affidavit and exhibits that could be introduced through other witnesses or representatives of SLS. Therefore, Plaintiff's Motion to Strike (Docket No. 46) that Affidavit is denied.

## IV.     Conclusion

Plaintiff objects to Cynthia Wallace's Affidavit because SLS failed to disclose her as a witness or as a Rule 30(b)(6) designee. SLS, however, listed unnamed "representatives" in its Rule 26 initial disclosure, which includes Wallace. The better practice would have been to identify those representatives as used, Poch in her deposition as a Rule 30(b)(6) deponent and Ms. Wallace as records custodian. SLS thus shall supplement its disclosure to include information about Ms. Wallace and submit this supplementation by **July 30, 2021**. The severe sanction of striking Wallace's Affidavit because she was not identified is unwarranted; Plaintiff's Motion for that relief (Docket No. 46) is denied.

Given the procedural stage of the case and the present Order of supplementation, Plaintiff could seek to depose Wallace (or object to SLS's Motion for Summary Judgment on Rule 56(d) grounds) although he has moved for summary judgment himself (Docket No. 41). Plaintiff's Motion to Strike (Docket No. 46) Ms. Wallace's Affidavit and exhibits is denied.

By separate Decision and Order, this Court will decide the pending Motions for Summary Judgment (Docket Nos. 40, 41), with consideration of Wallace's Affidavit and exhibits.

## V. Orders

IT HEREBY IS ORDERED, that Plaintiff's Motion to Strike (Docket No. 46) the Affidavit of Cynthia Wallace and its attachments (Docket No. 40) submitted by Defendant SLS in support of SLS's Motion for Summary Judgment is DENIED.

FURTHER, Defendant SLS is ordered to supplement its initial disclosure to include Cynthia Wallace and serve that supplementation by July 30, 2021.

FURTHER, this Court will consider as submitted Defendant SLS's Motion for Summary Judgment (Docket No. 40) and Plaintiff's cross Motion for Summary Judgment (Docket No. 41).

SO ORDERED.


Dated:   July 8, 2021
         Buffalo, New York


                                                s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge