UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARK K. MACRIS,

                              Plaintiff,

        v.                                          **DECISION AND ORDER**

                                                    17-CV-361S

SPECIALIZED LOAN SERVICING, LLC,

                              Defendant.

## I.      Introduction

This is a Fair Credit Reporting Act, 15 U.S.C. ch. 41, subch. III, §§ 1681 to 1681x, 1681s-2(b) ("FCRA"), Fair Debt Collection Practices Act, 15 U.S.C. ch. 41, subch. V, §§ 1692 to 1692p ("FDCPA"), and New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law ch. 25, §§ 380 to 380-v, action.  Remaining Defendant, Specialized Loan Servicing, LLC ("SLS" or "Defendant"), allegedly is a debt collector (Docket No. 1, Compl. ¶ 17; cf. Docket No. 18, SLS Ans. ¶ 17).  Plaintiff claims that SLS inaccurately reported to a credit reporting agency (or a "CRA"), Experian Information Solutions ("Experian"), a mortgage debt that Plaintiff argues he no longer owed.  (Docket No. 1, Compl.)

Before this Court are (a) the Motion of SLS for Summary Judgment (Docket No. 40) and (b) Plaintiff's Motion for Summary Judgment (Docket No. 41).  In support of SLS's Motion, it submitted the Affidavit of Cynthia Wallace, second assistant vice president for SLS (Docket No. 40, Wallace Aff. ¶ 1), with exhibits (id. Exs. A-N).  Plaintiff moved to strike this Affidavit and exhibits (Docket No. 46).  This Court denied that Motion (Docket No. 51, Decision and Order of July 8, 2021, 2021 WL 2873930); familiarity with that Decision is presumed.

For reasons that follow, Defendant SLS's Motion for Summary Judgment (Docket No. 40) is granted and Plaintiff's countering Motion for Summary Judgment (Docket No. 41) is denied.

## II.    Background

### A.  Facts and Claims

Plaintiff, with his then spouse Catherine Macris Schaefer ("Ms. Macris"), entered into a mortgage and note on a house on Teakwood Terrace, Amherst, New York (the "Property") (Docket No. 40, Wallace Aff. ¶ 6).  As alleged in the Complaint, on or about June 10, 2009, he entered into a matrimonial settlement agreement with his wife with Ms. Macris agreeing to secure Plaintiff's release from the mortgage on the Property (Docket No. 1, Compl. ¶ 23; Docket No. 41, Pl. Aff. Ex. B).  Under that marital agreement, Ms. Macris got exclusive use of the property for twelve months after execution of the agreement; she exclusively was obliged to make mortgage payments and to secure a release or discharge of Plaintiff from the mortgage (Docket No. 41, Pl. Aff. ¶ 4, Ex. B at 38-40).  If Ms. Macris became tardy in paying the mortgage, she would lose exclusive use and occupancy of the Property and the Property would be put up for sale (id., Ex. B at 39).  Once the release or discharge is obtained, Plaintiff conveys his interest in a quit claim deed (id. at 40).

Over three years later, on or about August 14, 2012, a deed and Real Property Transfer Report was filed with the Erie County Clerk removing Plaintiff from the deed to the Property (Docket No. 1, Compl. ¶ 24; Docket No. 41, Pl. Aff. Ex. C).  Ms. Macris was the sole owner on this deed.

Then, on or about March 6, 2015, mortgagee U.S. Bank as trustee for the SROF 2013-S3 Remic Trust I sued Plaintiff and his now ex-wife to foreclose on the mortgage for the Property (Docket No. 1, Compl. ¶ 25; Docket No. 41, Pl. Aff. Ex. D; Docket No. 40, Wallace Aff. Ex. I).  On or about November 20, 2015, an Order of Reference was filed removing Plaintiff from the action because he was deemed to be no longer a necessary party for that foreclosure (Docket No. 1, Compl. ¶ 26; Docket No. 41, Pl. Aff. ¶ 13, Ex. G). This Order, however, did not release Plaintiff from the mortgage and note.

Plaintiff claimed he later obtained his credit report from Experian in May 2016 that showed Plaintiff still owing the mortgage and that it was past due (Docket No. 1, Compl. ¶ 27; see Docket No. 41, Pl. Aff. Ex. I).  Plaintiff disputed that account (Docket No. 1, Compl. ¶ 28 (the "subject debt," id. ¶ 29); Docket No. 41, Pl. Aff. Ex. H).  If Plaintiff owed on the note, he would be in default and SLS is the servicer of the mortgage loan (Docket No. 1 Compl. ¶¶ 32, 33; Docket No. 18, SLS Ans. ¶¶ 32, 33).  In May 2016, SLS called Plaintiff seeking financial information to collect the mortgage debt but Plaintiff denied having any obligation to pay the subject debt (Docket No. 1, Compl. ¶ 34).  Nevertheless, SLS continued to call Plaintiff seeking to recover on that loan (Docket No. 1, Compl. ¶ 35). In July 2016, Experian sent Plaintiff a reinvestigation report which verified the disputed subject debt (Docket No. 1, Compl. ¶ 36).  On August 2016, Plaintiff applied unsuccessfully for a Visa card and the denial was due to the subject debt on his credit report (Docket No. 1, Compl. ¶ 37).  In August and September 2016, SLS's representatives contacted Plaintiff and stated that the mortgage would be foreclosed, and that Plaintiff would be responsible for the subject debt (id. ¶¶ 38-39).

Plaintiff filed his Complaint on April 28, 2017 (Docket No. 1), asserting five causes of action.  The First Cause of Action alleges a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s(2) that after receiving notice of the disputed information given to Experian, SLS "negligently and/or willfully failed to conduct an investigation of the disputed information; review all the relevant information provided by the consumer with notice; report the results of the investigation to the consumer reporting agency [here, Experian]; and modify, delete, or permanently block the reporting of the item of information that is inaccurate" (id. ¶ 41).  As a result of SLS failing to follow proper investigation requirements, SLS "negatively impacted Plaintiff's credit rating and adversely affected Plaintiff's ability to obtain credit" (id. ¶ 42), resulting in Plaintiff suffering actual damages and recovering of reasonable attorneys' fees (id. ¶ 43).  The Second Cause of Action alleges violation of New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law § 380-j(e) against Experian (id. ¶¶ 45-49).  The Third and Fourth Causes of Action also allege violations of the federal Fair Credit Reporting Act by Experian (id. ¶¶ 51-55, 57-58).  Finally, the Fifth Cause of Action alleges that SLS violated provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, 1692e(8), and 1692g, causing Plaintiff to become "nervous, upset, anxious and suffered from emotional distress" (id. ¶¶ 60, 61).

Defendants SLS and Experian eventually (Docket Nos. 6, 11, 13, Stipulations extending time to answer, 8, 12, 14, Orders adopting Stipulations) and separately answered (Docket Nos. 16 (Experian Ans.), 18 (SLS Ans.)).  Plaintiff settled with Experian on August 14, 2018 (Docket No. 31; see Docket No. 34, Order dismissing Experian).  With

that dismissal, the remaining Causes of Action are the First (under FCRA) and Fifth (under FDCPA).

> B.  Motions for Summary Judgment (Docket Nos. 40, 41)

> > 1.  Moving Papers

Later, the remaining parties moved for summary judgment (Docket Nos. 40, 41). In support of its Motion, SLS filed Ms. Wallace's Affidavit with exhibits (Docket No. 40, Wallace Aff.), incorporating references to her Affidavit and exhibits in its Statement of Undisputed Facts (id., Def. Statement)[1].

Plaintiff responded to SLS's motion (Docket No. 47), filed his own Motion for Summary Judgment (Docket No. 41)[2], and moved to strike Ms. Wallace's Affidavit (Docket No. 46).  Plaintiff generally denied all allegations made in SLS's Statement (Docket No. 40, Def. Statement) due to the then-pending Motion to Strike (Docket No. 46) the Wallace Affidavit because she was not disclosed as a potential witness (Docket No. 47, Pl. Response to Def.'s Material Statement of Facts).  Save this discovery objection and his own Statement of Facts (Docket No. 41), Plaintiff otherwise has not disputed SLS's Statement.  As previously noted, this Court denied the Motion to Strike

---

[1]In addition to these papers, in support of its Motion, SLS submitted its attorney's Declaration with exhibits, Docket No. 40.

Plaintiff submitted his Memorandum, Response to Defendant's Material Fact Statement, and his attorney's Affirmation in opposition to SLS's Motion, Docket No. 47.

SLS did not submit a reply.

[2]In support of his Motion for Summary Judgment, Plaintiff submitted his Affidavit with exhibits; his counsel's Affidavit with exhibits; the Affidavits of Gretchen Berger and Amanda Tagliarino (legal assistants to Plaintiff's counsel who listened to and transcribed audio recordings from SLS, each with exhibits of the transcripts); an Appendix of supporting Affidavits and exhibits; his Statement of Undisputed Facts; and Memorandum of Law, Docket No. 41.

SLS opposed by submitting its Counterstatement of Undisputed Facts, opposing Memorandum of Law, Docket No. 45.

Plaintiff in reply submitted his Reply Memorandum, Docket No. 49.

(Docket No. 51, 2021 WL 2873930), with SLS to supplement its disclosure to include information about Ms. Wallace by July 30, 2021 (id. at 15).

Defendant's Statement (Docket No. 40) concentrates on the mortgage and the foreclosure proceedings while Plaintiff's Statement (Docket No. 41) recounts the mortgage, the terms of Plaintiff's separation from Ms. Macris, and his attempts to clear up disputed statements on his credit report and SLS's efforts in purportedly investigating the dispute.   Comparing the Statements of Facts for both parties' motions (Docket Nos. 40, Def. Statement; 41, Pl. Statement) and their responses thereto (Docket Nos. 47, Pl. Response to Def's Statement; 45, Def. Counterstatement), the facts regarding Plaintiff and his former wife's mortgage and its foreclosure generally are not contested.   What is disputed is the effect of removing Plaintiff as a defendant in the foreclosure action, Plaintiff's conversations with SLS regarding collection of the debt, and Plaintiff's efforts to remove the debt and delinquency from credit reports.   Factual disputes will be noted below.

### 2.   Mortgage, Divorce, and Foreclosure

On February 1, 2008, Plaintiff and Ms. Macris entered mortgage and note (Docket No. 40, Def. Statement ¶¶ 1, 3-4; Docket No. 41, Pl. Statement ¶ 1).  This mortgage and note were transferred from the original lender Countrywide to various institutions to U.S. Bank National Association, as Trustee for SROF-2013-S3 REMIC Trust I[3] (Docket No. 40, Def. Statement ¶¶ 5-7) at the time of the foreclosure.  The parties agree that the last full payment on the mortgage was made on September 1, 2009 (Docket No. 40, Def.

---

[3]With the transfer of the mortgage to various institutions before and during the foreclosure, for convenience the mortgage holder hereinafter will be referred to as "SLS's client."  This Court notes that the client changed at least once during the pendency of the foreclosure action.

Statement ¶ 8; Docket No. 41, Pl. Statement ¶ 2; Docket No. 45, Def. Counterstatement ¶ 2).  SLS claims Plaintiff and Ms. Macris defaulted on the October 2009 payment (Docket No. 40, Def. Statement ¶ 8).  On April 1, 2014, SLS began servicing this loan (Docket No. 45, Def. Counterstatement ¶ 5; <u>see</u> Docket No. 41, Pl. Statement ¶ 5).

Meanwhile, Plaintiff and Ms. Macris divorced, entering into a settlement agreement on June 9, 2010 (Docket No. 41, Pl. Statement ¶ 3), with the terms noted above as alleged in the Complaint that Ms. Macris was to assume the mortgage or risk losing the Property. On August 4, 2012, the couple also had a deed filed with the Erie County Clerk which conveyed Plaintiff's interest in the Property to Ms. Macris (<u>id.</u> ¶ 4).  SLS contends, however, that the filing of this warranty deed did not abrogate Plaintiff's obligations under the note and mortgage (Docket No. 45, Def. Counterstatement ¶ 4).

On March 26, 2015, the lender commenced the foreclosure action against Plaintiff and Ms. Macris in New York State Supreme Court (Docket No. 40, Def. Statement ¶ 9; Docket No. 41, Pl. Statement ¶ 7).  During the pendency of this foreclosure action, the mortgage was assigned to U.S. ROF III Legal Title Trust 2015-1, by U.S. Bank National Association, as Legal Title Trustee (Docket No. 40, Def. Statement ¶ 7; <u>see also</u> <u>id.</u> ¶ 9).

Plaintiff contacted the lender's foreclosure counsel, providing them with the divorce decree, to remove him from the foreclosure action also believing that he was no longer obligated under the mortgage due to the divorce decree (Docket No. 41, Pl. Statement ¶ 8; Docket No. 41, Pl. Aff. ¶ 7; <u>see</u> Docket No. 41, Pl. Statement ¶¶ 8-14; Docket No. 41, Pl. Aff. ¶¶ 8-11, Ex. E).  SLS agrees that Plaintiff contacted foreclosure counsel. but Plaintiff based his request "on his incorrect belief that he was no longer obligated on the Mortgage per the Divorce Decree" (Docket No. 45, Def. Counterstatement ¶ 8).

Foreclosure counsel filed an Affirmation of Regularity requesting that Plaintiff be removed from the caption of the action as he was no longer a necessary party (Docket No. 41, Pl. Statement ¶ 14).  SLS characterized foreclosure counsel's email of September 10, 2015 (Docket No. 41, Pl. Aff. Ex. E), as merely stating that Plaintiff needed to furnish his divorce decree then counsel would try to convince his client "to waive the pursuit of deficiency and remove Plaintiff from the 2015 Foreclosure Action" (Docket No. 45, Def. Counterstatement ¶ 13).  Foreclosure counsel also wrote "The issue, and I apologize for not raising it before, is that you signed the note and thus are still obligated to repay the debt owed" (Docket No. 41, Pl. Aff. Ex. E).

On November 20, 2015, Justice James Dillon entered an Order of Reference (Docket No. 41, Pl. Statement ¶ 15; Docket No. 45, Def. Counterstatement ¶ 15; Docket No. 40, Wallace Aff. Ex. L; see Docket No. 41, Pl. Statement ¶¶ 11-14 (Plaintiff's efforts with creditor's counsel to remove him as a party in the foreclosure); Docket No. 45, Def. Counterstatement ¶¶ 11-12, 15).  Both the lender's Affirmation of Regularity and the Order of Reference said nothing about relieving Plaintiff from the note and mortgage (see id. ¶ 14).

The Order of Reference removed Plaintiff as a defendant in the foreclosure action and amended the caption leaving Ms. Macris as the sole defendant.  This Order also discontinued claims against John and Mary Doe defendants and appointed a Referee to compute the amount due on the note and mortgage.  (Docket No. 40, Wallace Aff. Ex. L.)

Plaintiff rests upon this Order of Reference as eliminating him from the foreclosure and (by extension) any further obligation under the mortgage and note.

SLS disagrees (e.g., Docket No. 45, Def. Counterstatement ¶¶ 12-14), claiming that "a release from obligation under the subject debt was never provided to Plaintiff" (Docket No. 40, Def. Statement ¶ 11; Docket No. 40, Wallace Aff. ¶ 11).  SLS argues that Plaintiff was incorrect in concluding that he was no longer obligated under the mortgage merely because of his removal from the foreclosure (Docket No. 45, Def. Counterstatement ¶¶ 12, 13, 14).

On June 29, 2016, judgment was entered in the foreclosure action (Docket No. 41, Pl. Statement ¶ 31; Docket No. 45, Def. Counterstatement ¶ 31), with a sale of the Property on October 17, 2016, reported to the court on November 30, 2016 (Docket No. 40, Wallace Aff. ¶ 11, Ex. J; Docket No. 40, Def. Statement ¶ 10).

### 3.  Plaintiff's Contacts with SLS Regarding His Credit Reports

Plaintiff alleges that from July 2015 (while Plaintiff was still a defendant in the foreclosure) through July 2016 he had a series of telephone calls and letters with representatives of SLS attempting to collect the mortgage debt or Plaintiff attempting to resolve disputes on his credit reports (Docket No. 41, Pl. Statement ¶¶ 16, 17-21, 23-28, 30, 33, 41-42).  SLS agrees with the alleged communication between the parties if not Plaintiff's characterizations (Docket No. 45, Def. Counterstatement ¶¶ 16-21, 23-28, 30, 33, 41-42).  In each contact, Plaintiff mentioned the foreclosure's Order of Reference which removed him as a defendant; SLS's representative continued to attempt to collect the mortgage debt.  Plaintiff also questioned why that debt was reported on his credit reports (Docket No. 41, Pl. Statement ¶¶ 18-19), and on April 27, 2016, SLS's staff told Plaintiff that the reports would continue to include the mortgage until the house was sold (id. ¶ 21).  On April 28, 2016, Plaintiff wrote to SLS a dispute letter relative to the reporting

of the mortgage on his credit report (id. ¶ 22) and he had a series of follow up telephone calls (id. ¶¶ 23-25).

On March 16, 2016, they discussed reference to the mortgage account in the credit report despite the Order of Reference (Docket No. 41, Pl. Statement ¶ 16).   The issue recurred on the March 30, 2016, call (id. ¶ 17).  On April 20, 2016, SLS's representative called Plaintiff about the mortgage and Plaintiff again mentioned the Order of Reference (id. ¶ 18).  Ms. Macris had inquired about mortgage assistance and SLS called Plaintiff to follow up (Docket No. 41, Berger Aff. Ex. A, Tr. Apr. 20, 2016, at 32-33).   On April 27, 2016, SLS called Plaintiff and stated that the mortgage would continue to be mentioned in his credit report until the Property was sold (Docket No. 41, Pl. Statement ¶ 19).  The next day, Plaintiff wrote to SLS disputing the references to the mortgage in his credit report (id. ¶ 20).  On May 3, 2016, Plaintiff conversed with SLS's representative about the credit report who stated SLS was unwilling to change credit reports until the system showed Ms. Macris only owned the Property (id. ¶ 21).   Plaintiff had telephone conversations on May 10 and 17, 2016, following up on his efforts to show SLS the Order of Reference and his removal from the foreclosure (id. ¶¶ 22-23).   On May 17, SLS's representative stated that it needed proof of a short sale before the report could be changed (id. ¶ 23); SLS contends that its representative "made clear in his response that Plaintiff is likely still obligated under the subject debt but would request that the legal department get involved" (Docket No. 45, Def. Counterstatement ¶ 23).

On May 19, 2016, Plaintiff received the credit report from Experian which still listed the mortgage debt and noted the foreclosure without noting that Plaintiff was no longer a

defendant in that proceeding (Docket No. 41, Pl. Statement ¶ 24; Docket No. 41, Pl. Aff. Ex. I).

On June 8, 2016, Plaintiff called SLS again and was told that Plaintiff remained on the mortgage loan and that Plaintiff would have to be involved in a short sale (Docket No. 41, Pl. Statement ¶ 27), this despite the 2012 deed which removed Plaintiff from title to the Property.  On June 9, 2016, Plaintiff received a May 23, 2016, letter from SLS responding to the dispute letter; there, SLS stated that it could not accept court papers Plaintiff attached to the dispute letter and that it forwarded correct information to credit reporting agencies (id. ¶ 28).

On or about July 11, 2016, Plaintiff disputed the SLS trade line (noting his delinquency on the mortgage) with Experian (Docket No. 41, Pl. Statement ¶ 32).  On July 26, 2016, SLS received an Automated Credit Dispute Verification (or "ACDV") form from Experian relative to Plaintiff's dispute (Docket No. 41, Pl. Statement ¶ 34).  SLS responded the next day and confirmed that the trade line for the mortgage of the Property was accurate (Docket No. 41, Pl. Statement ¶¶ 34, 36).  Plaintiff claims that SLS did not review any documents prior to responding to the ACDV (Docket No. 41, Pl. Statement ¶ 35; Docket No. 41, Pl. Atty. Affirm., Ex. E, Poch EBT Tr. at 89, ll. 3-7; see also Docket No. 40, Def. Atty. Decl. Ex. 18, Poch EBT Tr. at 89)[4].  SLS disagrees with this claim, resting upon the assertion in Cynthia Wallace's Affidavit (Docket No. 40, Wallace Aff. ¶ 16) that SLS conducted a thorough investigation.  In answer to Plaintiff's question about the documents SLS reviewed prior to responding to the ACDV, Loretta Poch (SLS's

---

[4]SLS submitted with its Motion the entire transcript from its Rule 30(b)(6) representative, Loretta Poch, also referenced as "Poch EBT Tr."  This Court will cite to SLS's entire version of this transcript rather than excerpts.

Rule 30(b)(6) representative) said she did not know (Poch EBT Tr. at 89).   Plaintiff recounts the investigation methods SLS uses for credit report disputes, that it was SLS's policy not to report a consumer dispute of a debt when receiving an e-Oscar dispute form from a credit reporting agency (or "CRA") (Docket No. 41, Pl. Statement ¶¶ 37-40).

Plaintiff then was denied applications for credit cards based upon the uncorrected credit report (Docket No. 41, Pl. Statement ¶¶ 43-44).   SLS admits that the denial letters were sent to Plaintiff but deny that they were due to inaccurate credit reporting (Docket No. 45, Def. Counterstatement ¶¶ 43, 44).

On November 27, 2016, Plaintiff called SLS again inquiring about the status of the Property and the loan and was told that SLS now owned the Property and that there was no longer any loan (Docket No. 41, Pl. Statement ¶ 45).

Plaintiff points to Poch's testimony that credit data reported to credit bureaus regarding Plaintiff was done intentionally and not in error and all communications to him were not in error (Docket No. 41, Pl. Statement ¶ 47; Docket No. 40, Poch EBT Tr. at 94-95).

Plaintiff asserts that due to SLS's inaccurate reporting he suffered emotional distress, experienced fear of not being able to support himself and his children, and Plaintiff was anxious and distracted at work (Docket No. 41, Pl. Statement ¶ 48).   SLS denies this statement, concluding that Plaintiff cannot sustain his burden of proving damages for any alleged violation (Docket No. 45, Def. Counterstatement ¶ 48).

This case is about credit reports.   The parties produced only two reports, both from Experian.   The first report is dated May 19, 2016 (Docket No. 41, Pl. Aff. ¶ 24, Ex. I), after entry of the Order of Reference.   This report states Plaintiff has a balance on real estate

of $259,468 (id. at internal pages 4, 12).  It also includes entries from SLS indicating the past due amount for the mortgage, that monthly was past due 120 days, and noting that foreclosure proceedings were commenced (id. at internal page 12).  Experian termed the SLS entry as "potentially negative" (id.).

Experian issued a revised credit report, dated July 27, 2016, in response to Plaintiff's dispute (id. ¶ 28, Ex. K).  There, Experian reported that it investigated Plaintiff's claim with SLS and reported that SLS updated its entry (id., Ex. K at internal pages 2, 3 of 16).  SLS's report still had the mortgage, the recent balance (as of March 2016), and a notation that "foreclosure proceedings started $143,631 past due as of Mar 2016," noted Plaintiff's dispute, and that the report was updated "from our processing of your dispute in Jul 2016" (id. at internal page 6 of 16).  There was no notation that Plaintiff was no longer a party to that foreclosure.

Plaintiff complains that his credit reports were unchanged since July 2016 but neither party included examples of subsequent credit reports.

### 4.  Motion Briefing

Responses to both Motions for Summary Judgment were due by November 28, 2018, with replies due by December 12, 2018 (Docket No. 42).  Plaintiff moved to adjust this schedule (Docket No. 43), which was granted (Docket No. 44); responses then were due by December 5, 2018, and replies by December 19, 2018 (id.).  With timely responses and replies, this Court deemed the Motions submitted (without oral argument).

### III.   Discussion

A.  Applicable Standards

1.   Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" only if it "might affect the outcome of the suit under governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A "genuine" dispute, in turn, exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion," Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotations and citations omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.32d 979, 982 (2d Cir. 1991) (citation omitted).  Indeed "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper," Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82, 83 (2d Cir. 2004) (citation omitted).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," Anderson, supra, 477 U.S. at 249.

14

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting Celotex, supra, 477 U.S. at 323).  The party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original removed).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant.  Ford, supra, 316 F.3d at 354.

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2).  The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.  Absent such an opposing statement, the facts alleged by the movant are deemed admitted.  Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

### 2.  Fair Credit Reporting Act

"The Fair Credit Reporting Act (the "Act"), 15 U.S.C. § 1681 et seq., regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information.  See 15 U.S.C. § 1681(b).  As part of this regulatory scheme, the Act imposes several duties on those who furnish information to consumer reporting agencies.  See § 1681s–2. Among these are duties to refrain from knowingly reporting inaccurate information, see § 1681s–2(a)(1), and to correct any information they later discover to be inaccurate, see § 1681s–2(a)(2).

"Consumers have the right to dispute any information reported to a credit reporting agency.  See § 1681g(c)(1)(B)(iii); see also §§ 1681i(a)(1)(A), 1681s–2(a)(8).  If a dispute is filed with the agency, both the agency and the furnisher of that information have a duty to reasonably investigate and verify that the information is accurate.  See §§ 1681i(a)(1)(A), 1681s–2(b)."

Longman v. Wachoia Bank, N.A., 702 F.3d 148, 150-51 (2d Cir. 2012).

"In certain circumstances, a consumer may bring a civil cause of action against any person who "willfully fails to comply with any requirement imposed under" the Act and recover actual or statutory damages, punitive damages, costs, and attorneys' fees.  See § 1681n(a)," id. at 151.

District courts in the Circuit, including current Chief Judge Wolford in this District, Comunale v. Home Depot, U.S.A., Inc., 328 F. Supp. 3d 70, 80 (W.D.N.Y. 2018), held that there is a private right of action for violation of § 1681s-2(b)[5], the statute Plaintiff alleges SLS violated (Docket No. 1, Compl. ¶¶ 40-43).

Section 1681s-2(b) is violated when, after receiving notice of a dispute regarding the accuracy of the information provided to a consumer reporting agency (or "CRA"), the furnisher fails to conduct an investigation with respect to the disputed information, 15 U.S.C. § 1681s-2(b)(1)(A) (see Docket No. 40, Def. Memo. at 7).  The furnisher of credit reporting also must "review all relevant information provided by the" CRA, report the results of the investigation to the CRA, if incomplete or inaccurate information is found, to report this to other CRAs, and promptly modify or delete the information or permanently block reporting of that item of information, 15 U.S.C. § 1681s-2(b)(1)(B)-(E).  Failure to do these things violates the statute.

To state a cause of action under FCRA, Plaintiff must show that the furnisher (here SLS) received notice of a credit dispute from a CRA (here Experian), and the furnisher thereafter acted in "willful or negligent noncompliance with the statute," Comunale, supra, 328 F. Supp. 3d at 80 (quoting Markovskaya v. American Home Mortg. Servicing, Inc., 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012) (citation omitted)) (Docket No. 40, Def.

---

[5]The Second Circuit in Longman upheld the district court in concluding that 15 U.S.C. § 1681s-2(a) had no private right of action, supra, 702 F.3d at 151.

Memo.at 8).   Plaintiff alleges that SLS failed to investigate the disputed item, whether Plaintiff owed on the foreclosed mortgage.

Any person who willfully fails to comply with the FCRA is liable to the consumer for actual damages between $100 and $1,000, punitive damages, and attorneys' fees, 15 U.S.C. § 1681n(a) (see Docket No. 47, Pl. Memo. at 5).

Plaintiff also alleged violation of the New York Fair Credit Reporting Act, General Business Law ch. 25, but only against Experian (Docket No. 1, Compl. ¶¶ 44-49).   Plaintiff and Experian settled and claims against Experian were dismissed (Docket Nos. 31, 34).

### 3.   Fair Debt Collection Practices Act

In the Fifth Cause of Action, Plaintiff alleges several violations of the FDCPA (Docket No. 1, Compl. ¶¶ 60-61), 15 U.S.C. §§ 1692e, 1692g, 1692f.   The purpose of the FDCPA was to avoid the "abusive, deceptive, and unfair debt collection practices by many debt collectors," 15 U.S.C. § 1692(a) (see Docket No. 41, Pl. Memo. at 2).   The FDCPA is remedial in nature thus is construed liberally, Vincent v. The Money Store, 736 F.3d 88, 98 (2d Cir. 2013) (quotation omitted) (id. at 2-3).

Plaintiff must prove that he is a consumer who allegedly owes a debt, that Defendant collecting the debt is considered a "debt collector," and the Defendant engaged in an act or omission in violation of the Act, see Schuh v. Druckman & Ginel, L.L.P., 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010) (Docket No. 40, Def. Memo. at 13).

Section 1692e "is violated when a debt collector uses 'any false, deceptive, or misleading representation or means in connection with the collection of any debt," Pipiles v. Credit Bureau of Lockport, 886 F.2d 22, 24 (2d Cir. 1989).   Section 1692e lists false or misleading representations that violate FDCPA, such as under § 1692e(2), a false

representation of the character, amount, or legal status of the debt, 15 U.S.C. § 1692e(2)(A).  The threat to take any action that cannot legally be taken or that is not intended to be taken violates § 1692e(5).  Other violations allege include communicating or threatening to communicate to any person credit information that is known or which should have been known to be false, including the failure to communicate that the disputed debt is disputed, § 1692e(8), the use of false representation or deceptive means to collect any debt, § 1692e(10).

The Act also is violated by engaging in conduct to harass, oppress, or abuse any person in connection with the collection of a debt, § 1692d, unfair practice such as collection of any amount unless it is expressly authorized by agreement creating the debt or permitted by law, § 1692f(1), or failure to validate a debt, § 1692g.  Within five days after an initial communication in connection to collection of the debt, the collector has to provide written notice of the amount of the debt, name of the creditor, a statement that the consumer acknowledge the debt or the debt will be presumed valid, § 1692(a)(1)-(5).

   B.  Contentions

      1.  Defendant SLS's Motion (Docket No. 40)

         a.  SLS's Arguments

SLS denies furnishing inaccurate information to CRAs, namely Plaintiff owing on the Property's mortgage (Docket No. 40, Def. Memo. at 8-11).  SLS also argues Plaintiff failed to establish entitlement to actual damages if inaccurate information was made in his credit reports (id. at 11-12).

As for Plaintiff's FDCPA claim, SLS argues that he did not establish that claim (id. at 12-15).  First, SLS claims that there was no § 1692d violation because Plaintiff did not

allege harassment (id. at 13).  Next, SLS argues that there was no false, deceptive, or misleading representation for Plaintiff to assert a violation under § 1692e (id. at 14).  SLS concludes that the five-day notice requirement of § 1692g was not applicable because Plaintiff has not alleged an argument specific to this section or allege an initial communication that would start the five-day period (id. at 14-15).

b.  Plaintiff's Opposition

Plaintiff responds that SLS violated both acts by continuously reporting the mortgage debt he did not owe or attempting to collect that debt (Docket No. 47, Pl. Memo.).  Plaintiff claims that he never received written notice that he had the right to request verification of the alleged debt (Docket No. 47, Pl. Aff. ¶ 4; see Docket No. 47, Pl. Atty. Affirm. (reviewing SLS's production and declaring that no written notice was found)); on his own initiative, Plaintiff repeatedly contacted SLS and disputed the recording of the mortgage debt (Docket No. 47, Pl. Aff. ¶¶ 5, 6).  SLS's error arises from its failure to recognize that Plaintiff was no longer a defendant in the foreclosure (Docket No. 41, Pl. Memo. at 4; Docket No. 47, Pl. Memo. at 1-2 (incorporating Docket No. 41)).  Plaintiff emphasizes that "a mortgagee must elect between pursuing a legal remedy or foreclosing on the property, but may not prosecute both actions without leave of court" (Docket No. 41, Pl. Memo. at 4, citing Manufacturer Hanover Trust Co. v. 400 Garden City Assocs., 150 Misc.2d 247, 249, 568 N.Y.S.2d 505, 507 (Sup. Ct. Nassau County 1991).  Since SLS's client opted to foreclose, SLS is precluded from collection of the debt (and potentially suing on the note) (Docket No. 41, Pl. Memo. at 5).  SLS reported in credit reports that Plaintiff had foreclosure proceedings against him although the Order of Reference and the later foreclosure judgment against Ms. Macris only (id. at 6).  Plaintiff

concludes that SLS reported inaccurate, false, and misleading information on his credit report because his financial obligations under the mortgage were extinguished "as the mortgagee [SLS's client] can only proceed at that point with a deficiency against the foreclosure action's judgment debtor [Ms. Macris]" (id.).

Therefore, Plaintiff claims that he suffered actual damages, and SLS is liable for actual, statutory, and punitive damages (Docket No. 47, Pl. Memo. at 2-5).

He asserts that SLS's conduct also violates provisions of the FDCPA (id. at 6-10) by SLS's continuous calls to Plaintiff attempting to collect the debt and failing to verify the correctness of the debt (id. at 8-9, 9-10). While Plaintiff does not point to an initial contact date, he states that he was contacted numerous times but despite this SLS never provided the required notice of 15 U.S.C. § 1692g(a)(1) (id. at 10; id., Pl. Aff.; id., Pl. Atty. Affirm.).

### 2.  Plaintiff's Motion (Docket No. 41)

#### a.  Plaintiff's Arguments

As stated in his opposition to SLS's Motion, Plaintiff argues in his Motion for Summary Judgment that SLS inaccurately reported that he owed on the mortgage (Docket No. 41, Def. Memo. at 4-6). He contends that SLS's actions in continuing to report the mortgage debt was intentional and not an error and thus subject to remedy under the FCRA (id. at 9-13). Plaintiff claims that SLS has a blanket policy to never report accounts that are disputed in response to a CRA's ACDV, thus failing to comply with the FCRA (id. at 11-13; Docket No. 40, Poch EBT at 48-51; Docket No. 41, Pl. Atty. Affirm. Ex. E, Poch EBT at 48-51). Plaintiff deems this violation to be willful and should result in statutory and punitive damages under the Act (Docket No. 41, Pl. Memo. at 13-14).

As for his FDCPA claim, Plaintiff emphasized the remedial nature of that Act and that it was intended to regulate the conduct of debt collectors, such as SLS, who relied upon error to attempt debt collection (id. at 2-3).

### b.  SLS's Response

SLS responds that this action under both the FCRA and FDCPA is frivolous, that Plaintiff remains liable for the underlying mortgage debt, an obligation Plaintiff was never released from (Docket No. 45, Def. Memo. at 1, 7-11).   SLS claims it investigated Plaintiff's written dispute of alleged inaccurate reporting and determined that the report accurately indicated Plaintiff's delinquency to CRAs (id. at 2).   Further, SLS argues that Plaintiff has not established that he suffered any injury from the alleged inaccurate reports (id.).   "If any recourse can be sought by Plaintiff," SLS concludes, "it should be from his ex-wife who failed to comply with a divorce decree which directed her to refinance the mortgage on the subject property, in order to remove Plaintiff from his" financial obligations under the note (id.).

SLS then argues that Plaintiff misapprehends election of remedies law in New York, that a mortgage creditor has a choice of remedies (on the note or foreclosure) but under New York Real Property Actions and Proceedings Law § 1301, the creditor cannot exercise both at the same time (id. at 8, citing United States v. Whitney, 602 F. Supp. 722, 730 (W.D.N.Y. 1985) (Telesca, J.); Federal Nat'l Mortg. Ass'n v. Connelly, 84 A.D.2d 805, 805, 444 N.Y.S.2d 147, 147 (2d Dep't 1981)).

### c.  Plaintiff's Reply

In reply, Plaintiff argues that SLS's client had to elect either foreclosure or legal action on the mortgage note but not both (Docket No. 49, Pl. Reply Memo. at 1-4), e.g.,

<u>Trustco Bank v. Pearl Mont Commons, L.L.C.</u>, 55 Misc. 3d 371, 377, 47 N.Y.S.3d 664, 649-50 (Sup. Ct. Schenectady County 2016).  Since that client elected to foreclose and could seek a legal action on the deficiency 90 days after the foreclosure sale (<u>id.</u> at 2, citing N.Y. Real Prop. Acts. Law §§ 1301, 1371(2)).  Since Plaintiff was removed as a defendant in the foreclosure, once judgment was entered therein, Plaintiff would not be liable in an application for a deficiency judgment because the debt would be satisfied in the foreclosure and deficiency proceedings (without Plaintiff) (<u>id.</u> at 3, 4 n.1).   The mortgage debt was deemed satisfied 90 days from the date of sale, N.Y. Real Prop. Acts. Law § 1371(3).   Therefore, Plaintiff concludes that the debt was extinguished as of October 17, 2016, and the sale of the Property (<u>id.</u> at 4).

Plaintiff reiterates that SLS admitted that its policy was to not report consumer disputes to CRAs in willful violation of the FCRA (<u>id.</u> at 7-8).  He concludes that he demonstrated actual, statutory, and punitive damages under the FCRA (<u>id.</u> at 8).

### C.  Fair Credit Reporting Claim

Plaintiff claims that the credit reports were erroneous about the existence of his mortgage debt and his default therein from his removal as a defendant in the foreclosure action upon that mortgage.  Whether the information is accurate turns on application of New York foreclosure and mortgage law.

### 1.  Election of Remedies under New York Real Property Action and Proceedings Law

As noted by Judge Telesca in <u>Whitney</u>, <u>supra</u>, 602 F. Supp. at 730, under New York law,

> "the holder of a bond and mortgage has a choice of two remedies: He may proceed at law to bring an action on the debt as evidenced by the note (or bond) or he may proceed at equity by bringing an action to foreclose the mortgage. The note represents the primary personal obligation of the

> mortgagor while the mortgage is merely the security for that obligation. Copp v. Sands Point Marina, 17 N.Y.2d 291, 293, 270 N.Y.S.2d 599, 217 N.E.2d 654 (1966); Seamen's Bank for Savings in the City of New York v. Smadbeck, 293 N.Y. 91, 95, 56 N.E.2d 46 (1944).  Under Section 1301 of the Real Property Actions and Proceedings Law, the mortgagee must make an election as to which remedy he will pursue and cannot prosecute two actions concurrently.  French v. French, 107 A.D. 107, 109, 94 N.Y.S. 1026, app. dsmd. 185 N.Y. 532, 77 N.E. 1187 (1906).  Section 1301 of the Real Property Actions and Proceedings Law prevents a mortgagee of real property from seeking to enforce rights upon default by pursuing a legal remedy and an equitable remedy at the same time."

Whitney, 602 F. Supp. at 730 (emphasis added); VNB New York Corp. v. Paskesz, 131 A.D.3d 1235, 1235-36, 18 N.Y.S.3d 68, 69-70 (2d Dep't 2015) (Docket No. 41, Pl. Memo. at 4); see also 1 Bergman on New York Mortgage Foreclosure § 7.05 (LEXIS 2021) (citations omitted).  "Foreclosure is an equitable proceeding devised to extinguish the equity of redemption—an important, exclusive right held by the mortgage," Whitney, supra, 602 F. Supp. at 730, citing Cornish v. Moulton, 138 N.Y. 133, 33 N.E. 842 (1893).

New York Real Property Actions and Proceedings Law sets forth the election of remedies available to a lender with a defaulting mortgage, N.Y. Real Prop. Acts. Law §§ 1301, 1371.  Section 1301 is strictly construed since it is a derogation of common law right to purse alternative remedies of foreclosure and recovery on the debt, Dollar Dry Dock Bank v. Piping Rock Bldrs., 181 A.D.2d 709, 710, 581 N.Y.S.2d 361, 363 (2d Dep't 1992) (citation omitted).  Section 1301(1) states that when the lender sues on the note no foreclosure action may be commenced or maintained unless execution against the defendant's property has been issued upon judgment and the judgement has been returned wholly or partially unsatisfied, N.Y. Real Prop. Acts. Law § 1301(1); 1 Bergman, supra, §§ 7.06[1], 7.08.  This is the opposite of the situation presented here of Mark Macris and SLS's client.

SLS's client elected the remedy under § 1301(2) by foreclosing the mortgage.  This section precludes another action if a foreclosure is pending but, if the second action is commenced, that complaint must state whether any part of the debt has been collected, N.Y. Real Prop. Acts. Law § 1301(2); 1 Bergman, supra, §§ 7.06[2], 7.10 (citations omitted).  Under § 1301(3), during a foreclosure or after final judgment "no other action to recover any part of the mortgage debt may be commenced or maintained without leave of the court in which the foreclosure was brought," 1 Bergman, supra, §§ 7.06[3], 7.10 (citations omitted); N.Y. Real Prop. Acts. Law § 1301(3).  "If the foreclosing party does nonetheless initiate an action on the debt without leave of court, the mandate is to then stay or dismiss that latter action," 1 Bergman, supra, § 7.10 & n.11 (citing Shaw Funding, L.P. v. Grauer, 98 A.D.3d 660, 660, 950 N.Y.S.2d 524, 524-25 (2d Dep't 2012)), but not to dismiss the foreclosure, id. § 7.10 & n.12 (citations omitted).

If there is a deficiency after the foreclosure sale, the lender can seek a deficiency judgment, N.Y. Real Prop. Acts. Law § 1371(2) (90 days from entry of judgment to seek deficiency judgment).  "If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist," N.Y. Real Prop. Acts. Law § 1371(3); Trustco Bank, supra, 55 Misc.3d at 377, 47 N.Y.S.3d 644, 649.

When a borrower defaults, the creditor "must elect between pursuing a legal remedy or foreclosing on the property, but may not prosecute both actions without leave of court," Manufacturers Hanover Trust Co. v. 400 Garden City Assocs., 150 Misc.2d 247, 249, 568 N.Y.S.2d 505, 507 (Sup. Ct. Nassau County 1991) (Docket No. 41, Pl. Memo.

at 4).  Another commentator observed that "a mortgagee may not commence an action seeking the second remedy until it has exhausted all of its efforts on the first remedy," Deborah L. Kelly, "Pursuing Separate Action for Mortgage Debt," LEXIS, RPAPL § 1301, Practice Insights (2021).

Bergman noted several reasons for not having concurrent proceedings that it is settled policy of law to not countenance more than one action at a time to recover a mortgage debt, to discourage double litigation, convenience of disposal of matter in one proceeding, avoid vexatious, multiple litigation, and to avoid the abuse of double litigation (foreclosure and a distressed sale and separate action to recoup the outstanding difference), 1 Bergman, supra, § 7.09 (citations omitted); see Valley Sav. Bank v. Rose, 228 A.D.2d 666, 666, 646 N.Y.S.2d 349, 350 (2d Dep't 1996) (quoting Dollar Dry Dock Bank, supra, 181 A.D.2d at 710, 581 N.Y.S.2d at 362-63 (holding that purpose of § 1301 is to avoid multiple suits and to collect the mortgage debt in one court and one action)).

Bergman also considered special circumstances courts have found to grant leave for an action on the note while a foreclosure is pending (for example, tax liens, mortgage debtors who cannot be served in New York State, bankruptcy, junior mortgage), 1 Bergman, supra, § 7.12[1] (citations omitted).  None of these circumstances arise here had SLS's client sought that relief.

SLS cites 2 Berman on New York Mortgage Foreclosure § 12.04[2] (Docket No. 40, Def. Memo. at 9, 10; Docket No. 45, Def. Memo. at 9) for the proposition that "[a]bsent an assumption by the grantee and a release by the mortgagee to the mortgagor, the mortgagor remains liable for the debt when the property is conveyed," id. & n.15 (citing National Sav. Bank of Albany v. Fermac Corp., 241 A.D. 204, 205-06, 271 N.Y.S. 836,

839 (3d Dep't 1934); <u>Murray v. Marshall</u>, 94 N.Y. 611 (1884)).  While true, this citation is not appropriate to the issues in this case.  This quote comes from a chapter entitled "Parties to the Foreclosure Action."  The discussion there is the voluntary transfer of the mortgaged property and addressing whether the grantee following that transfer becomes a foreclosure defendant.  The parties of the foreclosure of the Property here are not in dispute; there was no transfer of the Property during the period at issue (March to July 2016 when Plaintiff disputed the contents of his credit report).  Thus, there was no question of successor liability or standing.

  <u>Trustco Bank</u> is instructive (<u>see</u> Docket No. 49, Pl. Reply Memo. at 3).  There, the lender sued the guarantors of a mortgage after foreclosing upon the property and receiving proceeds from the foreclosure sale, 55 Misc.3d at 372, 47 N.Y.S.3d at 646.  Trustco Bank sued the corporations and their principal on the notes and then sued Pearl Mont Commons, LLC, and Geralynn Lynn (the wife of the principal) to avoid transfer of corporate assets secured by the bank's mortgages.  <u>Id.</u>  Defendant Geralynn Lynn moved for summary judgment, arguing (among other grounds) that Plaintiff foreclosed on the secured property, sold the property in foreclosure sale (purchasing the property and reselling it), <u>id.</u> at 372, 375, 47 N.YS.3d at 646, 648.  Lynn argued that "Trustco has received its bargained for collateral," <u>id.</u> at 375, 47 N.Y.S.3d at 648.

  The court then reviewed Real Property Actions and Proceedings Law §§ 1301 and 1371 and their impact on the Bank's ability to void the alleged fraudulent transfer, <u>Trustco Bank</u>, <u>supra</u>, 55 Misc.3d at 377, 47 N.Y.S.3d at 649-50.  The court cited examples of cases where the creditor was denied relief after the mortgage debt was fully satisfied in a prior proceeding, <u>id.</u> at 378-79, 47 N.Y.S.3d at 650-51, citing, <u>e.g.</u>, <u>TBS Enterps., Inc.</u>

v. Grobe, 114 A.D.2d 445, 494 N.Y.S.2d 716 (2d Dep't 1985) (holding that mortgage debt was deemed satisfied so was a guarantor's personal liability for that debt) (Docket No. 41, Pl. Memo. at 4).    The court explained that under the Real Property Actions and Proceedings Law, a mortgage lender has two choices, sue at law under the note (but not foreclose unless unsuccessful at least in part in collecting judgment on the note) or foreclose (but not sue at law without leave of the court in the foreclosure action), Trustco Bank, supra, 55 Misc.3d at 377, 47 N.Y.S.3d at 649-50 (discussing N.Y. Real Acts. Prop. Law § 1371).  The court concluded that "under [Real Property Actions and Proceedings Law] the consequences of failure to seek a deficiency judgment is the elimination of any further claim by the mortgagee," and "Plaintiff's failure to obtain a deficiency judgment in its foreclosure proceeding against the subject property resulted in the mortgage debt being deemed fully satisfied by the foreclosure sale," id. at 381, 47 N.Y.S.3d at 652.

Thus, Plaintiff is correct that the election of remedies limits the mortgagee to the method it first chooses.  The mortgagee cannot concurrently proceed to the alternative remedy while the first is underway without leave of the court or other procedural predicate, N.Y. Real Prop. Acts. Law § 1301(1), (3).

### 2.  Application of Election of Remedies to this Case

Plaintiff's credit reports accurately indicated the Property was in foreclosure, despite not noting that he was no longer a party in the foreclosure after entry of the Order of Reference in November 2015.  Here, SLS's client elected to proceed in equity and foreclosed the mortgage.  That pending foreclosure was from March 6, 2015, until the sale of the Property on October 17, 2016.  Further, SLS's client here may have tied its hands in the short term by agreeing to dismiss Plaintiff as a defendant in the foreclosure,

depriving the client of the only legal venue to enforce collection of the mortgage against Plaintiff until the foreclosure concludes.

Under § 1301, SLS's client was restricted to relief in equity it chose from its commenced foreclosure; the client did not seek leave of the State Supreme Court to file an action at law. The mortgage only became fully satisfied upon the sale of the Property (plus 90 days for a deficiency judgment action that was not filed on January 16, 2017). Thus, during the period when Plaintiff complained about the credit reports (March through July 2016), the foreclosure was underway.

Examining Plaintiff's interactions with SLS during the foreclosure (with facts generally uncontested by SLS (see Docket No. 45, Def. Counterstatement ¶¶ 16-30, 34, 41-42, 45)), Plaintiff describes a series of calls and correspondence from March 2016 contesting reporting the foreclosure in his credit reports.

On June 8, 2016, SLS's representative called Plaintiff telling him that he remained on the loan and could only be removed by a short sale, inquiring about documents for such a sale (Docket No. 41, Pl. Statement ¶ 25). The next day, Plaintiff received a letter from SLS rejecting the court documents and asserting that it accurately forwarded credit information to CRAs (id. ¶ 26). Later that day, Plaintiff spoke with a SLS's representative about changes to the credit report (id. ¶ 27). Around July 11, 2016, Plaintiff disputed the SLS trade line with Experian, with Experian replying on July 27 that SLS confirmed that this report was accurate (id. ¶¶ 28, 34).

On July 19, 2016, SLS's representative from its collection department called Plaintiff and asked what he intended to do about the mortgage debt (id. ¶ 29), which was followed by a similar call on July 26 (id. ¶¶ 30, 41; Docket No. 41, Tagliarino Aff. Ex. A at

93, 95-96, 97-98).  On July 19, the SLS representative informed Plaintiff of the pending foreclosure sale (in September) and asked what Plaintiff's intentions were and whether the Property was occupied (Docket No. 41, Tagliarino Aff. Ex. A, at 93-96), while on July 26, a different representative asked if Plaintiff was interested in a short sale (id. at 97, 98).

Then, on September 14, 2016, SLS contacted Plaintiff and asked if he knew Ms. Macris' income and her ability to pay the mortgage as well as proof of his income (Docket No. 41, Pl. Statement ¶ 42).   This was from the testimony of Rule 30(b)(6) representative Loretta Poch who explained an entry in SLS's notes for that date, that SLS declined Plaintiff's request to change who was liable under the mortgage until it received proof of income from both ex-spouses (Docket No. 40, Poch EBT Tr. at 85-86; Docket No. 41, Pl. Atty. Affirm. Ex. E, at 85 I.15-86 I.15).  SLS's record reflected a request for modification or mortgage assistance (e.g., Docket No. 40, Poch EBT Tr. at 86), consistent with Ms. Macris's earlier request for mortgage assistance.

The last communication between Plaintiff and SLS was on November 27, 2016, after the foreclosure sale (Docket No. 40, Wallace Aff. ¶ 11, Ex. J (sale dated October 17, 2016, reported November 30, 2016).  Plaintiff inquired about the status of the Property and a SLS's representative told him that SLS had title to the Property and the loan was extinguished (Docket No. 41, Pl. Statement ¶ 45; see Docket No. 41, Tagliarino Aff. Ex. A at 100-05, 103-04).

This detailed review of the parties' correspondence shows that none of SLS's conversations with Plaintiff threatened legal action during the pendency of the foreclosure to collect the note and mortgage.  SLS's efforts appear either to seek a short sale before

the foreclosure sale or mortgage assistance (sought initially by Ms. Macris) or modification to resume payments on the mortgage.  SLS's conversations were attempts to resolve the underlying debt without further resort to litigation, including the pending foreclosure.  SLS and its client did not seek a deficiency judgment following the November 2016 sale of the Property.

SLS argues election of remedies allows its client to pursue foreclosure of the Property and still seek collection on the mortgage and note from Plaintiff.  This is incorrect.  Once SLS's client filed for foreclosure, it made its election.  The client could not file an action at law during the pendency of the foreclosure absent leave of the State Supreme Court hearing the foreclosure.  The client did not do that here.  Instead, SLS instituted collection activities (calls and letters to Plaintiff, reporting debt on his credit reports) seeking payment of the note.

SLS itself declared on November 27, 2016, that SLS now owned the mortgaged Property and that the loan no longer existed (Docket No. 41, Pl. Statement ¶ 45; Docket No. 41, Tagliarino Aff. Ex. A at 103-04; see Docket No. 45, Def. Counterstatement ¶ 45 (agreeing with Plaintiff's Statement)), acknowledging the effect of foreclosure upon title to the Property as well as the state of the mortgage loan.  SLS has not sought leave of the state court to commence an action at law on the note (implicit in its collection activities and communications with Plaintiff) nor did SLS seek a deficiency judgment following the sale of the Property.  The foreclosure sale thus is full satisfaction of the mortgage debt (absent a deficiency proceeding), Trustco Bank, supra, 55 Misc.3d at 377, 47 N.Y.S.3d at 649-50.

Plaintiff equates the Order of Reference as a discharge of the mortgage or a release but fails to cite authority supporting this conclusion.  All that this Order did was dismissed Plaintiff from the foreclosure action, but it did not discharge the debt as to Plaintiff.  The mortgage continued to exist until sale following entry of the foreclosure judgment.  This precluded SLS's client from suing at law to collect the debt or any deficiency from the foreclosure absent foreclosure court approval (not sought by SLS or its client) until the foreclosure action concluded.

While the New York Real Property Actions and Proceedings Law bars concurrent equitable and legal enforcement of a mortgage debt, that law does not preclude the creditor (or here, its agent, SLS) from using collection methods to enforce payment short of commencing parallel litigation.  Section 1301 precludes commencing an action to collect the mortgage debt, e.g., Deutsche Bank Nat'l Trust Co. v. Gould, 189 A.D.2d 576, 134 N.Y.S.3d 179, 180 (1st Dep't 2020).  This Court has found no cases that rely upon a pending foreclosure to preclude other collection activities (such as contacting the debtor, reporting the debt and foreclosure on the debtor's credit reports) where no action at law was commenced.

SLS here contacted Plaintiff either to advance collection of the mortgage debt and the foreclosure (either by encouraging a short sale or offering restructuring the mortgage) short of litigation or to discuss the credit reports.  SLS and its client never commenced a legal action against Plaintiff (or Ms. Marcis) to enforce the mortgage.

### 3. Were Plaintiff's Credit Reports Inaccurate?

Therefore, the question remains whether there was an error in Plaintiff's credit report due to the disclosed status of the debt and the foreclosure.  From the May 2016

Experian report (and presuming that SLS's other reports were similar—the only credit report on record for these Motions is this one), Plaintiff was on the mortgage and owed that debt and the Property was under foreclosure.  What was not stated was that Plaintiff was no longer a defendant in that foreclosure action.  While containing that omission, SLS's disclosures in the credit report were not inaccurate.  When called upon by Plaintiff's dispute, SLS investigated the Experian credit report, finding that the situation was unchanged; Plaintiff still owed on the mortgage (that SLS's client could only enforce through the foreclosure), that the foreclosure was still pending.  The fact that Plaintiff still owed the mortgage debt and the Property was in foreclosure is enough to give pause to potential creditors, separate from whether Plaintiff is a named defendant in the foreclosure.

The May 2016 Experian report was rendered while the foreclosure was pending but before the foreclosure sale.  The mortgage debt still existed.  Although SLS's client elected the equitable remedy and later moved to eliminate Plaintiff as a defendant in the foreclosure, Plaintiff's obligation on the debt remained even though SLS's client reduced its litigation enforcement options.  In November 2016 the sale and in January 2017 when SLS's client failed to seek a deficiency judgment made the amount recovered in the foreclosure sale satisfy the mortgage and extinguish that debt.  Therefore, the credit reports prior to that sale accurately reflected the facts that (a) the mortgage existed, (b) Plaintiff still owed it, and (c) the property is under foreclosure.  The only omission was that Plaintiff was no longer a defendant in the foreclosure; absent a release or discharge with the dismissal from the foreclosure, Plaintiff still owed the debt and the fact that he was not a defendant in the foreclosure was immaterial.

The thoroughness of SLS's internal investigation of Plaintiff's dispute filed with Experian is secondary since it is tied to the purported error of claiming that Plaintiff still owed the mortgage.  As stated above, as of March to July 2016, Plaintiff still owed the mortgage.  This Court also need not consider Plaintiff's contention that SLS does not report disputes to CRAs because Plaintiff's dispute here was baseless.

Thus, Defendant's Motion for Summary Judgment (Docket No. 40) to dismiss the FCRA claim in the First Cause of Action is granted, while Plaintiff's Motion (Docket No. 41) on that Cause of Action is denied.

### D.  Fair Debt Collection Practices Act Claim

#### 1.  False or Misleading Representations

As for the Fifth Cause of Action asserting SLS's violations of the Fair Debt Collection Practices Act ("FDCPA"), this claim also turns upon whether it was true that Plaintiff owed the mortgage debt is true.  If false, then SLS's efforts contacting Plaintiff to collect upon that debt may violate the FDCPA, 15 U.S.C. § 1692e(2).  Plaintiff also argues other provisions of § 1692e apply, all based upon SLS knowing the claim that Plaintiff still owes on the mortgage was false, see id. §§ 1692e(5), 1692e(8), 1692e(10), or § 1692f for collection of an unauthorized amount.

As found above, however, SLS's contention that Plaintiff owed the mortgage debt in March and July 2016 was not false.  Therefore, FDCPA §§ 1692e(2)(A) and 1692e(8) were not violated.  The only element not conveyed given these circumstances is the restrictions on SLS and its client to commence legal action against Plaintiff to enforce collection of that debt.  There were not false representations or deceptive means to collect this debt, so § 1692e(10) was not violated.  Furthermore, review of SLS's contacts with

Plaintiff examined in detail above do not reveal threats to take action that could not be taken, hence § 1692e(5) was not violated.

As for violation of § 1692f(1), the note and mortgage itself created the debt.  SLS in March through July 2016 attempted to resolve the foreclosure of that debt by suggesting Plaintiff enter a short sale or start the process (with Ms. Macris) to restructure the mortgage.  Plaintiff disclaims the mortgage itself because of the Order of Reference. As stated above that Order only terminated Plaintiff as a party in the foreclosure and did not discharge the debt or his obligation under it.  It is notable that SLS throughout its contacts with Plaintiff never threatened to commence legal action beyond the foreclosure to collect the mortgage debt.  Without a release (which the Order of Reference did not provide), Plaintiff remained liable for the debt.  His claim under § 1692f also fails.

2.  Harassment

Section 1692d is to preclude collector harassment, oppression, or abuse.  Plaintiff claims this from SLS repeatedly attempting to collect a debt he argues he no longer owes. As found above, Plaintiff did still owe the debt (albeit SLS's client's limited means of enforcement at the end of any collection process).   Review of the communication as detailed above shows that SLS did not harass, abuse, or oppress Plaintiff in attempting to recover this debt.  SLS (when not addressing Plaintiff's credit reporting claims) tried from March to July 2016 to get the mortgage debt paid (by short sale or refinancing) to avoid the foreclosure auction but failed.  Thus, Plaintiff's claim under 15 U.S.C. § 1692d fails.

### 3.  Validation of Debt and Five-Day Rule

"Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information [notices concerning the debt and collector and the debtor's right to dispute the debt] is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice," 15 U.S.C. § 1692g(a).

Judge Larimer once observed,

"Section 1692g of the FDCPA relates to 'validation of debts.'  15 U.S.C. § 1692g.  It requires a debt collector to provide written notice, referred to as a 'notice of debt' or a 'validation notice,' within five days after its initial communication with a consumer, indicating the amount of the alleged debt as well as the name of the creditor to whom the debt is owed.  15 U.S.C. §§ 1692g(a)(1)-(2); see also Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 134 (2d Cir.), cert. denied, 560 U.S. 926, 130 S.Ct. 3333, 176 L.Ed.2d 1223 (2010).  This notice must also include a 'statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.'  15 U.S.C. § 1692g(a)(3).  This thirty-day period is often referred to as the 'validation period.'  See Ellis, 591 F.3d at 132.  In addition, the notice must indicate that 'if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt' and mail the verification to the consumer. 15 U.S.C. § 1692g(a)(4).  Finally, the notice is required to state that 'upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.'  Id. at § 1692g(a)(5)."

Kurzdorfer v Constar Fin. Servs., LLC, 490 F. Supp 3d 663, 666-67 (W.D.N.Y. 2020) (Larimer, J.).

To assert a § 1692g claim, Plaintiff needs to establish a communication between the him and a debt collector was an "initial communications" within the meaning of the statute, the communication was in connection of any debt, and the debt collector failed to make the debt validation notices required under the statute, Carlin v. Davidson Fink LLP,

36

852 F.3d 207, 212 (2d Cir. 2017).   The FDCPA does not define "initial communication," id.

SLS is correct that Plaintiff has not identified an initial communication that would trigger the five-day notice requirement.   This requires speculation on this Court's part on what communication from SLS could be considered the initial one to trigger the five-day debt verification notice requirement of § 1692g.

Plaintiff first claims that sometime "in early 2016, Plaintiff received correspondence from Defendant SLS stating that he was delinquent in his mortgage obligation for the Property" (Docket No. 41, Pl. Statement ¶ 16; see also Docket No. 45, Def. Counterstatement ¶ 16 (agreeing with this assertion)).   In support of this assertion, Plaintiff cites his deposition testimony where he stated he received a bill for the past due mortgage from SLS that caused him to contact them regarding his credit report (Docket No. 41, Pl. Atty. Affirm. Ex. D, Pl. EBT Tr. at 103, ll. 9-21).   This early 2016 billing correspondence could be the initial communication from SLS.   Unfortunately, neither party produced the actual correspondence and Plaintiff has not provided a more specific date.   Without the correspondence, this Court cannot determine if it contained a debt validation notice that would satisfy § 1692g.   If that correspondence was a notice of default, then it is not an initial communication under § 1692g, see Thomas v. Law Firm of Simpson & Cybak, 392 F.3d 914, 916-17 (7th Cir. 2004) (letter from creditor, as opposed to debt collector, held not initial communication).   Without an actual date of delivery, this Court also cannot tell if five days hence SLS sent the requisite notice.   Plaintiff contends that the record for these motions does not contain a § 1692g notice (Docket No. 47, Pl.

Memo. at 10; Docket No. 47, Pl. Aff. ¶ 4; Docket No. 47, Pl. Atty. Affirm.), either from that billing or thereafter.

Plaintiff then discusses the contacts he had with SLS in 2016.  As previously performed, review of Plaintiff's communications with SLS include calls or correspondence from Plaintiff (Docket No. 41, Pl. Statement ¶¶ 17-19, 22-25, 27, 28, 30, 33, 45).  Calls such as these by the consumer to the lender or its representative are not an "initial communication" under § 1692g, Jackson v. Eltman, Eltman & Cooper, P.C., 128 F. Supp.3d 980, 986 (E.D. Mich. 2015); Carlin, supra, 852 F.3d at 211, 212, 213-14 (debtor's letter disputing validity of debt held not to be "initial communications"); Stuart v. Udren Law Offices P.C., 25 F. Supp.3d. 504, 507-09 (M.D. Pa. 2014) (letter to borrower from lender's representative in response to borrower's inquiry is not an "initial communication"). These calls also do not show SLS attempting to collect a debt; Plaintiff either called or wrote to correct his credit report.

Of the communication from SLS to Plaintiff, the first was on April 20, 2016 (Docket No. 41, Pl. Statement ¶ 20).  The SLS representative stated that Ms. Macris applied for assistance on the mortgage and the call to Plaintiff was in reference to that application; SLS then asked if Plaintiff was interested in a deed in lieu of foreclosure or a short sale of the Property (Docket No. 41, Berger Aff., Ex. A, Tr. of Apr. 20, 2016, at 33).  This is not an initial communication because SLS called in response to Ms. Macris' application, see Stuart, supra, 25 F. Supp.3d at 507-09; Gorham-Dimaggio v. Countrywide Home Loans, Inc., No. 1:05-cv-0583, 2005 WL 2098068, at *2 (N.D.N.Y. Aug. 30, 2005).

SLS then called Plaintiff to follow up on April 27, 2016, inquiring about the status of the Property (Docket No. 41, Pl. Statement ¶ 21).  Although the SLS representative

gave a disclaimer that the purpose of the call was to collect a debt (Docket No. 41, Berger Aff., Ex. A, Tr. of Apr. 27, 2016, at 48), this also was not an "initial communication" because it was a continuation from the April 20 conversation.

In response to Plaintiff's dispute with his credit report, SLS wrote on May 23, 2016 (received by Plaintiff on June 9) (Docket No. 41, Pl. Statement ¶ 28).  First, as a response to Plaintiff's letter, SLS's response is not an initial communication that would trigger the five-day notice requirement.  Second, the letter did not involve collection of a debt; it addressed Plaintiff's credit report.

SLS called Plaintiff on July 26, 2016, again inquiring about the status of the Property and with an initial disclaimer that the purpose of the call was debt collection (Docket No. 41, Pl. Statement ¶ 41; Docket No. 41, Tagilarino Aff., Ex. A, Tr. of July 26, 2016, at 97).   Given the Property had a scheduled foreclosure sale, the SLS representative called Plaintiff to see if he was interested in doing a short sale (Docket No. 41, Tagilarino Aff., Ex. A, Tr. of July 26, 2016, at 97; Docket No. 41, Pl. Statement ¶ 41).  Since this call was in connection with the pending foreclosure (suggesting a short sale to avoid the eventual foreclosure auction), it also was not an "initial" communication to collect that debt from the foreclosure and notice he received while he was a defendant therein, Plaintiff was notified of the debt validation facts that would be required under § 1692g—the name of the creditor, the amount due, as well as rights to contest the foreclosure (see Docket No. 40, Def. Atty. Decl. Ex. 19, Summons, at 4), see Wertzberger v. Shapiro, DiCaro & Barak LLC, No. 19CV4272, 2021 WL 327619, at *5 (E.D.N.Y. Feb. 1, 2021) (Plaintiff held protected by New York foreclosure laws because the required notices provided in the foreclosure summons and complaint);  see also Carlin, supra, 852 F.3d at

213 ("all communications in the <u>form</u> of a civil pleading are excluded from the definition of initial communication" as amended in 15 U.S.C. § 1692g(d) and its broad exclusion, including a § 1692g notice attached as an exhibit to the foreclosure complaint; emphasis in original).

Plaintiff has not identified the initial communication that requires debt validation notice.  Either it was the undated bill that Plaintiff testified about or calls and letter in the spring of 2016 based on Ms. Macris' request for assistance on the mortgage.  The former billing is under-identified, and the latter is not an initial communication or (in the case of the telephone calls) a written notice.  SLS's letter dated May 23 (received June 9) was not in connection with collection of a debt but was on Plaintiff's disputed credit report.

Plaintiff, therefore, fails to allege a claim under 15 U.S.C. § 1692g.

### 4.  FDCPA Claims in Summary

Thus, Defendant SLS's Motion for Summary Judgment (Docket No. 40) dismissing the Fifth Cause of Action for alleged violations of the FDCPA is granted while Plaintiff's Motion for Summary Judgment (Docket No. 41) for asserting claims under the FDCPA is denied.

## IV.    Conclusion

The only remaining claims were those against SLS alleged in the First and Fifth Causes of Action.  These claims turn on the SLS's client's election of remedies in choosing first to commence foreclosure proceedings and then to seek Plaintiff's dismissal as a defendant.  Plaintiff relies on the combination of his divorce settlement agreement, the deed to Ms. Macris only, and the Order of Reference in the foreclosure to end his mortgage obligation.  He pressed this point to SLS in disputing its credit reports of

Plaintiff's continued mortgage obligation. Without a release with the settlement agreement and Order of Reference (or Ms. Macris complying with the settlement terms), however, Plaintiff remained obligated on the mortgage. Plaintiff's dismissal from the foreclosure did not relieve him of his mortgage. The Order of Reference merely limited the client's forms of relief against Plaintiff is compelled to sue at law. Thus, SLS's reports of the debt and the foreclosure in Plaintiff's credit reports were accurate if not complete.

Plaintiff's Fair Credit Reporting Act and Federal Debt Collection Practices Act claims rest upon the assumption that the discharge of Plaintiff from the foreclosure also terminated the debt and reporting the same was false. This was not the case; the mortgage debt remained at the time of the disputed credit reports. Those reports accurately described Plaintiff's circumstances.

Thus, Defendant's Motion for Summary Judgment (Docket No. 40) is granted. Plaintiff's Moton for Summary Judgment (Docket No. 41) in his favor is denied. With dismissal of these remaining claims alleged against SLS on its Motion, this case is dismissed.

## V.    Orders

IT HEREBY IS ORDERED, that Defendant SLS's Motion for Summary Judgment (Docket No. 40) is GRANTED.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 41) is DENIED.

FURTHER, the Clerk of Court is DIRECTED to close this case.

SO ORDERED.


Dated:        July 20, 2021
              Buffalo, New York


                                                 s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                            United States District Judge